# 14-1866-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



HELEEN MEES,
Application pursuant to 28 U.S.C. 1782 for leave to issue
subpoenas for deposition and documents for use in proceeding
in the District Court of Amsterdam the Netherlands,

*Applicant-Appellant,*

*v.*

WILLEM H. BUITER,

*Respondent-Appellee.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF FOR APPLICANT-APPELLANT

Olav A. Haazen
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
914-749-8200

*Attorneys for Applicant-Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 1

STATEMENT OF THE CASE ............................................................. 2

STATEMENT OF FACTS .................................................................. 4

    Mees' Status as a Scholar, Commentator, and Consultant ........................... 4

    Buiter's Extra-Marital Relationship with Mees ............................ 5

    Buiter's Move to New York .............................................. 7

    Buiter's False and Defamatory Statements ................................ 8

    Mees' Arrest and Criminal Prosecution ................................... 9

    Mees' Requests for Discovery Assistance .................................. 10

    The District Court's May 6, 2014 Opinion ................................. 11

    The Civil Proceedings in Amsterdam and New York ................................ 13

SUMMARY OF THE ARGUMENT ..................................................... 13

ARGUMENT ................................................................................. 15

I.     THE DISTRICT COURT ERRED IN HOLDING THAT DISCOVERY IS NOT "FOR USE" IN A FOREIGN PROCEEDING JUST BECAUSE IT IS NOT NEEDED TO DRAFT A COMPLAINT. ..................................... 15

    1. The District Court's Finding that Mees Has No Need for Discovery to Draft a Complaint Was Improper .................................................. 16

2. The District Court Improperly Construed the Statute's "For Use" Requirement as Limited to the Preparation of a Complaint. ..................19

II.    THE DISTRICT COURT ERRED IN IMPOSING AN EXTRA-STATUTORY FOREIGN EXHAUSTION REQUIREMENT AS A PRECONDITION TO DISCOVERY ASSISTANCE UNDER SECTION 1782. ........................................................................................................21

III.    THE DISTRICT COURT'S FAILURE TO REASONABLY BALANCE ALL RELEVANT FACTORS WAS AN ABUSE OF DISCRETION ......23

1. The District Court Refused to Consider the Twin Aims of the Statute. ..24

2. The Application Does Not Circumvent Dutch Discovery Rules Merely Because Those Rules Are Narrower. ......................................................26

3. The District Court's Finding that the Application Violates U.S. Public Policy Was Legally and Factually Unsupportable. .................................28

4. The District Court's Finding of Burden Was Unreasonable and Did Not Support Denying Discovery of All Relevant Evidence Indiscriminately. ...................................................................................31

5. It Is Undisputed that the Remaining Factors Favor Granting the Application. ...........................................................................................33

CONCLUSION .....................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intern. (USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................................19

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ..................................................................................25

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ............................................................... 19, 21, 23, 26

*Chevron Corp. v. Berlinger*,
    629 F.3d 297 (2d Cir. 2011) ..................................................................................30

*In re Consorcio Ecuatoriano de Telecomunicaciones*,
    747 F.3d 1262 (11th Cir. 2014) ............................................................... 18, 20, 32

*In re Duizendstraal*,
    No. 3:95–MC–150–X, 1997 WL 195443 (N.D. Tex. Apr. 16, 1997).................27

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002) ......................................................................... 19, 31

*In re Esses*,
    101 F.3d 873 (2d Cir. 1996) ..................................................................................32

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ..................................................................... passim

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011) ..................................................................... 23, 32, 33

*Huang v. I.N.S.*,
    436 F.3d 89 (2d Cir. 2006) ......................................................................... 24, 25

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ..................................................................................... passim

*In re Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992) ......................................................................... 22, 23

*Marubeni Am. Corp. v. LBA Y.K.*,
    335 Fed. App'x 95 (2d Cir. 2009) .......................................................... 22, 24, 25

*McKevitt v. Pallasch*,
    339 F.3d 530 (7th Cir. 2003) ................................................................30

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997) .................................................... 23, 26, 31

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)....................................26

*In re Ontario Principals' Council*,
    No. 2:13–mc–120–LKK–KJN, 2013 WL 6844545 (E.D. Cal. Dec. 23, 2013)...20

*In re Oxus Gold PLC*,
    MISC No. 06-82-GEB, 2007 WL 1037387 (D.N.J. Apr. 2, 2007) .....................20

*Paluck v. Duizendstraal*,
    1996:AH5562, KG 1996 (Pres. Dist. Ct. Utrecht Apr. 9, 1996)........................27

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003) .......................................................... 24, 25

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
    634 F.3d 557 (9th Cir. 2011) ................................................................30

*In re Schottdorf*,
    No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 26, 2006)..............26

*S.E.C. v. Jones*,
    No. 04 Civ. 4385(RWS), 2005 WL 2837462 (S.D.N.Y. Oct. 28, 2005) .............30

*In re Servicio Pan Americano de Proteccion*,
    354 F. Supp. 2d 269 (S.D.N.Y. 2004)..............................................26

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
    482 U.S. 522 (1987) ............................................................................19

*United States v. Edelman*,
    726 F.3d 305 (2d Cir. 2013) .......................................................... 19, 21

**<u>Statutes</u>**

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1782................................................................... passim

Fed. R. Civ. P. 26 ............................................................................31

**<u>Treaties</u>**

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
Mar. 18, 1970, 23 U.S.T. 2555...............................................................25

Treaty on Mutual Assistance in Criminal Matters, U.S.-Neths., June 12, 1981,
35 U.S.T. 1361................................................................................31

**<u>Other Authorities</u>**

Hans Smit, Recent Developments in International Litigation,
35 S. Tex. L. Rev. 215 (1994) ............................................................17

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this application for discovery assistance for use in a foreign proceeding ("Application") pursuant to 28 U.S.C. § 1782(a).  On May 6, 2014, the District Court issued a ruling and entered an order denying the Application.  Applicant-Appellant filed a notice of appeal on May 26, 2014.  The appeal is from a final order of the District Court that disposes of all the parties' claims, and jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether it was clearly erroneous to find that the Applicant did not need the requested discovery in order to plead a defamation claim in a foreign court, where this finding was based solely on the Respondent's expert declaration concerning the requirements of foreign law, the Respondent himself disputes the application of foreign law to the claim, and the foreign court may find that the more demanding requirements of New York and federal law govern.

2.      Whether a finding that discovery is not needed to draft a complaint is sufficient as a matter of law to conclude that it is not "for use" in a foreign proceeding within the meaning of 28 U.S.C. § 1782(a), even if the requested discovery also had investigative and evidentiary use.

3.     Whether the District Court erred by imposing, as a pre-condition to discovery assistance, the extra-statutory requirement that the Applicant must first seek a statement from the foreign court that (1) the discovery is necessary in the foreign proceeding, and (2) the foreign court is unable to order it produced.

4.     Whether the District Court abused its discretion by denying the Application under the present circumstances, including by (a) refusing to even consider Congress' "twin aims" in adopting 28 U.S.C. § 1782; (b) finding an attempt to circumvent Dutch proof-gathering rules in the face of clear Dutch precedents holding Section 1782 relief fully consistent with Dutch law; (c) finding interference with a New York State criminal prosecution, even though that prosecution is inactive, the criminal trial court expressly permitted the civil suit, and the public prosecutor has not opposed it; and (d) using a foreign discoverability test to find burden and intrusiveness, and not adjusting the discovery requests to address any issues of scope.

## <u>STATEMENT OF THE CASE</u>

This matter arises from a four-year adulterous relationship between two economics scholars, Respondent-Appellee Professor Dr. Willem H. Buiter, economics professor at the London School of Economics and Chief Economist at Citigroup ("Buiter"), and Dr. Heleen Mees, former adjunct professor at New York University and political and economic commentator in, primarily, the Netherlands

("Mees").  J.A. 44-45; Dkt. #3 at 1, 4-8.[1]  The affair became a matter of public record in 2013, shortly after Buiter and his wife had decided to move from London to New York City (where Mees lives) and Buiter got caught in the web of lies he had told his wife—that the relationship had ended in 2009 and that any contact with Mees since that time had been involuntary on his part, even though, in reality, Buiter had secretly continued his romantic encounters and webcam interactions with Mees for several years.  Dkt. #3 at 4-8; *see* J.A. 50, 62, 75.  In order to save his marriage, Buiter decided to stick with that story, even carrying it to an extreme when on July 1, 2013, he had Mees arrested and criminally prosecuted on fabricated charges of stalking and harassment.  J.A. 68-69; 146; 169-70.

The news about Mees' arrest, which was widely reported in various U.S. newspapers and nearly all news media in her country of origin, the Netherlands, destroyed her career and reputation as a scholar, commentator, and business consultant.  J.A. 7-8; 106, 114-15.  The news reports extensively and foreseeably rehashed the false accusations in Buiter's criminal complaint that portrayed Mees as a criminal and as extraordinarily obsessive and aggressive in sexual and relationship matters.  J.A. 7; 106.

---

[1] "J.A." refers to the Joint Appendix, and "S.A." to the Special Appendix, submitted contemporaneously herewith.  "Dkt." refers to the entries on the docket (J.A. 1-4) in the proceeding below.

On March 10, 2014, shortly after counsel for Mees met with the Manhattan prosecutors to discuss significant falsehoods in the statements Buiter had made to them and the police, the District Attorney's Office agreed to an adjournment in contemplation of dismissal ("ACD").  J.A. 227.  The Manhattan Criminal Court ordered the ACD that same day.  J.A. 160; 162; 223; 227.

On March 28, 2014, seeking an opportunity to restore her reputation in the Netherlands, Mees filed this Application pursuant to 28 U.S.C. § 1782 to collect evidence that Buiter's falsehoods and selective disclosures about the facts of their relationship had tricked the police into arresting her; that he similarly misled the prosecutor, the media and the public; that Buiter knew his statements to be false or recklessly disregarded the truth; that he knew they would be widely reported in the media; and that he had an improper motive, other than the good faith reporting of a crime.  J.A. 7-9; 22-23; 37-41.  The District Court rejected the Application on May 6, 2014.  S.A. 61; 62.

## STATEMENT OF FACTS

### Mees' Status as a Scholar, Commentator, and Consultant

Mees is an expert in macroeconomics, monetary policy, and China's economic policies, and a well-known author, who has published several books and numerous columns, policy commentaries, and scholarly articles in refereed journals, as well as the *Financial Times*, the *New York Times*, *Le Monde*, *Foreign*

*Policy*, and leading Dutch newspapers and magazines. As a commentator, she has made approximately 50 radio and over 30 television appearances commenting on economic and political issues, including on *CNBC*, *The Huffington Post*, as well as Dutch news shows. In 2007, she was listed as among the most influential Dutch scholars and thinkers by business magazine *Elsevier*. J.A. 44. As a consultant, she has worked for Fortune 10 companies and various government organizations. *Id*.

Until recently, Mees was an adjunct associate professor at New York University's Wagner Graduate School of Public Service, where she taught a course on global economic crisis management, which was well-regarded by her students. Since 2012, she also wrote regular columns for *Financieele Dagblad*, the leading business newspaper in the Netherlands. Following Buiter's false and defamatory statements, NYU discontinued her professorship, Mees lost all her speaking engagements, consulting opportunities, and clients, and she has not been able to return as a columnist with any newspaper.

## Buiter's Extra-Marital Relationship with Mees

Mees and Buiter first met on or about July 9, 2008, when Mees, who was starting as a Ph.D. student, visited Buiter's office at the London School of Economics, United Kingdom, to discuss possible avenues for her Ph.D. research and to ask if he would serve as her thesis co-supervisor. Dkt. #3 at 4; J.A. 243-44. Shortly thereafter, as Buiter was considering Mees' request, he came to Mees'

apartment in Amsterdam, the Netherlands, where he spent the night with her.  Dkt. #3 at 4-5; *see* J.A. 244.

Between October 2008 and November 2009, the parties had at least eleven encounters in luxury hotels around the world, usually following romantic dinners or drinks in upscale restaurants.  Dkt. #3 at 4-5.  In between these once-a-month, physical encounters, Buiter and Mees were in frequent contact via email and various social media, and also interacted romantically via internet-based audio and video service Skype.  *Id*. at 5.

In November 2009, Buiter's wife found out about Buiter's relationship with Mees, and demanded that he terminate it, which Buiter told his wife he did.  *Id*. However, by March 2010, Buiter and Mees were together again.  *Id*. at 6, 14; *see also* J.A. 103-04.  From that time onwards, Buiter regularly sent Mees his whereabouts or the schedule for his upcoming travels, usually for Citigroup, which he had joined as Chief Economist a few months earlier, so that Mees and Buiter could coordinate their next rendezvous in whatever location also suited Mees.  Dkt. #3 at 6-7, 10-11, 14.  For example, on May 21, 2010, when Mees was in Beijing for research and a language course, Buiter emailed Mees the date and time of his arrival five days later, so that the two could meet at his Beijing hotel.  J.A. 104. Between March 23, 2010 and August 2, 2012, there were at least seventeen such encounters in hotels, restaurants, and Mees' apartment, in New York, Amsterdam,

Beijing, and Martha's Vineyard.  Dkt. #3 at 6-7; *see also* J.A. 75; 104.

Besides meeting with Mees, Buiter also wanted Mees to email him nude pictures of herself and other women.  J.A. 77; 80; Dkt. #3 at 11-12.  By the end of 2011, they were in such frequent contact with each other via email, text messaging, and social media, that Buiter asked Mees if he could add her to his BlackBerry Messenger Contact List because Blackberry Messenger was free most of the time, which would make communicating with Mees "much cheaper."   J.A. 82.

## Buiter's Move to New York

On or about June 2012, Buiter told Mees that he and his wife were planning on moving to New York City, and he asked Mees to have her real estate agent set up viewings for apartments in Manhattan.    J.A. 52.   Buiter transferred to Citigroup's New York office in early 2013, and moved to an apartment in Manhattan around February 15, 2013, while for the time being his wife remained in their London apartment.  J.A. 148.  On February 27, 2013, Buiter and/or his wife had their lawyer send a letter to Mees demanding that Mees cease any contact with Buiter.  J.A. 146.  That same day, however, Buiter himself contacted Mees via Skype.  Dkt. #3 at 8.  In fact, during the July 2012 – July 2013 period, Buiter sent Mees approximately 50 emails and other communications, often making explicit sexual references or using sexual innuendo.  *See, e.g.*, J.A. 55; 57; 59; 62.  For example, on June 13, 2013, after Buiter switched apartments in London, he sent

Mees his new London address.  J.A. 57.  On June 19, 2013, he reconnected with Mees on Skype, and then repeatedly tried to call her using Skype on June 20, June 23, and June 28, 2013.  J.A. 64.  Responding to those mixed messages, Mees continued to reach out to Buiter to indicate her desire to continue their romance. Dkt. #3 at 9.

## Buiter's False and Defamatory Statements

On or about July 1, 2013 (only days after Buiter had repeatedly tried to call Mees via Skype) and again on August 5, 2013, Buiter went to the New York Police Department (20th Precinct) and accused Mees of the crimes of stalking and harassment by repeatedly trying to call him.  J.A. 68-69; 71-73.  Buiter falsely and misleadingly told the authorities, and through them to the world, that he had asked Mees to stop contacting him in 2009, but she had sent him thousands of emails and other messages since that time (J.A. 72; 114-15; 135; Dkt. #3 at 9, 13-14)— implying that these communications had been unwanted rather than an integral part of a relationship that lasted until the second half of 2012.  *See supra*, at 6-7.  He also told them that Mees had emailed him nude pictures and sexually explicit messages (J.A. 69; 72)—now claiming that these communications were annoying and alarming, and implying he had not asked for those pictures or himself frequently engaged in similar sex talk with Mees.  *Supra*, at 7.  He further stated that Mees had tried to meet him at his hotel in Beijing (J.A. 72; Dkt. #3 at 14)—

8

implying that she had chased him down to China to present herself unannounced, rather than spent the night with him, as they had specifically arranged beforehand. J.A. 104. And he told the police and prosecutors, and the world, that Mees had emailed and harassed his children, and that he feared for their safety (J.A. 69; 114; Dkt. #3 at 10), while in reality his "children" are both adults who live outside the State of New York. In fact, Mees never met Buiter's children or sent them a single email. Dkt. #3 at 10.

**Mees' Arrest and Criminal Prosecution**

On July 1, 2013, Mees was arrested and detained until the evening of July 4, 2013. *See* J.A. 245; 167. On August 5, 2013, the DA's Office filed an Information, charging Mees with five misdemeanor counts: (i) second-degree menacing, (ii) third-degree stalking, (iii) fourth-degree stalking, (iv) second-degree aggravated harassment, and (v) second-degree harassment. J.A. 71.

On or about February 4, 2014, Mees' lawyers, Ira London and Olav Haazen, met with the prosecutors to correct important parts of the factual record. Following that meeting, the DA's Office agreed to an ACD, provided that Mees stays away from Buiter and his wife, and is not arrested for a year, and that she undergoes fourteen sessions of counseling. J.A. 227; *see* J.A. 160; 162. On March 10, 2014, Justice Statsinger of the New York City Criminal Court ordered the ACD under the agreed-upon conditions. J.A. 160; 162; 223; 227. The criminal case is

now set for dismissal, assuming all conditions are met, on March 9, 2015.  J.A. 145; 160.

Justice Statstinger specifically clarified during the March 10, 2014 proceeding that the Order of Protection does not preclude Mees from pursuing civil litigation against Buiter:

> MR. LONDON:   I would like to clarify that the order of protection does not preclude legal action should –
> THE COURT:   As long as all contacts are through counsel. I don't foresee that  will violate the order of protection. No direct contact between the defendant and the person named in the order.
> MR. LONDON:   Only by the attorneys.
> THE COURT:   I don't see that as a problem.

J.A. 228.   The DA's Office expressed no objection to Mees initiating civil litigation against Buiter while the criminal matter awaits dismissal.  *Id*.

## Mees' Requests for Discovery Assistance

On March 28, 2014, Mees filed this Application pursuant to 28 U.S.C. § 1782, requesting leave to issue subpoenas *ad testificandum* and *duces tecum* to Buiter, with supporting papers setting forth the grounds for the Application.  J.A. 5-7; 7-9; 10-104; Dkt. #3 at 16-26.   On April 16, 2014, Buiter opposed the Application, but took no issue with five of Mees' grounds:  that (i) Mees is an "interested person," (ii) Buiter resides within the district, (iii) granting the Application promotes Section 1782's twin objectives, (iv) the Dutch court is a first-resort trial court, and (v) the Dutch courts are receptive to U.S. discovery

assistance.  DSkt. #3 at 16-17, 20-21, 26; Dkt. #9 at 12-20; *see* S.A. 55.  On May 2, 2014, Mees filed a reply disputing Buiter's opposition grounds.  Dkt. #16.

**The District Court's May 6, 2014 Opinion**

On May 6, 2014, the District Court (Chief Judge Loretta A. Preska), ruling from the bench, denied the Application on the ground that the requested discovery was not "'for use' in the foreign proceeding" within the meaning of 28 U.S.C. § 1782(a).  S.A. 59; *see id.* at 61 (denying request "primarily on the basis that the discovery is not necessary for use in a foreign proceeding").  The District Court found that Mees has no need for discovery because Mees "has enough material from which to frame an adequate complaint" and Dutch law does not require that evidence "be appended to the complaint."  S.A. 59-60.  The Court rejected Mees' Dutch counsel's declaration, which explained the need for discovery to meet Dutch law's extraordinarily high pleading requirements (J.A. 108-10; 213), as merely "conclusory."  S.A. 60.  Insisting that the Application had to be decided on the papers (which included two declarations from counsel but no affidavit from Mees herself), the Court declined to hear Mees, who had stood by to testify about the volume of documents in her possession, and concluded that Mees had not demonstrated that she does *not* already have the documents she seeks from the respondent.  S.A. 29.

> MR. HAAZEN:    We have stated in the papers that she does not have all the e-mails.

THE COURT:          You don't know.
MR. HAAZEN:      Yes.  I've asked her.
THE COURT:          Hearsay.
MR. HAAZEN:      My client is in the courtroom, your Honor.
THE COURT:          All right.  But the papers are the papers.

S.A. 29.

The Court also denied Mees' request for discovery to prove (rather than plead) her case, stating that she should request such recovery from the Dutch court after commencing the suit, and would only obtain assistance from the U.S. court "if the Dutch courts indicate that additional material is necessary and for some reason the Dutch court is not able to order it produced there."  S.A. 61.

Weighing additional factors within its discretion, the District Court found that, because the requested discovery was broader than would be permitted under Dutch law, the Application is "intrusive and burdensome" and an attempt to circumvent foreign proof-gathering restrictions.  S.A. 59.  The District Court also found that, in contravention of U.S. policy, engaging in discovery would "attack collaterally the still pending criminal prosecution."  *Id*.

The Court found that the receptivity of the Dutch courts to U.S. discovery assistance was undisputed (S.A. 59), but made no finding as to whether Buiter was beyond the Dutch court's jurisdictional reach prior to the filing of a complaint (S.A. 23-24, 33-38), and did not consider the twin aims of the statute.  S.A. 53, 58-61.

**The Civil Proceedings in Amsterdam and New York**

On June 24, 2014, facing a possible one-year statute of limitations, if New York law applies, Mees served Buiter and his wife, Professor Anne Sibert, with a non-public summons and complaint, with 25 exhibits appended, alleging defamation and demanding a retraction, and requiring them to make their appearance through counsel in the District Court of Amsterdam, the Netherlands on September 10, 2014. *See* J.A. 212. On June 27, 2014, Mees served Buiter with a summons with notice to appear in the New York Supreme Court, Kings County, demanding damages on account of, *inter alia*, defamation, false arrest, malicious prosecution, and intentional infliction of emotional distress. To date, no complaint has been served in that action, and Buiter has not responded to either action.

## SUMMARY OF THE ARGUMENT

The District Court's denial of Mees' Application for Section 1782 discovery was improper for seven reasons.

*First*, the District Court misconstrued the statute's requirement that the discovery be "for use" in a foreign proceeding as referring only to a use of discovery for the purpose of drafting a complaint. There is no support for this erroneous view, either in the language of the statute or anywhere in the case law. *See infra*, § I.2.

13

*Second*, it was improper for the District Court to require Mees to first *prove* that she does not possess the documents she seeks, without letting Mees testify or submit a declaration.  It was also improper to reject the declaration of Mees' Dutch counsel—the very person engaged to prepare the complaint that is subject to the Dutch pleading requirements—in favor of the opinion of Buiter's expert, who completely failed to address the elements of defamation that Mees would need to plead, if, as Buiter argues, New York law governs that claim.  *See infra*, § I.1.

*Third*, the District Court incorrectly imposed a foreign exhaustion requirement, which is inconsistent with the language of Section 1782 and has been rejected by both the Supreme Court and this Court.  *See infra*, § II.

*Fourth*, the District Court refused to consider the congressional objectives of providing efficient discovery assistance to international litigants and encouraging foreign nations to do the same, which this Court has held is a key factor that must be considered.  *See infra*, § III.1.

*Fifth*, it was improper to hold that the Application attempts to circumvent Dutch proof-gathering restrictions, just because the discovery rules in the Netherlands, like the laws in most (if not all) nations, are more limited than in the United States.  The District Court's finding was particularly improper because several Dutch courts have, in fact, held that seeking discovery from a U.S. court is

14

in no way inconsistent with Dutch proof-gathering rules, which provide for "full evidentiary discretion." *See infra*, § III.2.

*Sixth*, the District Court's concern that civil discovery would be used to collaterally attack the criminal prosecution is far-fetched, given that the criminal case was adjourned and remains inactive, and requires no steps from Mees until the case is dismissed in its entirety in seven months. There is also no precedent for a denial of Section 1782 relief because of a pending criminal matter in the United States, which would in any event be inconsistent with the fact that Congress clearly contemplated, and permitted, discovery assistance for the benefit of parallel civil and criminal matters. *See infra*, § III.3.

*Seventh*, in finding the requests burdensome and intrusive because they exceed discoverability under Dutch law, the District Court applied a foreign discoverability standard, which the Supreme Court and this Court have rejected. *See infra*, § III.4.

## **ARGUMENT**

### I.    THE DISTRICT COURT ERRED IN HOLDING THAT DISCOVERY IS NOT "FOR USE" IN A FOREIGN PROCEEDING JUST BECAUSE IT IS NOT NEEDED TO DRAFT A COMPLAINT.

The District Court held that the discovery Mees sought was not "for use" in the foreign proceeding because she did not need the discovery to draft a complaint in the Dutch proceeding. *See* S.A. 59-60. This was error for two reasons.

### 1.    The District Court's Finding that Mees Has No Need for Discovery to Draft a Complaint Was Improper.

The District Court "misperceived the extent to which it should construe foreign law in deciding whether to order discovery" pursuant to 28 U.S.C. § 1782. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995). As this Court has held, the language of Section 1782 does not support "a requirement that district courts predict or construe the procedural or substantive law" of the foreign jurisdictions, and courts should avoid that Section 1782 litigation becomes "a battle-by-affidavit of international legal experts." *Id*. at 1099. That is precisely what happened here.

Mees' Dutch counsel, an experienced litigator in one of the Netherlands' most prestigious law firms, elaborated on the need for upfront evidence-gathering because Dutch law gives limited opportunity to supplement factual allegations at a later stage. J.A. 110 (¶ 13), 112-13 (¶¶ 17-18); J.A. 216 (¶¶ 26-27). She explained that Dutch pleading requirements, known as the "duty to substantiate," are an unusually demanding form of fact-pleading that requires a plaintiff to identify his evidence in the complaint. J.A. 108-10 (¶¶ 10-13); *see also* Dkt. #3 at 19. Mees' counsel further explained that she needs the requested discovery to plead Mees' claims and increase their chances of survival, and to address any anticipated defenses in the complaint, as required by Dutch law. J.A. 213-17 (¶¶ 14-24, 26-29). The District Court rejected these representations as "conclusory," and found

16

instead that because Dutch law does not require all available evidence to be *appended* to the complaint, the material Mees has at her disposal is "enough . . . to frame an adequate complaint, even under Dutch pleading standards." S.A. 59-60.

This was improper. The District Court misconstrued Dutch procedural law by improperly conflating an ability to draft a complaint and meeting the pleading requirements of Dutch law. Just because Mees has knowledge of pertinent facts sufficient to draft *a* complaint (which she subsequently did) does not mean that the Dutch court will hold that her claims are adequately pled under the heightened Dutch pleading requirements. Moreover, even if Mees' complaint is "proper" or "adequate," in a Dutch proceeding, the goal is not just to file an acceptable complaint that satisfies minimum pleading requirements, but a *winning* complaint. As Mees' Dutch counsel explained, under Dutch law this may necessitate, for example, pleading such evidentiary detail for each allegation that it triggers a duty for Buiter to respond to that allegation with corresponding detail, rather than with a flat denial. J.A. 217 (¶¶ 28-29). It may also necessitate appending documentary evidence.[2]

---

[2] It was improper for the District Court to dismiss Mees' need for discovery just because appending documentary evidence is not formally required. S.A. 17-21, 59-60. As a matter of *practice*, however, "[i]n civil law countries, documentary evidence is generally submitted as an attachment to the pleadings or as part of a report by an expert." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 n. 14 (2004) (quoting Hans Smit, Recent Developments in International Litigation, 35 S. Tex. L. Rev. 215, 235-36 n. 94 (1994)); *see also* J.A. 109-10 (¶ 12) (Dutch litigants are encouraged to exchange all available information immediately).

17

Instead, the District Court based its finding that discovery is not needed on the declaration of Buiter's Dutch law expert. This expert, however, addressed only the pleading requirements and the elements of defamation under Dutch law. Buiter himself has indicated that he *disputes* the application of Dutch law to Mees' defamation claim. Whether Dutch law or the more demanding requirements of New York law and the U.S. Constitution govern, is an issue that remains undecided. The District Court made no finding, and Buiter did not argue, that Mees has no need for discovery in order to plead the elements of defamation (and address known defenses) *under U.S. law*, which the Dutch court could ultimately find Mees is required to plead, in accordance with Dutch pleading requirements, *with* supporting evidence.

Thus, the District Court should have refrained from construing Dutch procedural law based on a non-dispositive expert declaration to determine what is needed to meet the pleading requirements, and accorded greater deference to Dutch counsel's own view on how her professional obligations and Dutch civil procedure require her to plead defamation in a case that *she* is about to litigate. It was also improper for the District Court to require Mees to attest that she does not already have the documents she seeks, or at a minimum accord her an opportunity to submit a declaration or hold an evidentiary hearing. *See In re Consorcio Ecuatoriano de Telecomunicaciones*, 747 F.3d 1262, 1270 (11th Cir. 2014)

(applicant's memorandum of law and counsel's declaration held sufficiently reliable indications).

### 2. The District Court Improperly Construed the Statute's "For Use" Requirement as Limited to the Preparation of a Complaint.

Even if the District Court was correct that Mees did not need the discovery to draft a complaint, which it was not, it was error to hold that the requested discovery was not "for use" in the foreign proceeding just because it is not needed for drafting purposes. The Court's narrow construction of the "for use" requirement, which is reviewable *de novo, United States v. Edelman*, 726 F.3d 305, 308 (2d Cir. 2013); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 79 (2d Cir. 2012), finds no support in the language of the statute or the case law.

It is axiomatic that Section 1782 offers foreign litigants "wide judicial assistance . . . for the obtaining of *evidence* in the United States." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 531 n.13 (1987) (emphasis added; citation omitted); *accord In re Edelman*, 295 F.3d 171, 173 (2d Cir. 2002) (Section 1782's objective is to allow litigants "to gain evidence for use in foreign litigation"); *see also Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intern. (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (documents that may be needed "in order to prove the underlying fraud" are "for use" in a foreign proceeding). There is no rule that discovery sought for an evidentiary purpose can only be requested after the foreign

19

proceeding is commenced. *See Intel*, 542 U.S. at 258 ("Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings."); *Brandi-Dohrn*, 673 F.3d at 77, 83 (acknowledging that "for use" includes the "receipt of materials into evidence in the foreign proceeding" and that *Intel* rejected that Section 1782 comes into play only when proceedings are pending or imminent) (citation omitted).

It is also well established that Section 1782 permits discovery for *investigative* use, provided that an adjudicative proceeding is "within reasonable contemplation." *Intel*, 542 U.S. at 259 (judicial assistance is "available 'whether the foreign or international proceeding *or investigation* is of a criminal, civil, administrative, or other nature'") (emphasis in original; citation omitted); *id*. at 257 (finding evidence for "use" during the investigative stage); *In re Consorcio Ecuatoriano*, 747 F.3d at 1270-71. Courts in other circuits have granted discovery requests under identical circumstances, where the applicant was contemplating bringing a defamation claim abroad. *See, e.g.*, *In re Ontario Principals' Council*, No. 2:13–mc–120–LKK–KJN, 2013 WL 6844545, at *3 (E.D. Cal. Dec. 23, 2013) (granting 1782 request of applicant who intended to commence defamation action abroad); *In re Oxus Gold PLC*, MISC No. 06-82-GEB, 2007 WL 1037387, at *1, *7 (D.N.J. Apr. 2, 2007) (granting discovery in aid of potential civil defamation suit to be brought in Switzerland).

20

The present Application is not limited to assistance in preparing a complaint. As Mees and her Dutch counsel made clear, and the District Court acknowledged, Mees sought the discovery for multiple purposes: to investigate her claims, to help her meet the Dutch pleading requirements, *and* to prove her case. Dkt. #3 at 22, 26; J.A. 7-8 (¶¶ 1, 6); J.A. 211 (¶ 4); S.A. 15-16, 38. Thus, for the District Court to hold that Mees has no use for the discovery if she has enough material to draft a complaint clearly misconstrues the far broader "for use" requirement of Section 1782, and constitutes a reversible error.

## II. THE DISTRICT COURT ERRED IN IMPOSING AN EXTRA-STATUTORY FOREIGN EXHAUSTION REQUIREMENT AS A PRECONDITION TO DISCOVERY ASSISTANCE UNDER SECTION 1782.

The Court further denied Mees' request for discovery on the ground that Mees could seek such discovery from the Dutch court after commencing suit.[3] Specifically, the District Court held that Mees can only obtain judicial assistance here "if the Dutch courts indicate that additional material is necessary and for some reason the Dutch court is not able to order it produced there." S.A. 61. The District Court's interpretation of the requirements of Section 1782, which is reviewed *de novo*, *Edelman*, 726 F.3d at 308; *Brandi-Dohrn*, 673 F.3d at 79, is erroneous for two reasons.

---

[3] S.A. 27 ("THE COURT: Then why can't the same discovery request be promulgated in the actual Dutch lawsuit?"); *id*. at 38.

*First*, there is no foreign exhaustion or quasi-exhaustion requirement under Section 1782. *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (district courts may "not impose extra-statutory barriers to obtaining discovery such as an exhaustion requirement"). Courts must evaluate Section 1782 applications in light of the statute's "twin aims" of providing efficient means of assistance to participants in international litigation and encouraging other nations to do the same. *Euromepa*, 51 F.3d at 1097. Requiring applicants "first to seek discovery from the foreign . . . tribunal," however, is "at odds with the twin purposes of 28 U.S.C. § 1782." *Malev*, 964 F.2d at 100; *see Euromepa*, 51 F.3d at 1098 (court cannot require applicant first to exhaust discovery options in France); *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 98 (2d Cir. 2009) (affirming grant of Section 1782 application, even though "the foreign court theoretically could order the parties to produce the requested evidence").

*Second*, Congress has expressly rejected the idea that foreign litigants need the imprimatur of the foreign court to seek discovery assistance from the United States. The plain language of Section 1782 permits discovery not just when requested "by a foreign or international tribunal" but also "*upon the application of any interested person*." 28 U.S.C. § 1782(a) (emphasis added). This language "means what it says," and was specifically inserted in 1964 in order to liberalize U.S. courts' assistance to participants in foreign litigation. *Malev*, 964 F.2d at 100-

22

01; *accord In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request.").[4]

Accordingly, the District Court erred in (i) requiring Mees to obtain the Dutch court's concurrence that the requested discovery is necessary, and (ii) limiting U.S. discovery assistance to material not producible through the Dutch courts. Its decision should be reversed.

## III.   THE DISTRICT COURT'S FAILURE TO REASONABLY BALANCE ALL RELEVANT FACTORS WAS AN ABUSE OF DISCRETION.

Once the statutory requirements of Section 1782 are met, a district court must "use its discretion in balancing a number of factors." *Brandi-Dohrn*, 673 F.3d at 80. The court's discretion, however, is circumscribed. *Metallgesellschaft*, 121 F.3d at 79. A district court must not order or deny discovery "on inappropriate grounds," *Euromepa*, 51 F.3d at 1097; *see Malev*, 964 F.2d at 102 (reliance on

---

[4] While a court may deny an application if the request is duplicative of discovery equally available in the foreign jurisdiction, *Metallgesellschaft*, 121 F.3d at 79, it is undisputed that this is not the scenario here. The District Court found that "the extent of the discovery requested was far broader than that which appears to be available in the Dutch courts." S.A. 59. Buiter also conceded that "under Dutch law Ms. Mees is not entitled to anything close to the far-reaching discovery she is seeking here." Dkt. #9 at 14; *accord* J.A. 197 (¶ 33) (documents sought here "almost certainly" not available in the Netherlands). It is, as Judge Posner aptly put it, contradictory for a district court to find that an applicant "could get all the discovery it needed by invoking [foreign] discovery procedures," while also finding an attempt to circumvent foreign law "by seeking more discovery than those procedures allow." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011).

improper factors is an abuse of discretion).  Discretion is abused when the decision rests on an erroneous view of the law or a clearly erroneous assessment of the evidence, cannot be located within the range of permissible decisions, or fails to consider or unreasonably balances all the relevant factors.  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003); *Huang v. I.N.S.*, 436 F.3d 89, 99 (2d Cir. 2006) (failure to weigh relevant factors constitutes abuse of discretion).  Here, the District Court rested its decision on clearly improper grounds, refused to consider a key factor, and unreasonably balanced the remaining factors.

### 1.    The District Court Refused to Consider the Twin Aims of the Statute.

Although it was undisputed that granting the Application would promote Congress' dual objective in enacting Section 1782, the District Court expressly declined to consider this factor.  This was an abuse of discretion.

A district court's discretion "is guided by several factors—including, *in particular*, 'the twin aims of the statute . . .'"  *Marubeni*, 335 Fed. App'x at 96 (emphasis added); *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) (twin aims among "factors the district court should consider"); *Euromepa*, 51 F.3d at 1097 (district courts are instructed to evaluate discovery requests under Section 1782 in light of the statute's twin aims).  As this Court has held, this factor alone "should generally prompt district courts to provide some form of discovery assistance."

24

*Euromepa*, 51 F.3d at 1102; *accord In re Bayer AG*, 146 F.3d 188, 195-96 (3d Cir. 1998) (in line with Congress' dual objective, district courts should treat relevant evidence as presumptively discoverable under Section 1782).

Mees argued in her opening brief that granting the Application is the most efficient means of assisting her in substantiating and proving her defamation claim, and that the Netherlands has demonstrated its interest in mutual international cooperation in evidentiary matters by ratifying the Hague Evidence Convention,[5] so that, if applicable, witnesses outside the United States can be compelled to testify in the Netherlands for the benefit of U.S. proceedings by letter rogatory. Dkt. #3 at 26; *see* J.A. 113; S.A. 130 (Art. 10). Accordingly, it is clear that granting the Application promotes the statute's twin aims (J.A. 9; Dkt. #3 at 26), and nowhere in his opposition papers does Buiter dispute that conclusion. *See* Dkt. #9 at 12-20; Dkt. #16 at 4. The District Court did not consider as a factor, however, whether the Application would provide Mees with effective discovery assistance or encourage the Netherlands to reciprocate. S.A. 58-61. Indeed, the District Court brushed aside this Court's explicit instructions in *Marubeni* and *Euromepa* to weigh the congressional objectives, stating "I think we're probably past those very general cases." S.A. 52-53. In doing so, the District Court abused its discretion. *See Huang*, 436 F.3d at 99; *Pollux*, 329 F.3d at 70.

---

[5] Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555 (S.A. 128-35).

## 2.   *The Application Does Not Circumvent Dutch Discovery Rules Merely Because Those Rules Are Narrower.*

The District Court incorrectly found that Mees' Application was an attempt to circumvent Dutch evidence-gathering restrictions "in that the extent of the discovery requested was far broader than that which appears to be available in the Dutch courts." S.A. 59. This was an inappropriate ground to deny discovery.

"[A] district court should not consider the *discoverability* of the evidence in the foreign proceeding. . . ." *Brandi-Dohrn*, 673 F.3d at 82 (emphasis in original). The law is well-settled that the mere circumstance that discovery is more limited abroad does not imply that foreign proof-gathering restrictions are being circumvented. *See, e.g.*, *In re Metallgesellschaft*, 121 F.3d at 79-80 (reversing denial of discovery based on applicant's inability to obtain the same discovery if the matter were before a German court, and holding that Section 1782 authorizes discovery, even if it "would not be available in foreign jurisdictions"); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (limitations of Venezuelan discovery rules are not an attempt to circumvent proof-gathering restrictions but, to the contrary, suggest it "may be necessary to provide Pan Americano with the documents it seeks").[6]  Indeed, to hold otherwise "would

---

[6] Courts within this Circuit have held that finding a circumvention of foreign proof-gathering restrictions requires bad faith.  *See, e.g.*, *Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) ("The primary issue for us is whether [applicant] is pursuing this discovery in bad faith."); *In re Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 26, 2006) ("Absent any indication of

only thwart § 1782(a)'s objective" to assist in collecting relevant information that cannot be obtained under foreign law.  *Intel*, 542 U.S. at 262.

Moreover, finding an attempt to circumvent Dutch proof-gathering restrictions under the present circumstances is virtually impossible.  It requires a "clear directive" that the use of Section 1782 "trenched upon the *clearly established* procedures" of the Dutch courts, *i.e.* "authoritative proof" embodied in Dutch "judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa*, 51 F.3d at 1099-1100 (emphasis in original).  Not only does no such proof exist here, the authorities are, in fact, diametrically the opposite.

In *Paluck v. Duizendstraal*, 1996:AH5562, KG 1996, 158 (Pres. Dist. Ct. Utrecht Apr. 9, 1996), cited in *In re Duizendstraal*, No. 3:95–MC–150–X, 1997 WL 195443, at *2 (N.D. Tex. Apr. 16, 1997), the President of the District Court of Utrecht, the Netherlands, held that "it is, in principle, not unlawful to collect evidence" through a Section 1782 request, which is "one of the possibilities available if someone wishes to gather evidence abroad for an action in The Netherlands." *See* J.A. 113-14.  More recently, the District Court of Rotterdam, the Netherlands, held the same in no mistakable terms:

---

bad faith" an attempt to acquire discovery that an applicant is unable to obtain abroad is not "a vehicle to end-run foreign proof-gathering restrictions.").  The District Court did not, and could not, make any finding of bad faith on Mees' part.

> [T]he circumstance that there are more extensive possibilities for requesting documents, and that the opportunity to ask questions to witnesses is broader and less targeted in the Discovery Procedures than under Dutch civil procedure law . . . is *no obstacle to [Plaintiff] using the option that title 28 U.S.C. § 1782 provides*. . . . The use hereof by the [Plaintiff] is compatible with the principle of full evidentiary discretion in Dutch civil procedural law, and not against public policy or due process. . . . *[N]o rule of Dutch law bars [Plaintiff] from availing itself of the discovery possibilities in the United States* . . . for the benefit of the present procedure, while the same is also not contrary to the choice of forum or the demands of due process. . . .

J.A. 88 (¶¶ 5.6, 5.10, 5.14).   Buiter presented no authority to the contrary. Accordingly, there can be no doubt that the use of Section 1782 is, in fact, fully compatible with, and does not circumvent, any proof-gathering restrictions Dutch law may have.   *See also* J.A. 113 (¶ 20).   To hold otherwise was an abuse of discretion.

### 3. *The District Court's Finding that the Application Violates U.S. Public Policy Was Legally and Factually Unsupportable.*

The District Court's summary finding, without explanation, that the Application "appeared designed to collaterally attack the still pending criminal prosecution here in New York" and thus violates U.S. public policy (S.A. 59) finds absolutely no support in the record, and falls outside the range of permissible decisions for three reasons.

*First*, there is nothing in the record from which the District Court could reasonably infer that the Application is motivated by an intention to collaterally attack the criminal prosecution, rather than a genuine desire to sue Buiter to obtain

28

a retraction. Indeed, the record strongly suggests the opposite. Mees did file suit against Buiter in the Netherlands, which should undo any suspicious that the announcement of that Dutch action was merely a smoke-screen for discovery in the criminal matter. Moreover, the criminal prosecution is "pending" only in the most technical sense; it is for all intents and purposes inactive, and set for dismissal in a matter of months, which will leave Mees with no criminal record at all. There is *nothing* more that Mees is required to do in that matter.

It is also telling that, shortly before the May 6 Opinion, Buiter, his employer Citigroup, and Mees entered into a Stipulated Protective Order ("SPO") in the parallel Section 1782 application against Buiter's employer Citigroup. J.A. 229-39. Section 2(a) of the SPO restricts Mees' use of discovery materials to "only . . . this civil proceeding pending in the Southern District of New York or the contemplated proceeding in the Netherlands." J.A. 230. If Mees' intention was really to "collaterally attack" the already inactive criminal prosecution, it would make little sense for her to *agree* not to use any evidence she expected to obtain from Citigroup for the criminal matter.

*Second*, the District Court's finding is incomprehensible because no one actually involved in the criminal prosecution expressed any objection. The DA's Office did not object when Mees' counsel stated Mees' intention to sue Buiter in

the prosecutor's presence, and the Criminal Court also did not "see that as a problem." J.A. 228.

*Third*, even if evidence of Buiter's false statements could have an impact on the criminal case (if it were re-opened), there is nothing untoward about seeking civil discovery pending an active criminal prosecution. Numerous courts have, in fact, granted Section 1782 applications during the pendency of criminal cases. *See, e.g.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297, 305, 310-11 (2d Cir. 2011) (affirming Section 1782 discovery relevant to civil litigation and pending criminal prosecution); *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 562 (9th Cir. 2011) (Section 1782 permits discovery "for use in both underlying civil lawsuits and underlying criminal prosecutions"); *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003). Particularly where, as here, the applicant's "reputation . . . ha[s] been called into question," she "is currently unemployed," and "the pendency of this litigation continues to cloud [her] career and personal life," Mees "deserves a timely opportunity to clear [her] name." *S.E.C. v. Jones*, No. 04 Civ. 4385(RWS), 2005 WL 2837462, at *2 (S.D.N.Y. Oct. 28, 2005) (denying stay of discovery pending criminal prosecution). Neither Buiter nor the District Court has cited even a single case, and Mees has been unable to locate any, where a Section 1782 application was denied on the ground of interference with a pending criminal prosecution in the United States.

*Fourth*, the District Court's view is difficult to reconcile with congressional intent. In 1996, Congress modified Section 1782 to "clarify that § 1782 could be used to provide discovery for use in criminal proceedings abroad." *In re Edelman*, 295 F.3d at 180. It would be anomalous for Congress to *encourage* discovery of evidence relevant to *foreign* criminal matters, yet deem it objectionable when it may have relevance to a *U.S.* prosecution.[7]

### 4. The District Court's Finding of Burden Was Unreasonable and Did Not Support Denying Discovery of All Relevant Evidence Indiscriminately.

The District Court summarily found that Mees' discovery requests "*taken in the context of the Dutch discovery scope* do appear to be intrusive and burdensome." S.A. 59 (emphasis added). To the extent the District Court implied that the measure of burden or intrusiveness is found in the Dutch discovery rules, it clearly applied an incorrect legal standard. The scope of discovery pursuant to Section 1782 is determined by Fed. R. Civ. P. 26. *See Metallgesellschaft*, 121 F.3d at 80; *Euromepa*, 51 F.3d at 1100 n. 4. To hold that discovery is burdensome or intrusive merely because it exceeds the scope of discovery permitted under foreign

---

[7] Nor is such a conclusion consistent with Congress' approval of numerous treaties for mutual assistance in criminal matters with foreign nations, *all* of which provide for discovery that may affect pending criminal prosecutions in U.S. courts. The Mutual Assistance Treaty with the Netherlands, for example, clearly contemplates discovery assistance to have an impact on pending U.S. prosecutions in Article 5, which provides in pertinent part that "[a] person from whom evidence is sought shall, if necessary, be compelled by subpoena to appear and testify or produce documents, record and articles to the same extent as in investigations *or proceedings* in the Requested State." Treaty on Mut. Assist. in Crim. Matters, U.S. – Neths., June 12, 1981, 35 U.S.T. 1361 (Art. 5(1) (S.A. 117) (emphasis added).

law would be to resurrect a foreign discoverability requirement, already rejected in *Intel*. It would deprive Section 1782 of much of its meaning because few, in any, countries permit discovery at U.S. levels, *see Intel*, 542 U.S. at 262 & n. 12; *Heraeus Kulzer*, 633 F.3d at 593, which would have the result of rendering nearly every Section 1782 application "burdensome" and "intrusive."

Nor were the requests, in fact, burdensome or intrusive. Mees requested only one deposition and eleven categories of documents, the vast majority of which are emails Buiter already collected to hand over to the authorities. J.A. 22-23; 37-41; 146 (¶ 3). Buiter merely responded with vague and boilerplate objections (Dkt. #9 at 16-20) to Mees' detailed explanations that addressed issues of relevance, burden, and overbreadth. Dkt. #3 at 22-26; Dkt. #16 at 10-11. The District Court did not analyze, or rule on, the relevance, breadth or burden of any specific request.

Even if Mees' requests were too broad, however, the District Court should not have taken an all-or-nothing approach and relieved Buiter of the burden of producing *any* document or deposition testimony. *Consorcio Ecuatoriano*, 747 F.3d at 1272-73; *accord Euromepa*, 51 F.3d at 1101 (district courts must "not err on the side of completely withholding discovery assistance"; it is "far preferable" to issue "a closely tailored discovery order rather than . . . simply denying relief outright"); *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (district courts have wide

discretion to tailor discovery requests to avoid problems). The District Court's failure to exercise any discretion to tailor Mees' requests more narrowly is an abuse of discretion. *See Heraeus Kulzer*, 633 F.3d at 597-98 (district court's failure to "cut down" a non-frivolous but overbroad request was "unreasonable, and therefore reversible").

### 5.    *It Is Undisputed that the Remaining Factors Favor Granting the Application.*

A district court must also consider the nature of the foreign tribunal, the receptivity of the foreign court to U.S. judicial assistance, and the character of the foreign proceedings. *Intel*, 542 U.S. at 264. There is no dispute that the first two of these factors favored granting the Application. The District Court did not reach the question whether the Dutch proceeding was within reasonable contemplation, but did find that if a proceeding is brought, it is appropriate for Section 1782 discovery. S.A. 58-59.

*Intel* further requires courts to consider whether there is a "need for § 1782(a) aid" because the discovery is beyond the foreign tribunal reach. *Intel*, 542 U.S. at 264. The District Court should have found that Buiter was beyond the Dutch court's jurisdictional reach prior to Mees filing suit because Mees' Dutch counsel attested to that (J.A. 107-08 (¶¶ 8-9), 103 (¶ 19); 218-19) and Buiter's expert had failed to controvert it by expressly declining to take a position on this issue. J.A. 196 (¶ 32).

33

Accordingly, the District Court's refusal to consider the statute's twin aims, its erroneous findings of burden, intrusiveness, and a conflict with Dutch law and U.S. public policy, its application of erroneous standards to those inquiries, and its failure to weigh the remaining factors in Mees' favor constitute a clear abuse of discretion.

## <u>CONCLUSION</u>

For all the foregoing reasons, this Court should reverse the District Court's May 6 Opinion, grant the Applicant's application for discovery assistance pursuant to 28 U.S.C. § 1782, and grant the Applicant leave to serve subpoenas *ad testificandum* and *duces tecum* on the Respondent.

Dated:      August 13, 2014          Respectfully submitted,

_____
Olav A. Haazen
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
ohaazen@bsfllp.com

*Attorneys for Applicant-Appellant*
*Heleen Mees*

34

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times Roman proportional font and contains 8,920 words, and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated:        August 13, 2014

_____
Olav A. Haazen
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
ohaazen@bsfllp.com