# 14-1866-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT



HELEEN MEES,
Application pursuant to 28 U.S.C. 1782 for leave to issue
subpoenas for deposition and documents for use in proceeding
in the District Court of Amsterdam the Netherlands,

*Applicant-Appellant,*

*v.*

WILLEM H. BUITER,

*Respondent-Appellee.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## SPECIAL APPENDIX

BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
914-749-8200

*Attorneys for Applicant-Appellant*

KATSKY KORINS LLP
605 Third Avenue
New York, New York 10158
212-716-3225

*Attorneys for Respondent-Appellee*

# **Table of Contents**

<div align="right">

**Page**

</div>

Transcript of Proceeding held before the Chief U.S. District Judge
    Loretta A. Preska, held on May 6, 2014, Appealed From ............. S.A. 1

Order, dated May 6, 2014, Appealed From ...................................... S.A. 62

28 U.S.C. § 1291 ...................................................................... S.A. 63

28 U.S.C. § 1782 ...................................................................... S.A. 64

Excerpt from National Defense Authorization Act, Pub. L.
    104-106, 110 Stat.186 ..................................................... S.A. 65

Fed. R. Civ. P. 26 ................................................................... S.A. 66

N.Y. CPL § 170.55 ................................................................. S.A. 78

N.Y. CPL § 240.20 ................................................................. S.A. 80

N.Y. CPL § 240.40 ................................................................. S.A. 82

N.Y. CPL § 240.45 ................................................................. S.A. 84

N.Y. CPL § 340.30 ................................................................. S.A. 86

N.Y. CPL § 530.11 ................................................................. S.A. 87

N.Y. CPL § 530.12 ................................................................. S.A. 92

N.Y. CPL § 215 ...................................................................... S.A. 99

N.Y. Pub. Officers L. §§ 84 *et seq.* .................................... S.A. 101

Treaty on Mutual Assistance in Criminal Matters, U.S.-Neths.,
    June 12, 1981, 35 U.S.T. 1361 ...................................... S.A. 113

Convention on the Taking of Evidence Abroad in Civil or
    Commercial Matters, dated March 18, 1970, 23 U.S.T. 2555     S.A. 128

S.A. 1

1

E56SMEEC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------x

HELEEN MEES,

            Applicant,

       v.                 14 MC 88

WILLIAM H. BUITER,

           Respondent.

------------------------------x

                     New York, N.Y.
                     May 6, 2014
                     9:05 a.m.

Before:

               HON. LORETTA A. PRESKA,

                     District Judge

            APPEARANCES

BOIES, SCHILLER & FLEXNER LLP
    Attorneys for Applicant
BY:  OLAV A. HAAZEN

KATSKY KORINS LLP
    Attorneys for Respondent
BY:  ADRIENNE B. KOCH
    JOSEPH WEINER

S.A. 2

E56SMEEC
```
 1                (Case called)
 2                THE COURT:  In re the application of Heleen Mees.  For
 3   Ms. Mees.
 4                MR. HAAZEN:  Olav Haazen, your Honor.  Good morning.
 5                THE COURT:  Good morning.  And for Professor -- is it
 6   Buiter?
 7                MR. HAAZEN:  It's Buiter, your Honor.
 8                THE COURT:  Say it again.
 9                MS. KOCH:  Buiter.  Adrienne Koch, and my associate,
10   Joseph Weiner.
11                THE COURT:  Good morning.
12                MS. KOCH:  Good morning.
13                THE COURT:  All right.  First, in terms of what facts
14   are in dispute, I think I understand that, and especially
15   recently, Professor Buiter took the position that there was no,
16   I think, four-year romantic relationship between himself and
17   Professor Mees; is that right?  Are those the facts at issue?
18                MR. HAAZEN:  Your Honor, he's taken the position that
19   there's been no romantic relationship whatsoever, that there
20   was no sexual relationship either.  Respectfully, your Honor, I
21   think all the facts are disputed.  He says he disagrees in his
22   declaration.  He says he disagrees with everything she says
23   and --
24                THE COURT:  Well, we're still trying to iron it out.
25   I mean, that's essentially the issue, right?
```

S.A. 3

E56SMEEC

```
1              MR. HAAZEN:  Right.
2              THE COURT:  The factual dispute.
3              MR. HAAZEN:  Right.  And they also have raised a
4    number of defenses of which, among those defenses, is the truth
5    defense.
6              THE COURT:  Right.
7              MR. HAAZEN:  So I don't see what's not disputed.
8              THE COURT:  Which is, perhaps, inconsistent with the
9    denial; is that right?
10             MR. HAAZEN:  He will say that all the false statements
11   were not false but true.  In other words, everything my client
12   says is false.
13             THE COURT:  Okay.  So the truth defense would be
14   consistent with there was no romantic relationship and she
15   stalked me?
16             MR. HAAZEN:  Correct.
17             THE COURT:  Is that right?
18             MR. HAAZEN:  Right.
19             THE COURT:  Do you disagree, counsel?
20             MS. KOCH:  No, your Honor, I don't disagree, except I
21   don't know whether you want to call it a small point or a key
22   point, but let me just say that the criminal complaints, which
23   are attached to their papers, make clear that this stalking
24   case -- and they're attached to the papers as Exhibits 12 and
25   13 -- make clear that this stalking case was prosecuted as a
```

E56SMEEC
```
 1   family offense based on an intimate relationship.  There was,
 2   as I understand it, at some point briefly, some kind of sexual
 3   relationship, but not what Ms. Mees is saying, not a four-year
 4   bilateral, mutual, emotional, romantic relationship.
 5             THE COURT:  Would you point out to me, please, in 12
 6   or 13 how we know that?
 7             MS. KOCH:  Well, if you look at Exhibit 12, at the
 8   very top it says family offense.  Defendant-victim
 9   relationship:  Intimate.  And the same thing is on --
10             THE COURT:  I see.
11             MS. KOCH:  -- exhibit 13.  And if you look at --
12             THE COURT:  What does that mean?  Does anyone have any
13   idea?
14             MS. KOCH:  I'm not a criminal lawyer, but my
15   understanding is that this was prosecuted under the New York
16   penal law under statutes that have to do with stalking by
17   somebody with whom one has a family or intimate relationship.
18   And given that, obviously, she's not his sister, this was
19   prosecuted as someone with whom at some point there was some
20   kind of intimate relationship.  And, in fact, if you look at
21   the order, that's the adjournment in contemplation of
22   dismissal, which is Exhibit 1 --
23             THE COURT:  Is that on the reply?
24             MS. KOCH:  -- to our papers.  Exhibit 1 to our papers
25   is the order that's the adjournment of contemplation of
```

E56SMEEC

1    dismissal, as I believe it says family ACD, if I'm not
2    mistaken.  On the protective order, which is Exhibit 2 to our
3    papers, it's stamped family ACD.  It's clear that this case was
4    prosecuted as one in which there was some relationship between
5    the victim and the defendant.  And let me also emphasize, your
6    Honor, that a key point here that I don't want to lose is that
7    the prosecution is still pending.  There's still a criminal
8    prosecution pending --
9              THE COURT:  I know.
10             MS. KOCH:  -- which Ms. Mees is trying to collaterally
11   attack the basis for in a foreign court.  If she tried to do
12   that here, your Honor, under well-established precedent, the
13   case would have to be stayed until there was no further
14   possibility of further criminal prosecution.  She could still
15   be convicted.  And that's the case until March of 2015.
16             She wants to go into a foreign court to collaterally
17   attack the basis for her still pending criminal prosecution,
18   which is still pending because of her own choice, not to go to
19   trial and seek an acquittal back in March, not to put the
20   prosecution to its burden of proof beyond a reasonable doubt,
21   but instead to accept an adjournment, accept these conditions
22   pursuant to which the case, by her choice, is going to continue
23   to pend until March 1st of 2015.
24             THE COURT:  All right.
25             MR. HAAZEN:  Your Honor --

E56SMEEC

```
1              THE COURT:  Am I mispronouncing your client's name as
2    well?
3              MR. HAAZEN:  Well, it's Mees.
4              THE COURT:  Say it again.
5              MR. HAAZEN:  It's actually Mees.
6              THE COURT:  Mees.
7              MR. HAAZEN:  Your Honor, I just wanted to address your
8    first question, your actual question.  I don't think family
9    offense means that at all, that they are somehow supposed to be
10   family, and I don't think we can read anything into that.  And
11   the case is not prosecuted on the basis that there was some
12   kind of a sexual relation between the two.  That's nowhere in
13   the actual complaint.  That's nowhere in the actual complaint,
14   and Mr. Buiter denies it.
15             And, quite frankly, your Honor, I hear this now from
16   Ms. Koch, that he apparently no longer denies that there was
17   some kind of a sexual relationship, but, frankly, I think he's
18   talking out of both sides of his mouth, because he's saying in
19   his declaration that he disagrees with the allegations.  And he
20   stated publicly, if I may say, if I may read this to your
21   Honor, Ms. Mees' attorneys allege a four-year, multi-mutual,
22   two-sided, romantic affair between Ms. Mees and myself.  That
23   is untrue.  There was no four-year, mutual, two-sided, romantic
24   affair between Ms. Mees and myself.  There was no three-year,
25   mutual, two-sided, romantic relationship --
```

E56SMEEC

```
 1              THE COURT:  There was what?  Say it again.
 2              MR. HAAZEN:  There was no three-year, mutual,
 3    two-sided, romantic affair between Ms. Mees and myself.
 4              THE COURT:  What paragraph are you reading?
 5              MR. HAAZEN:  This is Exhibit C to my reply
 6    declaration.
 7              THE COURT:  I was looking at the declaration of
 8    Professor -- say it again -- Buiter.
 9              MS. KOCH:  Buiter, your Honor.
10              THE COURT:  Buiter.  Thank you.  Sorry for massacuring
11    your names.
12              Counsel, tell me, exhibit what to your --
13              MR. HAAZEN:  Exhibit C to the reply declaration.  And
14    then it is the third page.  This is his Facebook statement,
15    public statement he made on Facebook, about what he calls the
16    Mees business.  He published it on March 10.  There is no
17    admission anywhere here that he did have a relationship.  What
18    he does say, after saying there was no four-year, three-year
19    relationship, that there was no two-year, mutual, two-sided,
20    romantic affair.  It's the second full paragraph on that page,
21    your Honor, that starts with Ms. Mees' attorneys.
22              THE COURT:  Right.
23              MR. HAAZEN:  It goes on, there was no one-year,
24    mutual --
25              THE COURT:  No mutual, two-sided, et cetera, et
```

E56SMEEC
1  cetera.
2          MR. HAAZEN:  Yes.  There was no mutual, two-sided,
3  romantic affair between Ms. Mees and myself.
4          THE COURT:  All right.  Yes, counsel.
5          MS. KOCH:  But that has to do with her
6  characterization of the relationship as being an emotional,
7  deep, romantic affair, and that's what he takes issue with.
8  That's what he takes issue with.  This is put in for the first
9  time on reply, so Dr. Buiter hasn't had a chance to respond to
10  it in a declaration.
11          What he was disagreeing with in his declaration was
12  the lengthy discussion in Mr. Haazen's moving brief, which is
13  supported -- we have no declaration.  We have no sworn
14  statement from Ms. Mees at all.  We have the lengthy, detailed
15  discussion of their alleged relationship with all the dates in
16  2009, 2013, and 2012, in the brief.  And that's what Mr. Buiter
17  was saying, in broad terms, he doesn't agree with, but isn't
18  responding to point by point, because it's not what's relevant
19  here.  What's relevant here is whether she needs or is entitled
20  to discovery for the purpose of framing a complaint --
21          THE COURT:  I understand that.  Run by me again,
22  please, what you just said about the numerous bullet points in
23  the movant's brief alleging, you know, on X date, we had dinner
24  and we tried this, and on Y date, we were in this hotel and
25  blah, blah, blah.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC

1         MS. KOCH:  Well, your Honor, it's the entire of his
2    27-page moving brief.  The first 15 pages or so are devoted
3    to --
4         THE COURT:  These details, I understand.  And what's
5    your point on that?  Is your point that --
6         MS. KOCH:  It's not supported.
7         THE COURT:  -- it's not an affidavit?
8         MS. KOCH:  It's not supported by an affidavit by
9    Ms. Mees.  It's extraordinary, your Honor, there's no -- for
10   reasons I only guess at, Ms. Mees has not elected to support
11   the declaration with any declaration from her.  So we all have
12   these statements, these bald statements in his brief with no
13   sworn statement from her, and that's the basis for the
14   application.
15        MR. HAAZEN:  Your Honor, if I may address that?
16        THE COURT:  Yes, counsel.
17        MR. HAAZEN:  I'm really trying to answer your Honor's
18   question and not jump from one topic to another.
19        THE COURT:  I think I'm doing the jumping here.
20        MR. HAAZEN:  You asked about the Buiter declaration.
21   The paragraph is paragraph 5.  And this is not about the
22   details.  This is about everything she said about her
23   relationship.  In paragraph 5 she says, I understand that this
24   discovery application by Ms. Mees is not about the substance of
25   what is said about my relationship with her in these papers.

E56SMEEC

```
 1              Therefore, I'm not responding to those statements, but
 2    that does not mean and should not be read to suggest that I
 3    agree with them.  That's what he says in his declaration.  I do
 4    not, he then says.  So he's talking about all the allegations
 5    about the relationship.
 6              So as far as I'm concerned, other than what counsel
 7    now wants to say during oral argument, as far as I'm concerned
 8    in the papers, he is denying that there's any relationship or
 9    there was any relationship whatsoever, highly crucial fact.
10    And because it is a highly crucial fact, I have sought to
11    indicate to your Honor that Ms. Mees knows or was able to
12    construe on the basis of her e-mails or schedules, or however
13    she did it, a very significant number of romantic encounters
14    showing that there was, in fact, a relationship.
15              I believe that is a very relevant fact if he admits
16    that there was a relationship.  In fact, if he admits there was
17    a relationship for four years and that it lasted until only a
18    short period before he had enough of it and ultimately ran to
19    the police, if he had mentioned that to the police, instead of
20    saying during those four years I've been bombarded with 3,000
21    e-mails, but he would have said there was an actual
22    relationship during which both of the parties were in that
23    relationship, sent each other e-mails, as people do.
24              THE COURT:  I'm missing where you are on the point.
25    What is the point here?
```

E56SMEEC
```
 1              MR. HAAZEN:  That is a hugely important fact that is
 2     relevant.  This is what made the statements to the police a
 3     false statement.  And that's why we need evidence on all those
 4     factual issues.
 5              Now, the separate question is whether this needs to be
 6     put in an affidavit or declaration by my client.  There is no
 7     such requirement in Section 1782 at all.
 8              THE COURT:  Well, nobody says there is.  It is
 9     curious, though, that there is no affidavit.
10              MR. HAAZEN:  I chose to put it in my papers and so it
11     is there under my --
12              THE COURT:  All right.  And am I correct that the
13     bullet points that are in the brief --
14              MR. HAAZEN:  Yes.
15              THE COURT:  -- about various dates and times and
16     whatever places were reconstructed by your client based on
17     whether it's her diaries or her charge cards or whatever it is?
18              MR. HAAZEN:  Or sometimes from memory.  I'm trying to
19     tell the Court that this is a real case and that this is not
20     just made up by her.  She can't make up 30 days or 25,
21     something like that, with such detail.
22              THE COURT:  That's what I'm asking.  And she's
23     obviously got e-mails and charge cards and all that stuff.
24              MR. HAAZEN:  Yes.  And like I said, for some of them,
25     she does not have that at all.  It's pure memory.  These are
```

E56SMEEC
1   issues, your Honor, that need to be proven, which is the very
2   reason I'm asking for this discovery.
3            THE COURT:  Okay.
4            MR. HAAZEN:  Of course, there are declarations that
5   counsel has cited.  There's a case out of the Eleventh Circuit,
6   which is a brand new case that's called -- it's the Consorcio
7   Ecuatoriano case or something.  In that case, the only
8   difference that we have in this case, also pre-action discovery
9   for the purpose of appending documentary evidence to a
10  complaint, discovery was granted.  The only difference there,
11  of which my opposing counsel makes a big deal, is that
12  declaration was submitted by in-house counsel stating that, you
13  know, they intended to file suit and that they had grounds for
14  that.
15           Well, we have an actual person here.  We don't have a
16  corporation.  So Dr. Mees does not have in-house counsel.  She
17  does have external counsel, and we have two external counsel
18  both submitting declarations in this case.  And a number of the
19  pertinent facts relate to things that counsel can clearly make
20  statements about based on personal knowledge; such as, for
21  example, the content of the Dutch publications.  Even my
22  opponent's Dutch counsel submits a declaration making
23  statements about the Dutch publications, and I can do the same.
24           THE COURT:  Let me go back for a minute.  When we were
25  looking at the ACD, it refers to CPLR Section 530.12, which is
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

E56SMEEC
```
 1   entitled Protection for Victims of Family Offense and relates
 2   to spouses, former spouses, parent and child, or between
 3   members of the same family or household.
 4             Is that relevant in any way?
 5             MR. HAAZEN:  I don't read in that that the victim and
 6   the alleged perpetrator need to be in the same family --
 7             THE COURT:  Then what do you think it means, counsel?
 8   You mean that the professor has a family?  I don't think that's
 9   what it means.
10             MR. HAAZEN:  -- that the order of protection extends
11   to.  And my client was accused of also stalking and harassing
12   Professor Buiter's wife.
13             THE COURT:  So that's what you think family means in
14   that context?
15             MR. HAAZEN:  Your Honor, I'm not a criminal lawyer.  I
16   do not know what that means.
17             THE COURT:  Did you look at the statute?
18             MR. HAAZEN:  Yes, I did.
19             THE COURT:  So you think family means protecting his
20   wife?
21             MR. HAAZEN:  Your Honor, I don't know what that means.
22             THE COURT:  Counsel.
23             MR. HAAZEN:  Otherwise, I'm happy to -- I believe you,
24   your Honor.
25             THE COURT:  Okay.
```

E56SMEEC

1          MR. HAAZEN:  I don't see the relevance of the point.
2          THE COURT:  I'm asking if it's relevant.  If you think
3    it isn't, fine.
4          Counsel, did you have a view on that?
5          MS. KOCH:  I absolutely have a view on that.  It's
6    exactly what I said before.  This case was prosecuted as
7    harassment and stalking by a defendant who formerly had some
8    kind of intimate relationship with the victim, as that's
9    exactly the statute that your Honor read.
10          And the other thing is, my understanding of the
11   statute is the reason why the adjournment in contemplation is a
12   year and not six months, which would otherwise be the norm, is
13   precisely because it was a family offense.  So yes, it's
14   absolutely relevant.
15          MR. HAAZEN:  But how does this --
16          THE COURT:  Let me ask you this:  Does that fact that
17   this was the statute it was prosecuted under and under which
18   the ACD was entered, does that undercut your client's position
19   that there was no intimate relationship?  Which I'm not sure
20   does or doesn't.
21          MS. KOCH:  No, your Honor.  I think we're dealing with
22   semantics.  There was, at some point, a sexual relationship.
23   There was not a four-year long, bilateral, romantic, intimate,
24   emotional relationship.  That's what Ms. Mees claims and that's
25   what my client denies.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

S.A. 15

E56SMEEC

```
 1              MR. HAAZEN:  But can you tell that to the press now
 2  then?
 3              MS. KOCH:  The press reported it exactly that way.
 4              THE COURT:  Counsel.
 5              MR. HAAZEN:  Your Honor --
 6              THE COURT:  It's unbecoming to --
 7              MR. HAAZEN:  I apologize, your Honor.
 8              THE COURT:  -- squabble with counsel.
 9              MR. HAAZEN:  If it was prosecuted under that statute
10  and if the statute does mean that, this doesn't say anything
11  about what Buiter is claiming apparently very, very implicitly
12  by, I guess, allowing the criminal prosecution to be under this
13  particular statute.  Mr. Buiter is definitely creating the
14  impression that there was no intimate relationship whatsoever.
15  I believe that's a disputed fact.
16              THE COURT:  Okay.  I think that's where we started.
17  May I ask of this, please, it did seem that the materials that
18  the movant seeks are more to prove her case than to make the
19  pleading.  And I know Ms. Mees' expert's reply affidavit,
20  looking at paragraph 4 on page 2, counsel there talks about the
21  need for further factual detail and evidentiary support for
22  Dr. Mees' claims, as well as to address Buiter's --
23              MS. KOCH:  Buiter.
24              THE COURT:  -- Buiter's anticipated defenses, not just
25  to evaluate and eventually prove Dr. Mees' case, but also to
```

E56SMEEC
1    draft a complaint that satisfies the particularly demanding
2    Dutch pleadings.
3            MR. HAAZEN:  That's correct, your Honor.
4            THE COURT:  That seems to be very conclusory.  And I
5    didn't know in counsel's moving affidavit any additional
6    material that was any more specific about exactly why these
7    types of documents were required for the Dutch pleadings
8    standards.  There were general discussions of anticipating the
9    known defenses --
10           MR. HAAZEN:  Right, right.
11           THE COURT:  -- and blah, blah, blah, but there really
12   wasn't anything specific about why this kind of documentation
13   is needed.
14           MR. HAAZEN:  I don't know what you mean by specific
15   then, your Honor.
16           THE COURT:  Well, Dr. Buiter denies that there was a
17   four-year intimate relationship.  The following documents will
18   tend to support Professor Mees' position that there was such a
19   relationship --
20           MR. HAAZEN:  Oh, okay.
21           THE COURT:  -- or something like that.
22           MR. HAAZEN:  I understand.  I have made those
23   arguments in our brief.  I have said --
24           THE COURT:  Well, you're not an expert on Dutch law.
25           MR. HAAZEN:  Yes, but my -- well, I guess we'll assume
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

E56SMEEC

1    I am not.  But the expert Dutch counsel says we need it for
2    everything we say.
3            THE COURT:  I know, but it's very conclusory I'm
4    saying.  I just read to you --
5            MR. HAAZEN:  Yes.
6            THE COURT:  -- what the Dutch law expert put in her
7    reply affidavit in response to the argument that it wasn't
8    needed for the pleading.
9            MR. HAAZEN:  It is --
10           THE COURT:  That's the best she says.
11           MR. HAAZEN:  It is for both, your Honor.  It is clear
12   that this serves evidentiary proof as well.  But it is also
13   clear that the law does require the documentary evidence be
14   appended when the allegations are denied.  And we believe the
15   allegations are either already denied now or will be denied.
16   She does need to specify everything in the complaint.  So there
17   is --
18           THE COURT:  I didn't see that in the expert's
19   affidavit.  I did not see the experts say that every piece of
20   evidence that will be relied on at trial must be in the
21   pleading.  I didn't see that.  Did I miss it?
22           MR. HAAZEN:  It's not whether it will be relied on at
23   trial.  It needs to be in the pleading itself.
24           THE COURT:  But I didn't see the expert say every
25   piece of documentary evidence has to be in the pleading.  I

E56SMEEC
1   didn't see that.
2              MR. HAAZEN:  Well, if I may direct your Honor's
3   attention to the original declaration.
4              THE COURT:  Yes, sir.
5              MR. HAAZEN:  Paragraph 11.
6              THE COURT:  Yes, sir.
7              MR. HAAZEN:  Summons and complaint must state any
8   defenses that the defendant has raised and the factual support
9   for such defenses.  And it further states that the evidence
10  available to the plaintiff and the witnesses who may be
11  examined to prove any supporting facts that are disputed.
12             THE COURT:  Say that again.  I'm so sorry, counsel, I
13  just didn't hear the end of it.
14             MR. HAAZEN:  Citing from -- this is paragraph 11.
15  Citing from Article 111 of the Dutch Civil Code of Civil
16  Procedure.  Summons and complaints states, in other words must
17  state, any defenses that the defendant has raised against the
18  relief that plaintiff seeks and the factual support for such
19  defenses.
20             THE COURT:  Okay.
21             MR. HAAZEN:  It further states, the evidence -- the
22  evidence available to the plaintiff and the witnesses who may
23  be examined to prove any supporting facts that are disputed,
24  any supporting facts that are disputed.
25             THE COURT:  Okay.  I know that the expert also used

```
E56SMEEC
```

1   that phraseology in her reply affidavit, which did not seem to
2   me to mean in any way that it must be appended to the
3   complaint.  You know, state the evidence available, tell it's
4   what you have or what you can get.
5           MR. HAAZEN:  Yes.  But paragraph 11 continues, you
6   know, she cites several sources, Dutch law sources stating that
7   the complaint must sum up the evidence.
8           THE COURT:  That's not the same as requiring every
9   piece of evidence to be appended, right?
10          MR. HAAZEN:  I'm not saying every piece of evidence,
11  but evidence for the factual allegations that are in the
12  complaint.
13          THE COURT:  Okay.
14          MR. HAAZEN:  That can reasonably be expected to be
15  denied.
16          THE COURT:  Right.  You know, like a summary of what
17  we have -- what we can find or what we reasonably expect will
18  be available evidence.
19          MR. HAAZEN:  It's not like an initial disclosure kind
20  of thing, you know, the phone records may be a little bit more
21  specificity.  It's not that it is actually saying it needs to
22  state the actual point, the factual allegation that is being
23  proved.  For example, phone records from May 26 --
24          THE COURT:  I didn't see that in the expert's
25  affidavit.

E56SMEEC

1        MR. HAAZEN:  Well, it says that all the allegations,
2    all factual support for the allegations needs to be stated in
3    the complaint.
4        THE COURT:  All right.  Counsel, did you have a view
5    on that?
6        MR. HAAZEN:  I would like to add in one point.
7        THE COURT:  All right.
8        MR. HAAZEN:  It's not -- this is not something that is
9    completely unusual or new in this case.  Even the Supreme Court
10   has said in the Intel case that often in civil law
11   jurisdiction, or I believe it says even in civil law
12   jurisdictions in general, documentary evidence often needs to
13   be appended to the complaint.
14        And the case that I just cited, if you give me one
15   second, the Consorcio Ecuatoriano case from the Eleventh
16   Circuit, the Court there said under Ecuadorian law, a Plaintiff
17   must submit the evidence with the pleading at the time it
18   commences the civil litigation.  That's the same as here.  But
19   that's a U.S. Court making up whatever law it was relying on.
20        In the expert's moving affidavit, in that same
21   paragraph 11, the litigation source that she relies on says --
22   and I'm reading now from the parenthetical in the complaint --
23   I'm sorry, let me do it again.
24        "In the complaint, 'The claimant must sum up the
25   evidence on which he intends to rely, including the names of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC

1  the witnesses who will support his claim.'"
2          So sum up is not the same as append.
3          MR. HAAZEN:  That's correct.
4          THE COURT:  All right.  Let me ask counsel if she has
5  a different view.
6          MS. KOCH:  I certainly have a different view from
7  Mr. Haazen, and there are really two points I want to make in
8  response to your Honor's question.  The first is I agree that
9  the statements of Dutch counsel are conclusory.  She says she
10  needs discovery in order to meet pleading requirements, but she
11  doesn't make any effort to tie the discovery that's actually
12  being sought to anything she actually has to plead, or to
13  explain why she can't get the evidence she needs from her
14  client.
15          I want to go back to what the purported claim is.  The
16  purported claim is that plaintiff statements in the police
17  reports were false.  Those statements were repeated in the
18  Dutch press, and that caused damage to Ms. Mees.  That's it.
19          Ms. Mees hasn't come forward to say that she doesn't
20  have all of her correspondence with Mr. Butier.  She has it
21  just as he does.  Either she sent him over 3,000 e-mails
22  between November 1st, 2009 and July 1st, 2013, or she didn't.
23  Either she received e-mails from him asking her to stop, or she
24  didn't.  Either she sent him the specific e-mails in 2012 and
25  2013 that are mentioned in the police reports, or she didn't.

E56SMEEC

1  She doesn't need discovery from him to know the answers to
2  those questions.
3          And she certainly doesn't need his credit card
4  statements, diaries, banking records, and the like going back
5  to 2008.  And she most certainly doesn't need a deposition
6  where Mr. Buiter be forced to sit in the room with her and her
7  counsel and be interrogated under oath about their alleged
8  relationship.  That can't possibly be what the judge had in
9  mind in the transcript that Ms. Mees belatedly attached to the
10 reply papers when he said there could be contact through
11 counsel.  It's hard to imagine anything more offensive to the
12 order of protection that requires her to stay away from him and
13 not have contact through third parties.
14          If she has a claim, she has everything she needs in
15 order to plead it.  If she needs additional evidence to respond
16 to whatever defenses Mr. Buiter actually raises, Dutch law
17 provides mechanisms for her to get it in the course of suit.
18 That's the norm.  And it's what Ms. Mees' own Dutch counsel
19 describes in paragraphs 14 to 16 of her moving declaration.
20          And in that regard, let me just say that, to the
21 extent that she's now somehow suggesting that in the
22 Netherlands everyone generally gets all or most of the
23 discovery on a pre-suit basis, that's not what she said in the
24 moving papers.  And it's belied by the fact that of the cases
25 that the U.S. counsel cites in his brief involves Section 1782

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC
1   applications for discovery in pending Dutch proceedings.
2   There's no reason to believe that post-suit discovery isn't the
3   norm in the Netherlands, just like here.
4           The fact that Ms. Mees' Dutch counsel might
5   strategically prefer to get all the evidence beforehand under
6   more liberal U.S. discovery standards is not a reason to grant
7   her application.  There's one other thing I want to mention, if
8   I may.  I think it's really important.  Mr. Buiter is a party
9   to the contemplated proceedings in the Netherlands.  And as our
10  Dutch counsel explained in paragraphs 32 and 35 of his
11  declaration, if the Dutch courts would have jurisdiction over
12  him to make him a party to this suit, as Ms. Mees and her
13  counsel assert that they would, then those same courts would
14  also have jurisdiction in connection with an application to
15  direct him to produce pre-suit discovery in the Dutch courts
16  under Dutch standards.  Professor Kortmann, the Dutch expert
17  says --
18          THE COURT:  Excuse me, counsel.  I thought I
19  understood that before discovery is to take place, I thought I
20  understood that the complaint had to be served.
21          MS. KOCH:  No, your Honor.  That's not true.  There's
22  pre-suit discovery if either the Court has jurisdiction over
23  him for purposes of this claim or it doesn't in the
24  Netherlands.  If it has jurisdiction over him, it can order him
25  to produce.  This is what Professor Kortmann says in his

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC
1    declaration.
2            THE COURT:  I didn't think he took a position as to
3    whether or not -- oh, I see what you're saying.
4            MS. KOCH:  He didn't take a decision over whether or
5    not there's jurisdiction.  If there's jurisdiction, there's
6    jurisdiction for both purposes.  And as he says in his
7    declaration, and Ms. Mees' Dutch counsel doesn't dispute, that
8    pre-suit discovery under Dutch law would be far more -- she
9    would never be able to get the kinds of documents that she's
10   asking for here.  And the pre-suit examination would be by a
11   judge, not the kind that we have here, what she's asking for
12   her.
13           MR. HAAZEN:  Your Honor, if I may address that?
14           THE COURT:  Yes.
15           MR. HAAZEN:  We're making five points all at once now,
16   but okay.  Back to your Honor's point that you're suggesting
17   that evidence only needs to be summed up.
18           I submit to your Honor that that means that the
19   factual allegations need to be stated, the actual evidence
20   relating to specific factual allegations.  Professor Kortmann,
21   the Dutch counsel on the other side, does not deny that at all.
22   He is not saying that all you need to do is present an initial
23   disclosure list of documents that say, okay, these are the
24   types of evidence that we're going to be using.  He does not
25   say that at all.  So this is not something that is actually

                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

E56SMEEC

1    suggested.
2            THE COURT:  I'm sorry, I read it from your brief
3    and -- not your brief, I'm sorry -- from your expert's
4    affidavit where she cites sources called litigation in the
5    Netherlands; Civil Procedure, Arbitration and Administrative
6    Litigation saying that the claimant has to sum up the evidence.
7    That's what I'm relying on.
8            MR. HAAZEN:  Right.  But there is no --
9            THE COURT:  So we're all together on that.
10           MR. HAAZEN:  Right.  But I don't think that there was
11   any -- she's trying to suggest that somehow that the list or
12   something is sufficient.  Just a number of generic references
13   to certain evidence.
14           THE COURT:  Right.  Where we started this is I said I
15   thought that the expert's affidavit was merely conclusory in
16   saying we need this pre-suit discovery in order to comply with
17   Dutch pleading standards.  That's where we started this.
18           MR. HAAZEN:  Right, right.
19           THE COURT:  Okay.
20           MR. HAAZEN:  And that is not inconsistent with the
21   statements that the evidence that needs to be summed up must
22   actually be evidence.  In other words, you must be able to say
23   it's credit card statements showing that they're having dinner.
24           THE COURT:  Right.
25           MR. HAAZEN:  For example, on that date.  And I think
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

E56SMEEC
1    that's what is required under Dutch law.
2                THE COURT:  All right.
3                MR. HAAZEN:  And opposing Dutch counsel does not deny
4    that.  He just says -- all he says is, well, I think you've got
5    enough.  You should be able to do this.
6                THE COURT:  Let me ask you this question.  Two things:
7    number one, if your client is going to commence the action in
8    the Netherlands, why is she not able to get pre-suit discovery
9    there?
10               MR. HAAZEN:  Pre-suit discovery is not available
11   against a defendant who is not -- or prospective defendant,
12   prospective participant, who is not in the country.  So they
13   can say all they want, it's just not true, and Professor
14   Kortmann does not say that.
15               THE COURT:  How will she establish jurisdiction over
16   him for purposes of suit?
17               MR. HAAZEN:  That will go through the Hague
18   Convention.
19               THE COURT:  How does that work?
20               MR. HAAZEN:  A request is sent through a central
21   authority in the United States, and that will eventually make
22   it's way --
23               THE COURT:  You mean service of process, in that
24   manner?
25               MR. HAAZEN:  Yes, yes.  That's how you start that

E56SMEEC
```
 1   case.  And with Professor Kortmann --
 2            THE COURT:  Following service of process, why can't
 3   she make the discovery request?
 4            MR. HAAZEN:  I don't know.  I don't know.
 5            THE COURT:  Well, isn't that what counsel is arguing
 6   back there?
 7            MR. HAAZEN:  No, that is not what counsel is arguing.
 8   Professor Kortmann says explicitly, I'm not saying anything
 9   about jurisdiction.
10            THE COURT:  I know he says that.  I know he says that.
11            MR. HAAZEN:  But if --
12            THE COURT:  But here's the thing, if there's no
13   jurisdiction, she can't sue him there anyway, right?
14            MR. HAAZEN:  There will be jurisdiction, and that is
15   explained, your Honor, in the declaration why there is
16   jurisdiction on the basis of the fact --
17            THE COURT:  Then why can't the same discovery request
18   be promulgated in the actual Dutch lawsuit?
19            MR. HAAZEN:  You're asking me a question about Dutch
20   law, your Honor.  The Dutch counsel, Professor Kortmann, says
21   that cannot be done.  I have --
22            THE COURT:  Pre-suit.
23            MR. HAAZEN:  Pre-suit, that cannot be done.
24            THE COURT:  How come --
25            MR. HAAZEN:  Post-suit, once there is a case, there's
```

**S.A. 28**

E56SMEEC

```
 1   not pre-actual discovery.
 2              THE COURT:  I know.
 3              MR. HAAZEN:  That is possible.
 4              THE COURT:  Why is that not sufficient?
 5              MR. HAAZEN:  Because we need it to plead, to start the
 6   suit.
 7              THE COURT:  Okay.  Then let's go to my second
 8   question.  Counsel points out that your client has the e-mails.
 9              MR. HAAZEN:  That's --
10              THE COURT:  She's got either the e-mails from the
11   professor saying whatever it is he's saying.  Why is that not
12   sufficient for the purpose of framing a pleading?
13              MR. HAAZEN:  Because, I mean, that's so silly.  Either
14   she has the e-mails or she doesn't.
15              THE COURT:  Of course she does.
16              MR. HAAZEN:  Of course she has e-mails.
17              THE COURT:  She doesn't have them?
18              MR. HAAZEN:  She doesn't have all the e-mails.
19   Apparently there are 3,000 or whatever.  These are e-mails that
20   he actually gave to the police.  And no matter what --
21              THE COURT:  Let me just ask this:  They were between
22   the two of them, right?
23              MR. HAAZEN:  Yes.
24              THE COURT:  How come she doesn't have them?
25              MR. HAAZEN:  It goes back to 2008, your Honor.  She
```

E56SMEEC
```
 1  doesn't keep all of the e-mails.  She had no idea this was
 2  going to end up in a lawsuit.
 3          THE COURT:  I don't understand that.  What do you mean
 4  you don't keep them?  You delete them all?
 5          MR. HAAZEN:  Yes.
 6          THE COURT:  There's nothing.
 7          MR. HAAZEN:  You change e-mail accounts.  People
 8  sometimes, after a couple years, delete e-mails.  I do that.
 9          THE COURT:  Right.  But there's nothing in the papers
10  on personal knowledge that says she doesn't have all the
11  e-mails.  In the ordinary course, I would expect she would.
12  Maybe she could go to the service provider.  I don't know.
13          MR. HAAZEN:  We have stated in the papers that she
14  does not have all the e-mails.
15          THE COURT:  You don't know.
16          MR. HAAZEN:  Yes.  I've asked her.
17          THE COURT:  Hearsay.
18          MR. HAAZEN:  My client is in the courtroom, your
19  Honor.
20          THE COURT:  All right.  But the papers are the papers.
21  Even without all of the e-mails, why is it not sufficient for
22  pleading purposes to refer to the e-mails which your client
23  does have?
24          MR. HAAZEN:  Because they do not relate to all the
25  factual allegations that she wants to make.  For example, she
```

wants to say it was false for you to tell everyone that you felt threatened by me, because on that date, we were doing this; on this date, we were doing that.

THE COURT: You have all those bullet points in your brief.

MR. HAAZEN: Yes, but we have no evidence.

THE COURT: Presumably you got that from your client.

MR. HAAZEN: Correct. And as I said earlier, your Honor, she does not have all that evidence to show that they were actually there.

THE COURT: Okay. But, again --

MR. HAAZEN: That's foreseeing.

THE COURT: Again, the source cited by your expert says it has to be summed up. It doesn't have to be evidence of everything. It doesn't have to be that night's dinner charge.

MR. HAAZEN: I want to be able to say he was wrong when he said there was no relationship in 2008, 2009, '10, '11, and '12.

THE COURT: Okay. But you have in your brief a bunch of bullet points that go all the way back.

MR. HAAZEN: Right. But she does -- that's not all evidence, your Honor. As you already pointed out, that's the brief based on what my client has told me. But my client cannot reproduce e-mails about a dinner, you know, proving that there was a dinner and that he was there. We need evidence

E56SMEEC

1  from him showing that he was actually there; for example,
2  because he paid the restaurant bill.
3            THE COURT:  All right.
4            MR. HAAZEN:  Or the hotel bill.  If I may, your Honor,
5  I --
6            THE COURT:  Let me just ask counsel if she has any
7  comment on this before you move on to another point.
8            MS. KOCH:  I do, your Honor.
9            MR. HAAZEN:  Sure.
10           MS. KOCH:  I guess two things.  The first is that
11 there's never been any suggestion that Dutch pleading standards
12 are so stringent that they would require a plaintiff to attach
13 the defendant's credit card bill as proof of some allegation.
14 That's preposterous.  Their Dutch expert doesn't say that.  And
15 if she did, our Dutch expert would contradict it.  It's just
16 not the case.
17           You know, as your Honor pointed out, there are all
18 these bullet points.  There's this detailed discussion in the
19 brief.  Obviously they felt they had enough evidence to
20 substantiate it enough to say it in the brief.  In fact, there
21 was enough evidence for Ms. Mees' U.S. counsel to go on Dutch
22 national television and tell the public about it too.  Now he's
23 telling the Court he needs discovery to substantiate what he
24 saw fit to take to the airways on Dutch TV.
25           MR. HAAZEN:  That's not true.

E56SMEEC

```
 1                 THE COURT:  Counsel.
 2                 MS. KOCH:  He didn't need to.  The other thing I want
 3      to circle back to is there's this statement in Professor
 4      Kortmann's declaration that says, in paragraph 32 of his
 5      declaration, that if the Dutch District Court would have
 6      jurisdiction over Mr. Buiter for purposes of this dispute, then
 7      it would have jurisdiction over him and he would become a party
 8      once Mees initiates disclosure proceedings against him.
 9      Meaning that if there's sufficient jurisdiction to make him a
10      party to a lawsuit about this issue, then there would be
11      sufficient jurisdiction for her to -- the disclosure
12      proceedings are also moderated by the Court.  She could go to
13      the Dutch court and initiate disclosure proceedings, if that
14      Court would have jurisdiction over him, for purposes of the
15      dispute.  It would also have jurisdiction over him for purposes
16      of the disclosure proceedings.
17                 Ms. Mees' Dutch lawyer doesn't respond to that with
18      anything more than double talk.  She just said, well, they
19      wouldn't be able to initiate disclosure proceedings unless
20      there was jurisdiction over him.  But either there's
21      jurisdiction over him or this isn't.
22                 MR. HAAZEN:  Exactly.  That is wrong.
23                 MS. KOCH:  Then she can't sue him there.
24                 THE COURT:  I'm sorry, why is that?
25                 MR. HAAZEN:  That is exactly wrong.  Just the fact
```

S.A. 33

E56SMEEC
1  that there is jurisdiction, the fact that the damage to the
2  reputation occurred there, and that the defamatory statements
3  were published in the Netherlands.
4            THE COURT:  Counsel was saying if there was
5  jurisdiction over him.
6            MR. HAAZEN:  Right, and we are in agreement with that.
7  And I also already said that.  If there is a case pending there
8  and jurisdiction has been established on the basis of the fact
9  that the reputation or the defamatory statements were made
10 there and the process has been served and he has been hailed
11 into court and then he's within the jurisdictional reach of the
12 Dutch court, yes, then the Dutch court can compel some type of
13 discovery.  That we are in agreement on.
14            But what Professor Kortmann does say, I am not
15 conceding that there is jurisdiction if --
16            THE COURT:  To me, counsel, that is completely
17 irrelevant.  Because if --
18            MR. HAAZEN:  No, because --
19            THE COURT:  Excuse me.  Because if there's not
20 jurisdiction over him, then she can't bring the suit there
21 anyway.  So all of this is nonsense.
22            MR. HAAZEN:  No, your Honor.  There is a difference
23 between having the jurisdiction to order discovery when there
24 is no case.  And jurisdiction --
25            THE COURT:  But counsel just read what Professor
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

E56SMEEC
1   Kortmann said.  Let's see.  He's essentially saying, if there
2   is jurisdiction over him, "The Dutch District Court would have
3   jurisdiction over Buiter and Buiter would become a party once
4   Mees initiates disclosure proceedings against him.  I see no
5   reason why the Dutch court could not then order Buiter to
6   disclose documents that the Court deems relevant to Mees' claim
7   (whether on a pre-suit basis or in the context of the
8   proceedings on the merits.)"
9           MR. HAAZEN:  He does that on the basis of
10  misinterpreting Professor Kortmann's declaration.  She never
11  said there is jurisdiction over an action for pre-suit
12  discovery.  There is jurisdiction over the case itself.  And
13  once that case is initiated, then there is jurisdiction by
14  serving someone, then the Court may order certain amount of
15  discovery.
16          Pre-action, that can be done for residents, but it
17  cannot be done for people who are outside the jurisdictional
18  reach of the prospective defendant.  That is what she had said.
19  And that distinction is a critical distinction, your Honor,
20  because it is exactly for that reason that the Dutch court
21  cannot now, pre-action, reach Mr. Buiter.  And Professor
22  Kortmann does not deny that.
23          He doesn't want to go into whether there is
24  jurisdiction solely for pre-action discovery, which there would
25  be if the resident was within the District of Amsterdam.  But

E56SMEEC
```
 1   he's not.  And he avoids that question and instead says, well,
 2   you know, you can see that's a different jurisdiction.  That's
 3   jurisdiction for the case itself, not jurisdiction over the
 4   pre-action discovery.
 5               THE COURT:  All right.  Counsel.
 6               MR. HAAZEN:  That's what I'm trying to say, your
 7   Honor.
 8               THE COURT:  All right.
 9               MS. KOCH:  I disagree.  I think the statement is
10   clear.  The statement is clear that if the Court would have
11   jurisdiction over Buiter as a party, it would have jurisdiction
12   to direct him to provide pre-suit discovery as a party.  And
13   pre-suit discovery happens through the initiation of disclosure
14   proceedings, meaning she would have to go to the Court,
15   initiate the proceedings, have the service of process and all
16   of that good stuff, and then we would become a party, with the
17   pre-suit discovery proceedings.
18               MR. HAAZEN:  That exact thing cannot be done.
19   Pre-suit jurisdiction for a separate pre-suit discovery
20   proceedings cannot be done.  That's what --
21               MS. KOCH:  That's not --
22               MR. HAAZEN:  -- Mr. Koppenol says.  She says if the
23   person's, A, not a party, and B, not a resident, it cannot be
24   done.  You cannot initiate a pre-suit discovery proceeding.
25   And he does not contest that.  He says, if there is, then I see
```

E56SMEEC

1    no problem.  But he doesn't say that there is.
2              But I would like to add in --
3              THE COURT:  Again, I don't see the relevance of
4    Professor Kortmann's not opining on jurisdiction.  Because if
5    there's no jurisdiction, then there won't be a foreign
6    proceeding at all.
7              MR. HAAZEN:  Jurisdiction with respect to the case
8    itself, you mean?
9              THE COURT:  Certainly that's true.  But I don't -- I
10   certainly read his affidavit at paragraph 32 as saying that if
11   there is jurisdiction -- let me go back a sentence.
12             This is in paragraph 32, "Furthermore, Koppenol-
13   Laforce has argued that a Dutch District Court has jurisdiction
14   over Buiter" 'Even if that defendant is not domiciled or
15   otherwise maintains a presence within the district [of that
16   court] 'If that is right (a question on which I am not here
17   opining), the Dutch court would have jurisdiction over Buiter
18   and Buiter would become a party once Mees initiates disclosure
19   proceedings against him.
20             MR. HAAZEN:  Exactly, your Honor.
21             THE COURT:  I see -- and then he goes on, as we
22   pointed out before -- I see no reason why the Dutch court could
23   not then order Buiter to disclose documents that the Court
24   deems relevant to Mees' claim (whether on a pre-suit basis or
25   in the context of proceedings on the merits.)"

E56SMEEC

 1          MR. HAAZEN:  Correct, your Honor.  But he has no basis
 2   for saying whether on a pre-suit basis or as part of the
 3   proceeding on the merits.
 4          THE COURT:  He's opining as an expert.
 5          MR. HAAZEN:  Right.  And our expert said the opposite.
 6   But the quote he says, he quotes Professor Koppenol, who
 7   says -- he says she herself has argued that a Dutch District
 8   Court has jurisdiction over Buiter.  She never said she would
 9   have jurisdiction over Buiter just to get pre-action discovery.
10   She says the opposite.  There's no jurisdiction over Buiter
11   pre-initiation.
12          THE COURT:  He's disagreeing with her on this is my
13   view.
14          MR. HAAZEN:  All right.  That I agree with, your
15   Honor.  He's disagreeing with her on that, even though he says
16   I'm not opining on jurisdiction.
17          THE COURT:  Right.
18          MR. HAAZEN:  He's saying if it's true what Professor
19   Koppenol says, then the first part, that's incorrect, because
20   Professor Koppenol never did say that.  She was talking about
21   jurisdiction --
22          THE COURT:  All right.
23          MR. HAAZEN:  -- for the case itself, which can be
24   established on the base of the fact that the damage partially
25   occurred there, the reputation was harmed there, and service

E56SMEEC

1   process may be had.  She explicitly says the first part here in
2   paragraph 32, that purely for pre-action document disclosure,
3   there is no possibility and there's no jurisdiction.  It's not
4   possible to get this disclosure from the Dutch court
5   pre-action.  He does not deny it.
6           If I may add in, your Honor, we started by saying the
7   purpose here is dual.  It's in order to get the evidence that
8   is necessary to prove the case in Holland, and it is also, your
9   Honor, to plead a case in Holland.  Even if these materials
10  were not needed to plead a case, you know, then we would still
11  be entitled to discovery simply because it is evidentiary
12  material that assists us in the foreign court.
13          THE COURT:  In proving the case.
14          MR. HAAZEN:  In proving the matter.
15          THE COURT:  Why couldn't you ask the foreign court
16  once he's served for that?
17          MR. HAAZEN:  To some extent, we can.  But, again, your
18  Honor, that is no more than a factor.  Your Honor has said in
19  the case and numerous other cases stepped over that and said,
20  okay, I realized that you could go to another court, but that
21  is not a requirement.  At most, it's a factor pleading weighing
22  against granting discovery.  But your Honor granted discovery
23  in the matter of Marubeni American Corp. v. LBA, even though
24  your Honor said the foreign court, which is in this case a
25  Japanese court, theoretically could order parties to produce

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC
1   the requested evidence, and the Second Circuit has affirmed
2   that decision.
3           And there are more such decisions --
4           THE COURT:  All right.
5           MR. HAAZEN:  -- where discovery was granted even
6   though --
7           THE COURT:  Okay.  But that's a discretionary factor.
8           MR. HAAZEN:  That's right.
9           THE COURT:  Okay.  Counsel.
10          MS. KOCH:  I want to go back again to the reasons why
11  they're claiming they need this material, because they kind of
12  jump around a little bit.  We pointed out one of the statutory
13  requirements is that a foreign proceeding be within reasonable
14  contemplation.  And we pointed out in our opposing papers that
15  the moving papers say that Ms. Mees has retained Dutch counsel
16  to, quote, investigate potential claims against Mr. Buiter, and
17  that none of the case law supports a finding that that's enough
18  to get you into the statutory realm of 1782.
19          In her reply declaration, Ms. Mees' Dutch counsel
20  tries to soft pedal that statement a little bit.  As you
21  pointed out in paragraph 4, she says she needs further
22  evidence, quote, not just to evaluate Ms. Mees' investigate
23  potential claims, but also to draft a complaint.  She goes on
24  to say in paragraph 11 that, quote, there are important reasons
25  she seeks the discovery she seeks to substantiate Ms. Mees'

E56SMEEC
1    claims.
2         But the only one she shares with us is her view that,
3    if the discovery wouldn't substantiate those claims, Mr. Buiter
4    would have agreed to provide them voluntarily.  A view that
5    completely ignores the fact that he has an order of protection
6    against the person who's asking him for that discovery, based
7    on her still pending criminal prosecution for stalking and
8    harassing him.
9         And then she goes on to say in paragraph 12 of her
10   declaration that if she does obtain evidence to substantiate
11   the claim, then she'll file suit within four to six weeks.
12   Again, she nowhere explains why she needs this particular
13   evidence in order to frame a complaint, and we believe that
14   that's dispositive.
15        But taking her at her word for the moment on this, to
16   the extent that she's looking for evidence to seek if Ms. Mees
17   would ultimately be able to prove her claim, that's not what
18   discovery is for either under Section 1782 or under the federal
19   rules on the pre-suit basis.  You don't get to take discovery
20   to see if you have a claim or so that your lawyers can
21   determine if your claim has merit.
22        Well, Ms. Mees hasn't cited a single case that could
23   support expanding the statute that far.  We don't know of any
24   either.  She doesn't need this discovery for the purpose for
25   which she's claiming to ask for it.  There's no reason to give

E56SMEEC

1   it to her, especially the deposition, your Honor.  It really
2   flies in the face of the order of protection.  Think about it.
3   What she wants is to have her lawyer sit in a room for a day --
4              THE COURT:  I've got it.  I've got that.
5              MR. HAAZEN:  Your Honor, that's just not true.  I did
6   cite cases where, during the pre-action phase, discovery was
7   granted.  I cited plenty of those cases.
8              THE COURT:  You're referring to the cases in the big
9   footnote, right?
10             MS. KOCH:  The big footnote is mine.
11             MR. HAAZEN:  The Ontario case is one of them.  The
12  Intel case is another one of them.
13             THE COURT:  Right.
14             MR. HAAZEN:  No.  We didn't say it was just for
15  investigation.  We said it's to prepare a complaint.  I
16  specifically talked about the requirements.  So that's just not
17  true.
18             THE COURT:  All right.
19             MR. HAAZEN:  Your Honor, there is -- we need to be
20  able to say that when you went to the police, Mr. Buiter, and
21  you knowing that this would ultimately be prepared in four
22  continents, you said I feel threatened by Ms. Mees, you cannot
23  have been right, because all these things occurred on all these
24  different dates, and you were having dinner with her and you
25  were having dinner with other colleagues, and you were meeting

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC
1  with her, and on that date you were staying over at her
2  apartment.  That is evidence that is going to show that his
3  statement that he felt threatened or that he feared for the
4  safety of his family was false.
5          Another one, for example, would be --
6          THE COURT:  And what specific evidence are you talking
7  about, the e-mails?
8          MR. HAAZEN:  E-mails, for example, where he entertains
9  a pleasant or loving or caring communication with Dr. Mees
10 which would show that he does not feel threatened.  An e-mail
11 initiated by him even, or communications or jokes, whatever.
12 That would all show that he's not feeling threatened at all.
13         In other words, he cannot have been criminally
14 harassed or stalked.  E-mails or credit card statements,
15 restaurant bills that show that they met up or even maybe an
16 e-mail exchange about, you know, a hotel where they would meet
17 would show that he, at that point, did not feel threatened.
18         These are all things we strongly believe were not --
19 the police and the prosecutor were not told, you know, and went
20 up and was distributed all over the world, as if he had felt
21 threatened for four years and that she had been stalking him
22 for four years.
23         And so it doesn't only go to denying the relationship
24 or not, it goes to elements of threat or fear of injury to him
25 and his family, who by the way didn't live here.  So there

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC

1  wasn't really any threat.  And Dutch counsel is going to want
2  to establish that as well.
3          And then they argue that malice needs to be proven, in
4  other words, that he deliberately made these false statements.
5  Your Honor, I believe that if we can show that he gave -- that
6  the e-mails that he actually has in his possession are a much
7  larger number of e-mails than he actually gave to the police,
8  in other words, that he made a selection, that would be
9  evidence showing that his goal was other than just telling the
10 truth and that he was actually trying to persuade the police to
11 make an arrest, that he then knew would be publicized.
12              THE COURT:  All right.  Counsel.
13              MS. KOCH:  Well, a couple of things.  First of all --
14              MR. HAAZEN:  Your Honor, may I add in one more point?
15              THE COURT:  Yes, sir.
16              MR. HAAZEN:  I keep hearing here about the order of
17 protection in the state court.  That's really not what it is.
18              THE COURT:  It's what it says it is.
19              MR. HAAZEN:  The order of protection says what it
20 says.  Before the order was issued, there was a discussion with
21 the Court, and the Court then stated on the record that any
22 legal action was not going to be precluded.  That was not a
23 problem.  Now, do I wish that the colloquy on the record was a
24 little longer and more elaborate than it is?  I think it is
25 clear enough that any litigation involving Mr. Buiter is not

E56SMEEC
1  excluded, and that's not what the justice is saying.
2            THE COURT:  I get that.  Counsel.
3            MS. KOCH:  Again, regarding the e-mails, there is no
4  sworn statement from Ms. Mees saying that she doesn't have the
5  e-mails.  I'm hearing now for the first time that maybe there
6  were more than 3,000 e-mails.  The police report refers to
7  3,000 e-mails.  We don't have a statement from her saying,
8  well, there were actually 6,000.  And I need to know which
9  3,000 he gave the police.
10           This is all utter speculation, and she should have all
11  of the correspondence between them anyway.  There's no reason
12  why she needs to get this from him.  For pleading purposes,
13  it's not necessary.  I want to also go back to the -- oh, and I
14  guess the other thing is too, before I turn to the colloquy on
15  the record, Ms. Mees did make a motion to dismiss the criminal
16  case against her.  We don't have all of the papers on that
17  motion, because we were not able to get access to the full
18  criminal court record, as set forth in our papers, but we do
19  have her reply declaration.  Because, for some reason, that's
20  on the internet.  And the reply declaration attached a whole
21  lot of e-mails, including a lot of the ones that I attached in
22  her papers in this Court.
23           And the reply declaration makes that very argument,
24  there was this bilateral relationship, here are the e-mails
25  evidencing it, et cetera.  The criminal court judge denied that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC
1  motion, but obviously that was in the criminal case.  Her
2  position was in the criminal case.  We don't know what all else
3  she said in that motion.  She does, but we don't.
4          But that's all in the records.  If she had the
5  opportunity to make that argument, she also had the
6  opportunity, by the way, to go to trial and prove her
7  innocence.  You know, Mr. Haazen says in his reply declaration
8  she's entitled to her day in Court.  She had that.  It was
9  March 10.  She chose to accept an adjournment and that's the
10  reason why her criminal prosecution is still pending, her
11  choice.
12          Let me just turn for a moment --
13          THE COURT:  Would you remind me where that reply
14  affidavit is on the motion to dismiss the criminal proceeding?
15          MS. KOCH:  Yes.  There's a -- I didn't attach it to
16  our papers, but I did cite a URL to it.  Let me just find the
17  page in my brief.
18          MR. HAAZEN:  Your Honor, it states, in essence, the
19  specific bullet points about the romantic encounters date.  The
20  same facts that I've given to you --
21          THE COURT:  Bullet points.
22          MR. HAAZEN:  -- are part of that reply affidavit.
23          MS. KOCH:  If you look, your Honor, just to answer
24  your question, on page 19 of my brief in footnote 18, there are
25  cites with URLs to various press reports.

E56SMEEC

```
 1              THE COURT:  I see it, yes.
 2              MS. KOCH:  At the very end, there's a cite to the URL
 3    that has Ms. Mees' reply papers in further support of her
 4    unsuccessful motion in the criminal court to dismiss the case.
 5              THE COURT:  Thank you.
 6              MR. HAAZEN:  Which is, of course, a motion to dismiss
 7    and factual issues are not -- the Court just says that's why we
 8    have trial.
 9              THE COURT:  Okay.
10              MR. HAAZEN:  Your Honor, just an example of the
11    e-mails, why it's not apart from the fact that she doesn't have
12    all of them, why there's no contradiction with the fact that
13    she actually can state a number of romantic encounter dates and
14    still does not have all those e-mails, because she can have
15    part of an e-mail string, which is often what she says.
16              THE COURT:  Say it again.
17              MR. HAAZEN:  She can have part of an e-mail string.
18    For example, she has e-mails where she would originally send an
19    e-mail with a nude picture either of herself or someone else, a
20    nude picture, and Professor Buiter would respond saying, you
21    know, how appreciative he is of her sending that picture.
22              So, for some instances, she has the response, the
23    reply from Professor Buiter, but the way that it comes back to
24    you, it has the original message from her as well.  But it
25    doesn't have the attachment anymore.  So you actually cannot
```

E56SMEEC
1  show that there was a nude picture under it.
2          THE COURT:  Unless she has the sent.  Unless she has
3  what she sent, right?
4          MR. HAAZEN:  Correct.  Exactly, that's what I'm
5  saying.  She does not have them anymore.  She has the part of
6  the e-mail string.  Thanks, send me more of those pictures.
7          THE COURT:  Okay.
8          MR. HAAZEN:  I want to again --
9          THE COURT:  I didn't let counsel finish.
10         MR. HAAZEN:  Sorry.
11         MS. KOCH:  Let's be clear we're not talking about
12  discovery for the purpose of ultimately proving the case at
13  trial.  We're talking about pre-suit discovery to frame a
14  complaint.  There is a whole lot of detail, as your Honor
15  points out, in Mr. Haazen's brief, the fact that she might be
16  missing pieces of e-mail chains.
17         There's nothing in the record to suggest that that
18  precludes her from filing a complaint in the Netherlands and
19  getting whatever discovery she needs to fill in those holes.
20  Particularly given that if she has pieces of the e-mails, she
21  knows precisely what to ask for and can probably, therefore,
22  meet the Dutch discovery standards, which require a lot more
23  specificity in document requests than ours do.
24         So, again, we're talking about what she doesn't have.
25  There's no reason to believe that she can't get that in the
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

E56SMEEC
```
 1   course of normal post-suit discovery, which is the norm in the
 2   Netherlands, just as it is here.  It seems like somebody's
 3   trying to suggest, in the Netherlands, things are done in
 4   reverse order.  Everybody takes all the discovery before suit
 5   and then they sue.  Not only does that not make any sense,
 6   subjecting people to discovery before there's even a claim
 7   against them, but there's no reason to believe it's true.  It's
 8   inconsistent with what her own expert says in her first
 9   declaration, and it's certainly not what our expert says.
10   There's no reason to believe that people always have to take
11   pre-suit discovery in order to meet these pleading standards.
12   It's nonsensical and just not true.
13           MR. HAAZEN:  That is obviously not what we're saying.
14           THE COURT:  Let's just let counsel finish.
15           MR. HAAZEN:  I thought she was finished.
16           MS. KOCH:  The other thing, I wanted to go back to one
17   thing before we lose the thread, because Mr. Haazen has
18   attached this three-page transcript to his reply papers, which
19   again, your Honor, we didn't have until he attached it to his
20   reply papers.  We attached to our opposing papers everything we
21   were able to get from the criminal court file.  The criminal
22   courts are apparently very possessive of this file.  They gave
23   us five documents.  I attached them all.  This wasn't one of
24   them.
25           If you look at page 3 of the transcript, what
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

S.A. 49

E56SMEEC

1   Ms. Mees' lawyer says, Mr. London, I would like to clarify that
2   the order of protection does not preclude legal action and then
3   court, as long as all contacts are through counsel.  I don't
4   foresee that will violate the order of protection.  No direct
5   contact between the defendant and the person named in the
6   order, Mr. London, that's Ms. Mees' lawyer, only by the
7   attorneys.  Attorneys, that's plural.  That's counsel to
8   counsel.  That's not her lawyer sitting in a room with
9   Mr. Bought interrogating him.
10          THE COURT:  I've got that.  Okay.
11          MS. KOCH:  And that's also not what the order of
12  protection itself says.  It says very clearly in the
13  text that's typed in, that's typed onto the form.  I'm looking
14  at Exhibit 2 to our papers.  The form says, specify other
15  conditions defendant must observe for the purposes of
16  protection.  And what is typed in says, do not have any contact
17  with the above persons through any third parties, period.
18          THE COURT:  All right.  Anything else?
19          MR. HAAZEN:  Yes, your Honor.
20          THE COURT:  All right.  Counsel.
21          MR. HAAZEN:  Opposing counsel just throws out here
22  that the Dutch system does not make sense, that not everyone is
23  doing pre-action discovery, so it's a ridiculous position that
24  we're staging this.  There are decided cases, I cited them,
25  where pre-action discovery was granted for the purpose of

E56SMEEC

1  assisting the preparation of a complaint.  That is a normal and
2  acceptable practice under 1782.
3          It is not a nonsensical position.  I'm not saying that
4  everyone in Holland always engages in pre-action discovery
5  before they file a complaint.  I am saying, though, your Honor,
6  that we believe it makes sense.  And what civil law systems
7  makes sense may be very different.  And I can tell you, I'm not
8  a big fan of the Dutch legal system either, but they do have
9  tremendous meeting requirements and they do require factual
10 detail that goes way beyond every other plausibility
11 requirements, and they do require a pleading of evidence.
12         And they counterbalance that by allowing a lot of
13 pre-action discovery, far more than we can think of in the
14 United States.  Sometimes I'm glad we don't have that much
15 pre-action discovery in the United States, but it is the way
16 they do it there.  And it's not the only country that does it.
17 Several other civil law countries do it.
18         Although it appears, from what our expert is saying,
19 that the Dutch pleading requirements are particularly high.
20 And from the sources that she has cited, it follows that.
21 There is more and more a trend in Dutch law to front load and
22 to include the evidence right up front.  In fact, not just
23 right up front, before you file a complaint.  People are
24 supposed to sort things out, figure out all the details, all
25 the facts that they have, and use whatever means necessity to

E56SMEEC
```
 1   get them.  That includes Section 1782, when appropriate.
 2               I'll direct your Honor's attention to the reply
 3   declaration.
 4               THE COURT:  Yes, sir.
 5               MR. HAAZEN:  She does cite this handbook for judges.
 6   It says that parties are -- this is on page 6.
 7               THE COURT:  Sorry.  Let me just put my hands on the
 8   reply.
 9               MR. HAAZEN:  And it is the sixth line.
10               THE COURT:  Which paragraph?
11               MR. HAAZEN:  From the bottom, 21.
12               THE COURT:  Thank you.
13               MR. HAAZEN:  She does cite the handbook for judges,
14   which says that parties are increasingly expected not to bring
15   their case, not to bring their case until their dispute has
16   sufficiently crystalized during the phase preceding the summons
17   and complaints so that they do not unnecessarily usurp the
18   capacity of the Court.
19               This implies that the complaint, in essence, already
20   incorporates the plaintiff's reply and the answer incorporates
21   the defendant's surreply.  And what the Dutch, a part of their
22   policy for their system is to bring up as much factual detail
23   and evidence as possible, and pose upon parties an obligation
24   to try to find that and crystalize the dispute before they
25   bring action.
```

E56SMEEC

1          The reason the courts do that, the reason why they
2  impose that pre-action investigation required, and the reason
3  that they have such high pleading requirements, is one that we
4  can easily understand here as well, your Honor.  They don't
5  want people to sue as soon as they feel like it.  They want to
6  have high pleading requirements and make sure that the evidence
7  is there so that the case comes to court right up front, and
8  everything is basically already there.  In other words, even
9  your reply, your reply to what you anticipate the defendant is
10  going to say, needs to be part of the complaint itself.
11          THE COURT:  I've got it.
12          MR. HAAZEN:  Okay.  That is a possible policy decision
13  that a foreign jurisdiction can make a in light of the fact
14  that the Second Circuit has repeatedly said that you need to
15  interpret, we need to apply the discretionary facts, bearing in
16  mind the twin aims of the statute, which is to provide
17  efficient access to means of discovery in this country for
18  litigation.
19          Other countries, I think we should respect the fact
20  that they do it that way in the Dutch courts and that the
21  pleading requirements are so high.  If I may direct your
22  attention to the Euromepa case in the Second Circuit of 1995,
23  the Second Circuit said there is no actual authoritative proof
24  that it would respect the evidence that is being sought here.
25  The district court's ruling should be informed by Section 82 is

E56SMEEC
1  overarching interest in providing equitable and efficacious
2  procedures for the benefit of tribunals and litigants in
3  international litigation.
4         The Second Circuit has said the same thing in 2009 in
5  the Marubeni matter, stating that the court's discretion must
6  be guided by several factors, including in particular the twin
7  aims of the statute.  And the Third Circuit had said the same
8  thing in the Bayer matter.  And I realize it's Third Circuit,
9  but that particular decision has been cited in the approval by
10 the Supreme Court and by the Second Circuit, that relevant
11 discovery materials, provided that it's relevant, is
12 discoverable.  It must be presumed to be discoverable unless
13 the opponent demonstrates bad faith or some other reason.
14        THE COURT:  Okay.  I think we're probably past those
15 very general cases.
16        Anything else to add in, counsel?
17        MS. KOCH:  The only thing I want to respond to the
18 discussion of paragraph 21 of Professor Koppenol-Laforce's
19 reply declaration, which of course comes to us for the first
20 time on reply, I don't have an opportunity to respond to it
21 with Dutch counsel.  But what I see from what she says, it
22 doesn't appear to be talking about pre-suit discovery at all.
23        The quote from the handbook for judges says, parties
24 are increasingly expected not to bring their case until their
25 dispute has sufficiently crystalized during the phase preceding

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E56SMEEC
1   the summons and complaint so that they do not unnecessarily
2   usurp the capacity of the courts.  Well, pre-suit discovery in
3   the Netherlands is taken through the courts.  Once you go to
4   the Court for pre-suit discovery, you're usurping the capacity
5   of the courts.
6          So I think, from what I can tell, looking at what
7   Professor Koppenol says about this citation is that it's not
8   talking about pre-suit discovery, it's talking about the
9   party's responsibility to investigate and gather their evidence
10  before they bother the defendant or the courts with anything,
11  whether it's pre-suit discovery or a lawsuit.
12          and, again, it talks about the evidence available to
13  the plaintiff.  I keep coming back to the detailed discussion
14  in the moving papers, the bullet points, all of the detail
15  there.  I don't understand why they don't have enough
16  information to file a lawsuit and then take advantage, if they
17  believe they have a claim, file a lawsuit based on what they
18  have, and take advantage of whatever Dutch discovery procedures
19  are available to them.
20          And in that regard, I do want to say that the Intel
21  case specifically says that the limits of what discovery would
22  be available abroad are definitely something that this Court
23  can take into account in exercising its discretion.  And to the
24  extent that the case can be read to suggest otherwise, it's
25  pre-Intel, some of the other cases he cites, the Marubeni case,

E56SMEEC

1  it's a summary order under Second Circuit rules, doesn't have
2  the precedential value.  Intel says that the limits of
3  discovery and the question of whether this would circumvent the
4  limits of discovery in the Dutch courts is something that this
5  Court can take into consideration in the discretionary
6  analysis.  It's not for the statutory analysis, but it's one of
7  the reasons that in the Intel case itself, the 1782 application
8  was ultimately denied.
9          MR. HAAZEN:  Your Honor, you said we're past the
10  general statements about the twin aims, but it is an important
11  factor.  My opposing counsel has not at all addressed the twin
12  aims of the statute.  Congress has actually drafted the
13  statute.  She's not addressed it.  Buiter has also not
14  addressed the receptiveness of the Dutch courts --
15          THE COURT:  Let me just ask counsel, are you
16  disagreeing with the statutory factors?  I know you make an
17  argument with respect to the proceedings not being under way
18  abroad and that they are too speculative at this point.  But
19  you have no quarrel with the nature of the foreign tribunal or
20  the receptivity of the foreign court to U.S. judicial
21  assistance, right?
22          MS. KOCH:  Correct, your Honor.  But there are two
23  statutory criteria that we argue that Ms. Mees hasn't met.  One
24  is that there isn't really a foreign proceeding in existence or
25  sufficiently within reasonable contemplation to meet any of the

```
E56SMEEC
```

1  standards under the case law, and that's the statutory
2  criteria.
3          The other is the for use requirement.  And we believe
4  that the failure to tie the discovery request to any actual
5  need to meet Dutch pleading requirements is a failure to meet
6  the for use requirement under the statutory criteria.  We
7  believe those things are also relevant to the discretionary
8  analysis.
9          If the Court finds the statutory criteria are met, but
10  as we stated in our brief, our first argument is that because
11  of those things, she doesn't meet the statutory criteria at all
12  and, therefore, you don't get to this stuff in the
13  discretionary analysis.
14          MR. HAAZEN:  Further, the factors that need to be
15  considered, your Honor, is there has been a suggestion by
16  opposing counsel that, you know, we can just go to Holland and
17  get it there.  There are no requirements.  The courts have held
18  that.
19          I understand the issue came up as part of the question
20  whether we can just get discovery from Buiter as a party as
21  soon as he is a party.  We've made the argument before that he
22  is a party.  Before there is actually a case --
23          THE COURT:  I've got it.
24          MR. HAAZEN:  -- you're under the jurisdiction beyond
25  the jurisdictional reach of the Dutch court.

E56SMEEC

```
 1                THE COURT:  Okay.  Anything else, counsel?
 2                MS. KOCH:  I just want to emphasize, again, the real
 3      circumvention of policy that's going on here.  What Ms. Mees
 4      wants to do is go into a foreign court and challenge the
 5      underlying basis for her still ongoing criminal prosecution in
 6      the New York State Court.  She couldn't do that in this Court,
 7      and she probably couldn't do it in a New York State Court
 8      either.
 9                But she wants to go to the Netherlands to do it, and
10      she wants this Court to help her.  That's just playing fast and
11      loose with the justice system.  And respectfully, your Honor,
12      we would respectfully suggest that this Court should not
13      exercise its discretion to facilitate that.
14                MR. HAAZEN:  Can I respond to that, your Honor?
15                THE COURT:  Yes, sir.
16                MR. HAAZEN:  That's an allegation.  Meanwhile, Buiter
17      is taking the position there is only a one-year statute of
18      limitation and the clock is ticking.
19                THE COURT:  I mean, to the extent we care about any
20      proceeding for defamation in New York, that's not surprising to
21      anybody.  It runs from the date of publication, right?
22                MR. HAAZEN:  Right.  But if she's -- I mean, the only
23      way, according to opposing counsel, to toll that statute of
24      limitation is to file suit.  And at the same time, she's
25      complaining about the fact that we intend to file suit, which
```

E56SMEEC
1  would be some sort of a violation of the criminal proceeding,
2  which really, right now, is entirely dead.
3            She just needs to go back to the criminal court and
4  give an update on the status, and that's it.  But if she's to
5  suggest that it is inappropriate for us to go to court and sue
6  on the count of defamation in a foreign court, which I highly
7  doubt that this is unacceptable, what, does she want us to sit
8  here and wait for the statute of limitations to run out?  That
9  makes no sense.  Then is opposing counsel willing to give us a
10  tolling agreement?  Then that issue wouldn't arise.  Maybe then
11  we would wait.
12            THE COURT:  There you go.  Anything else?  Have we
13  exhausted ourselves?  Yes, probably.
14            MR. HAAZEN:  Counsel repeated the statement that the
15  sole purpose is to help us plead the complaint.  I've already
16  told your Honor that that is not the sole purpose, but it is
17  one of the purposes.  It also serves for evidentiary purposes.
18            THE COURT:  Okay.  Thank you, both, counsel.
19            This has been quite interesting.  With respect to the
20  Intel factors, as counsel just noted, nobody is denying that
21  the nature of the foreign tribunal, to the extent that Ms. Mees
22  files an action in the Netherlands, is an appropriate tribunal.
23            With respect to the character of the proceedings, of
24  course there are not proceedings under way now.  I do not reach
25  Professor Buiter's argument that such proceedings are not

E56SMEEC

1   within reasonable contemplation, but certainly if such
2   proceedings were brought, the character of the proceedings
3   under way then would be appropriate for Section 1782 discovery.
4   Counsel also agrees that the Dutch courts are receptive to U.S.
5   Federal Court judicial assistance.
6          Moving on to the discretionary factors.  The current
7   request for discovery by Dr. Mees does appear to be an attempt
8   to circumvent the foreign proof-gathering restrictions, in that
9   the extent of the discovery requested was far broader than that
10  which appears to be available in the Dutch courts.  That also
11  probably comes under the policies of the foreign court.
12         With respect to the policies of the United States, I
13  do take Professor Buiter's counsel's point that the requested
14  documents appear to be designed to attack collaterally the
15  still pending criminal prosecution here in New York.
16  Accordingly, the request would contravene U.S. policy.
17         And, finally, the requests taken in the context of the
18  Dutch discovery scope do appear to be intrusive and burdensome.
19  However, the basis for my decision is the requirement that such
20  discovery be required "for use" in the foreign proceeding.
21  First of all, as mentioned during oral argument, even Professor
22  Mees' foreign law expert cites authority to the effect that the
23  complaint in the Netherlands Court must "sum up the evidence."
24  There is no requirement that appears in the Dutch legal
25  expert's affidavit that all available evidence in the case be

1    appended to the complaint.
2            Secondly, the statements of Professor Mees' Dutch
3    counsel are conclusory in stating that the broad discovery
4    required is necessary in order to frame a proper complaint.
5    Counsel makes no connection  between the very broad discovery
6    and the pleading requirements of the Dutch court.  So it
7    appears that this very extensive discovery detail is not
8    necessary "quote" in framing a complaint.
9            Thirdly, it certainly appears that Professor Mees has
10   volumes of material available from which to draft the complaint
11   in the Dutch proceeding.  In that regard, I note that under the
12   heading Buiter's romantic relationship with Dr. Mees, in the
13   moving brief, counsel has 11 bullet points detailing "in-person
14   romantic encounters."
15           Starting at page 6 of the brief, under the heading
16   Buiter continues the relationship, there are some 17 listed
17   "in-person romantic encounters."  There are also numerous
18   additional citations to documents at the remaining pages of the
19   brief where the facts are being discussed, and this goes from
20   page 7 certainly through page 13.
21           Secondly, I note that a dozen or so e-mails are
22   attached to Dr. Mees' reply affidavit on her motion to dismiss
23   the criminal proceeding.  It apparently seems that Dr. Mees has
24   enough material from which to frame an adequate complaint, even
25   under Dutch pleading standards.

61

E56SMEEC
1              I also note, whereas, counsel states that Dr. Mees
2    does not have all of the e-mails.  That, of course, is not on
3    personal information, and there is no affidavit stating that
4    she does not have available e-mails and the like.
5              Accordingly, the request for Section 1782 discovery is
6    denied primarily on the basis that the discovery is not
7    necessary for use in a foreign proceeding.  The denial is
8    without prejudice to re-application if the Dutch courts
9    indicate that additional material is necessary and for some
10   reason the Dutch court is not able to order it produced there.
11             Counsel, have I forgotten anything?  Is there anything
12   else?
13             MR. HAAZEN:  Thank you, your Honor.
14             THE COURT:  Thank you, ladies and gentlemen.
15             (Adjourned)
16
17
18
19
20
21
22
23
24
25

**S.A. 62**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
IN RE APPLICATION OF          :
HELEEN MEES FOR LEAVE TO      :
ISSUE SUBPOENAS FOR THE       :          14 Misc. 88
TAKING OF A DEPOSITION AND    :
THE PRODUCTION OF DOCUMENTS   :
PURSUANT TO 28 U.S.C. § 1782  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LORETTA A. PRESKA, Chief United States District Judge:

    For the reasons stated on the record following oral argument

on May 6, 2014, the Application pursuant to 28 U.S.C. § 1782

[dkt. no. 2] is DENIED.


SO ORDERED.

Dated:    New York, New York
          May 6, 2014


_____
LORETTA A. PRESKA
Chief United States District Judge
Part I

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 83. Courts of Appeals (Refs & Annos)

## 28 U.S.C.A. § 1291

## § 1291. Final decisions of district courts

Currentness

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348; Apr. 2, 1982, Pub.L. 97-164, Title I, § 124, 96 Stat. 36.)

Notes of Decisions (3254)

28 U.S.C.A. § 1291, 28 USCA § 1291
Current through P.L. 113-125 (excluding P.L. 113-121) approved 6-30-14

**End of Document**                                                   © 2014 Thomson Reuters. No claim to original U.S. Government Works.

S.A. 64

United States Code Annotated

Title 28. Judiciary and Judicial Procedure (Refs & Annos)

Part V. Procedure

Chapter 117. Evidence; Depositions (Refs & Annos)

28 U.S.C.A. § 1782

§ 1782. Assistance to foreign and international tribunals and to litigants before such tribunals

Effective: February 10, 1996

Currentness

**(a)** The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

**(b)** This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 949; May 24, 1949, c. 139, § 93, 63 Stat. 103; Oct. 3, 1964, Pub.L. 88-619, § 9(a), 78 Stat. 997; Feb. 10, 1996, Pub.L. 104-106, Div. A, Title XIII, § 1342(b), 110 Stat. 486.)

Notes of Decisions (279)

28 U.S.C.A. § 1782, 28 USCA § 1782
Current through P.L. 113-125 (excluding P.L. 113-121) approved 6-30-14

  © 2014 Thomson Reuters. No claim to original U.S. Government Works.

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.

S.A. 65

PL 104–106, February 10, 1996, 110 Stat 186

UNITED STATES PUBLIC LAWS
104th Congress - Second Session
Convening January 3, 1996
Copr. (C) West 1996. All rights reserved.

Additions and Deletions are not identified in this document.

PL 104–106 (S 1124)
February 10, 1996
NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 1996

An Act to authorize appropriations for fiscal year 1996 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, to reform acquisition laws and information technology management of the Federal Government, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

****

SEC. 1342. JUDICIAL ASSISTANCE TO THE INTERNATIONAL TRIBUNAL FOR YUGOSLAVIA AND TO THE INTERNATIONAL TRIBUNAL FOR RWANDA.

****

<< 28 USCA § 1782 >>

<< 18 USCA § 3181 NOTE >>

(b) ASSISTANCE TO FOREIGN AND INTERNATIONAL TRIBUNALS AND TO LITIGANTS BEFORE SUCH TRIBUNALS.—Section 1782(a) of title 28, United States Code, is amended by inserting in the first sentence after "foreign or international tribunal" the following: ", including criminal investigations conducted before formal accusation".

****

| United States Code Annotated |
| Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos) |
| Title V. Disclosures and Discovery (Refs & Annos) |

### Federal Rules of Civil Procedure Rule 26

### Rule 26. Duty to Disclose; General Provisions Governing Discovery

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 26 are displayed in two separate documents. Notes of Decisions for subdivisions I to III are contained in this document. For Notes of Decisions for subdivisions IV to end, see second document for 28 USCA Federal Rules of Civil Procedure Rule 26.>

**(a) Required Disclosures.**

**(1)** *Initial Disclosure.*

**(A)** *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

**(i)** the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**(ii)** a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**(iii)** a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**(iv)** for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or

reimburse for payments made to satisfy the judgment.

**(B)** *Proceedings Exempt from Initial Disclosure.* The following proceedings are exempt from initial disclosure:

**(i)** an action for review on an administrative record;

**(ii)** a forfeiture action in rem arising from a federal statute;

**(iii)** a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

**(iv)** an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

**(v)** an action to enforce or quash an administrative summons or subpoena;

**(vi)** an action by the United States to recover benefit payments;

**(vii)** an action by the United States to collect on a student loan guaranteed by the United States;

**(viii)** a proceeding ancillary to a proceeding in another court; and

**(ix)** an action to enforce an arbitration award.

**(C)** *Time for Initial Disclosures--In General.* A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

**(D)** *Time for Initial Disclosures--For Parties Served or Joined Later.* A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after

being served or joined, unless a different time is set by stipulation or court order.

**(E)** *Basis for Initial Disclosure; Unacceptable Excuses.* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

**(2)** *Disclosure of Expert Testimony.*

**(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

**(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

**(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;

**(ii)** the facts or data considered by the witness in forming them;

**(iii)** any exhibits that will be used to summarize or support them;

**(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

**(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

**(vi)** a statement of the compensation to be paid for the study and testimony in the case.

**(C)** *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

**(i)** the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

**(ii)** a summary of the facts and opinions to which the witness is expected to testify.

**(D)** *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

**(i)** at least 90 days before the date set for trial or for the case to be ready for trial; or

**(ii)** if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

**(E)** *Supplementing the Disclosure*. The parties must supplement these disclosures when required under Rule 26(e).

**(3)** *Pretrial Disclosures.*

**(A)** *In General*. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

**(i)** the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it may call if the need arises;

**(ii)** the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

**(iii)**an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises.

**(B)** *Time for Pretrial Disclosures; Objections.* Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made--except for one under Federal Rule of Evidence 402 or 403--is waived unless excused by the court for good cause.

**(4)** *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

**(b) Discovery Scope and Limits.**

**(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

**(2)** *Limitations on Frequency and Extent.*

**(A)** *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

**(B)** *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(C)** *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other

source that is more convenient, less burdensome, or less expensive;

**(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

**(iii)** the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

**(3)** *Trial Preparation: Materials***.**

**(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

**(i)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

**(C)** *Previous Statement*. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

**(i)** a written statement that the person has signed or otherwise adopted or approved; or

**(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

**(4)** *Trial Preparation: Experts*.

**(A)** *Deposition of an Expert Who May Testify*. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

**(B)** *Trial-Preparation Protection for Draft Reports or Disclosures*. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

**(i)** relate to compensation for the expert's study or testimony;

**(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

**(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

**(D)** *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

**(i)** as provided in Rule 35(b); or

**(ii)** on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

**(E)** *Payment*. Unless manifest injustice would result, the court must require that the party seeking discovery:

**(i)** pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

**(ii)** for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

**(5)** *Claiming Privilege or Protecting Trial-Preparation Materials.*

**(A)** *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**(B)** *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

**(c) Protective Orders.**

**(1)** *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;

**(B)** specifying terms, including time and place, for the disclosure or discovery;

**(C)** prescribing a discovery method other than the one selected by the party seeking discovery;

**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

**(2)** *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

**(3)** *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

**(d) Timing and Sequence of Discovery.**

**(1)** *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

**(2)** *Sequence.* Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

**(A)** methods of discovery may be used in any sequence; and

**(B)** discovery by one party does not require any other party to delay its discovery.

**(e) Supplementing Disclosures and Responses.**

**(1)** *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

**(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

**(B)** as ordered by the court.

**(2)** *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

**(f) Conference of the Parties; Planning for Discovery.**

**(1)** *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

**(2)** *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

**(3)** *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

**(A)** what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

**(B)** the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

**(C)** any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;

**(D)** any issues about claims of privilege or of protection as trial-preparation materials, including--if the parties agree on a procedure to assert these claims after production--whether to ask the court to include their agreement in an order;

**(E)** what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

**(F)** any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

**(4)** *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

**(A)** require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

**(B)** require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

**(g) Signing Disclosures and Discovery Requests, Responses, and Objections.**

**(1)** *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's

own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

**(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and

**(B)** with respect to a discovery request, response, or objection, it is:

**(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

**(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

**(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

**(2)** *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

**(3)** *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 30, 1970, effective July 1, 1970; April 29, 1980, effective August 1, 1980; April 28, 1983, effective August 1, 1983; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007; April 28, 2010, effective December 1, 2010.)

S.A. 78

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated

Criminal Procedure Law (Refs & Annos)

Chapter 11-A. Of the Consolidated Laws (Refs & Annos)

Part Two. The Principal Proceedings

Title H. Preliminary Proceedings in Local Criminal Court

Article 170. Proceedings Upon Information, Simplified Traffic Information, Prosecutor's Information and Misdemeanor Complaint from Arraignment to Plea (Refs & Annos)

McKinney's CPL § 170.55

§ 170.55 Adjournment in contemplation of dismissal

Effective: May 20, 2012

Currentness

1. Upon or after arraignment in a local criminal court upon an information, a simplified information, a prosecutor's information or a misdemeanor complaint, and before entry of a plea of guilty thereto or commencement of a trial thereof, the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court's own motion with the consent of both the people and the defendant, order that the action be "adjourned in contemplation of dismissal," as prescribed in subdivision two.

2. An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice. Upon issuing such an order, the court must release the defendant on his own recognizance. Upon application of the people, made at any time not more than six months, or in the case of a family offense as defined in subdivision one of section 530.11 of this chapter, one year, after the issuance of such order, the court may restore the case to the calendar upon a determination that dismissal of the accusatory instrument would not be in furtherance of justice, and the action must thereupon proceed. If the case is not so restored within such six months or one year period, the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice.

3. In conjunction with an adjournment in contemplation of dismissal the court may issue a temporary order of protection pursuant to section 530.12 or 530.13 of this chapter, requiring the defendant to observe certain specified conditions of conduct.

4. Where the local criminal court information, simplified information, prosecutor's information, or misdemeanor complaint charges a crime or violation between spouses or between parent and child, or between members of the same family or household, as the term "members of the same family or household" is defined in subdivision one of section 530.11 of this chapter, the court may as a condition of an adjournment in contemplation of dismissal order, require that the defendant participate in an educational program addressing

the issues of spousal abuse and family violence.

5. The court may grant an adjournment in contemplation of dismissal on condition that the defendant participate in dispute resolution and comply with any award or settlement resulting therefrom.

6. The court may as a condition of an adjournment in contemplation of dismissal order, require the defendant to perform services for a public or not-for-profit corporation, association, institution or agency. Such condition may only be imposed where the defendant has consented to the amount and conditions of such service. The court may not impose such conditions in excess of the length of the adjournment.

6-a. The court may, as a condition of an authorized adjournment in contemplation of dismissal, where the defendant has been charged with an offense and the elements of such offense meet the criteria of an "eligible offense" and such person qualified as an "eligible person" as such terms are defined in section four hundred fifty-eight-l of the social services law, require the defendant to participate in an education reform program in accordance with section four hundred fifty-eight-l of the social services law.

7. The court may, as a condition of an adjournment in contemplation of dismissal order, where a defendant is under twenty-one years of age and is charged with (a) a misdemeanor or misdemeanors other than section eleven hundred ninety-two of the vehicle and traffic law, in which the record indicates the consumption of alcohol by the defendant may have been a contributing factor, or (b) a violation of paragraph (a) of subdivision one of section sixty-five-b of the alcoholic beverage control law, require the defendant to attend an alcohol awareness program established pursuant to subdivision (a) of section 19.07 of the mental hygiene law.

8. The granting of an adjournment in contemplation of dismissal shall not be deemed to be a conviction or an admission of guilt. No person shall suffer any disability or forfeiture as a result of such an order. Upon the dismissal of the accusatory instrument pursuant this section, the arrest and prosecution shall be deemed a nullity and the defendant shall be restored, in contemplation of law, to the status he occupied before his arrest and prosecution.

9. Notwithstanding any other provision of this section, a court may not issue an order adjourning an action in contemplation of dismissal if the offense is for a violation of the vehicle and traffic law related to the operation of a motor vehicle (except one related to parking, stopping or standing), or a violation of a local law, rule or ordinance related to the operation of a motor vehicle (except one related to parking, stopping or standing), if such offense was committed by the holder of a commercial driver's license or was committed in a commercial motor vehicle, as defined in subdivision four of section five hundred one-a of the vehicle and traffic law.

**Credits**

(L.1970, c. 996, § 1. Amended L.1972, c. 661, § 42; L.1980, c. 24, § 1; L.1980, c. 530, § 13; L.1981, c. 847, § 2; L.1982, c. 134, § 1; L.1985, c. 672, § 5; L.1988, c. 39, § 1; L.1990, c. 683, § 3; L.1994, c. 222, § 33; L.1998, c. 383, § 8, eff. April 1, 1999; L.2011, c. 58, pt. CC, § 8, eff. May 30, 2011;

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated

Criminal Procedure Law (Refs & Annos)

Chapter 11-A. Of the Consolidated Laws (Refs & Annos)

Part Two. The Principal Proceedings

Title J. Prosecution of Indictments in Superior Courts--Plea to Sentence

Article 240. Discovery (Refs & Annos)

### McKinney's CPL § 240.20

### § 240.20 Discovery; upon demand of defendant

Currentness

1. Except to the extent protected by court order, upon a demand to produce by a defendant against whom an indictment, superior court information, prosecutor's information, information, or simplified information charging a misdemeanor is pending, the prosecutor shall disclose to the defendant and make available for inspection, photographing, copying or testing, the following property:

(a) Any written, recorded or oral statement of the defendant, and of a co-defendant to be tried jointly, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him;

(b) Any transcript of testimony relating to the criminal action or proceeding pending against the defendant, given by the defendant, or by a co-defendant to be tried jointly, before any grand jury;

(c) Any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial;

(d) Any photograph or drawing relating to the criminal action or proceeding which was made or completed by a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial;

(e) Any photograph, photocopy or other reproduction made by or at the direction of a police officer, peace officer or prosecutor of any property prior to its release pursuant to the provisions of section 450.10 of the penal law, irrespective of whether the people intend to introduce at trial the property or the photograph, photocopy or

other reproduction.

(f) Any other property obtained from the defendant, or a co-defendant to be tried jointly;

(g) Any tapes or other electronic recordings which the prosecutor intends to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction;

(h) Anything required to be disclosed, prior to trial, to the defendant by the prosecutor, pursuant to the constitution of this state or of the United States.

(i) The approximate date, time and place of the offense charged and of defendant's arrest.

(j) In any prosecution under penal law section 156.05 or 156.10, the time, place and manner of notice given pursuant to subdivision six of section 156.00 of such law.

(k) in any prosecution commenced in a manner set forth in this subdivision alleging a violation of the vehicle and traffic law, in addition to any material required to be disclosed pursuant to this article, any other provision of law, or the constitution of this state or of the United States, any written report or document, or portion thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.

2. The prosecutor shall make a diligent, good faith effort to ascertain the existence of demanded property and to cause such property to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control; provided, that the prosecutor shall not be required to obtain by subpoena duces tecum demanded material which the defendant may thereby obtain.

**Credits**

(Added L.1979, c. 412, § 2. Amended L.1982, c. 558, §§ 4, 5; L.1983, c. 317, § 1; L.1984, c. 795, § 3; L.1986, c. 514, § 8; L.1989, c. 536, § 1.)

**Editors' Notes**

<div align="center">PRACTICE COMMENTARIES</div>

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated

Criminal Procedure Law (Refs & Annos)

Chapter 11-A. Of the Consolidated Laws (Refs & Annos)

Part Two. The Principal Proceedings

Title J. Prosecution of Indictments in Superior Courts--Plea to Sentence

Article 240. Discovery (Refs & Annos)

### McKinney's CPL § 240.40

### § 240.40 Discovery; upon court order

### Effective: August 1, 2012

Currentness

1. Upon motion of a defendant against whom an indictment, superior court information, prosecutor's information, information, or simplified information charging a misdemeanor is pending, the court in which such accusatory instrument is pending:

(a) must order discovery as to any material not disclosed upon a demand pursuant to section 240.20, if it finds that the prosecutor's refusal to disclose such material is not justified; (b) must, unless it is satisfied that the people have shown good cause why such an order should not be issued, order discovery or any other order authorized by subdivision one of section 240.70 as to any material not disclosed upon demand pursuant to section 240.20 where the prosecutor has failed to serve a timely written refusal pursuant to section 240.35; (c) may order discovery with respect to any other property, which the people intend to introduce at the trial, upon a showing by the defendant that discovery with respect to such property is material to the preparation of his or her defense, and that the request is reasonable; and (d) where property in the people's possession, custody, or control that consists of a deoxyribonucleic acid ("DNA") profile obtained from probative biological material gathered in connection with the investigation or prosecution of the defendant and the defendant establishes that such profile complies with federal bureau of investigation or state requirements, whichever are applicable and as such requirements are applied to law enforcement agencies seeking a keyboard search or similar comparison, and that the data meets state DNA index system or national DNA index system criteria as such criteria are applied to law enforcement agencies seeking such a keyboard search or similar comparison, the court may order an entity that has access to the combined DNA index system or its successor system to compare such DNA profile against DNA databanks by keyboard searches, or a similar method that does not involve uploading, upon notice to both parties and the entity required to perform the search, upon a showing by the defendant that such a comparison is material to the presentation of his or her defense and that the request is reasonable. For purposes of this paragraph, a "keyboard search" shall mean a search of a DNA profile against the databank in which the profile that is searched is not uploaded to or maintained in the databank. Upon granting the motion pursuant to paragraph (c) of this subdivision, the court shall, upon motion of the people showing such to be material to the preparation of their case and that the request is reasonable, condition its order of discovery by further directing discovery by the people of property, of the same kind or character as that authorized to be inspected by the defendant, which he or she intends to introduce at the trial.

2. Upon motion of the prosecutor, and subject to constitutional limitation, the court in which an indictment, superior court information, prosecutor's information, information, or simplified information charging a misdemeanor is pending: (a) must order discovery as to any property not disclosed upon a demand pursuant to section 240.30, if it finds that the defendant's refusal to disclose such material is not justified; and (b) may order the defendant to provide non-testimonial evidence. Such order may, among other things, require the defendant to:

(i) Appear in a line-up;

(ii) Speak for identification by witness or potential witness;

(iii) Be fingerprinted;

(iv) Pose for photographs not involving reenactment of an event;

(v) Permit the taking of samples of blood, hair or other materials from his body in a manner not involving an unreasonable intrusion thereof or a risk of serious physical injury thereto;

(vi) Provide specimens of his handwriting;

(vii) Submit to a reasonable physical or medical inspection of his body.

This subdivision shall not be construed to limit, expand, or otherwise affect the issuance of a similar court order, as may be authorized by law, before the filing of an accusatory instrument consistent with such rights as the defendant may derive from the constitution of this state or of the United States. This section shall not be construed to limit or otherwise affect the administration of a chemical test where otherwise authorized pursuant to section one thousand one hundred ninety-four-a of the vehicle and traffic law.[1]

3. An order pursuant to this section may be denied, limited or conditioned as provided in section 240.50.

**Credits**

(Added L.1979, c. 412, § 2. Amended L.1982, c. 558, § 10; L.1983, c. 317, § 3; L.1983, c. 481, § 4; L.2012, c. 19, § 3.)

**Editors' Notes**

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated

Criminal Procedure Law (Refs & Annos)

Chapter 11-A. Of the Consolidated Laws (Refs & Annos)

Part Two. The Principal Proceedings

Title J. Prosecution of Indictments in Superior Courts--Plea to Sentence

Article 240. Discovery (Refs & Annos)

### McKinney's CPL § 240.45

### § 240.45 Discovery; upon trial, of prior statements and criminal history of witnesses

Currentness

1. After the jury has been sworn and before the prosecutor's opening address, or in the case of a single judge trial after commencement and before submission of evidence, the prosecutor shall, subject to a protective order, make available to the defendant:

(a) Any written or recorded statement, including any testimony before a grand jury and an examination videotaped pursuant to section 190.32 of this chapter, made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony;

(b) A record of judgment of conviction of a witness the people intend to call at trial if the record of conviction is known by the prosecutor to exist;

(c) The existence of any pending criminal action against a witness the people intend to call at trial, if the pending criminal action is known by the prosecutor to exist.

The provisions of paragraphs (b) and (c) of this subdivision shall not be construed to require the prosecutor to fingerprint a witness or otherwise cause the division of criminal justice services or other law enforcement agency or court to issue a report concerning a witness.

2. After presentation of the people's direct case and before the presentation of the defendant's direct case, the defendant shall, subject to a protective order, make available to the prosecutor:

(a) any written or recorded statement made by a person other than the defendant whom the defendant intends to call as a witness at the trial, and which relates to the subject matter of the witness's testimony;

(b) a record of judgment of conviction of a witness, other than the defendant, the defendant intends to call at trial if the record of conviction is known by the defendant to exist;

(c) the existence of any pending criminal action against a witness, other than the defendant, the defendant intends to call at trial, if the pending criminal action is known by the defendant to exist.

**Credits**

(Added L.1979, c. 412, § 2. Amended L.1982, c. 558, § 8; L.1984, c. 804, § 5.)

**Editors' Notes**

### PRACTICE COMMENTARIES

by Peter Preiser

Subdivisions 1(a) and 2(a) comprise the statutory embodiment of the *Rosario* rule (see *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961)).

In considering *Rosario* requirements, it is important at the outset to note two significant distinctions between New York practice and federal practice where the procedure for production of witnesses' prior statements is known as the *Jencks* rule (*Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 [1957]). First, under federal practice, embodied in Rule 26.2 of the Federal Rules of Criminal Procedure, the witness's prior statement(s) becomes available pursuant to motion by the adverse party after the witness has testified. Under New York practice, as codified in the present section, the prior statement(s) is turned over automatically, at the opening of a party's case. Thus, in New York, the adverse party receives the prior statements of all adverse witnesses before any of them testify. Second, under federal practice, a prior statement reduced to writing must have been signed, approved or adopted by the witness.(see FRCRP 26.2[f(1)]).Whereas, in New York, any notes taken by an investigator or a prosecutor capsulizing witness's responses to questions asked during investigation are covered as *Rosario* material without need for approval or adoption by the witness. *People v. Consolazio*, 40 N.Y.2d 446, 387 N.Y.S.2d 62, 354 N.E.2d 801 (1976).

Following formulation of the *Rosario* rule in 1961 a number of judicially created refinements and enhancements were added (see discussion in *People v. Ranghelle*, 69 N.Y.2d 56, 62-63, 511 N.Y.S.2d 580, 503 N.E.2d 1011 [1986]). Perhaps the most controversial aspect of these was the *Ranghelle* decision itself (*supra*), regarding the consequence on post conviction review of prosecutorial failure to have complied with the rule. There the Court made it clear that any prosecutorial failure whatsoever to produce *Rosario* material was *per se* cause for vitiating the conviction upon appeal from the judgment or upon post conviction motion to vacate the judgment. This newly crystallized rule, eschewing any degree of harmless error analysis, was to be applied notwithstanding the prosecutor's good faith effort to locate, identify and turn-over all *Rosario* material. Moreover, ruled the Court, the

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated
  Criminal Procedure Law (Refs & Annos)
    Chapter 11-A. Of the Consolidated Laws (Refs & Annos)
      Part Two. The Principal Proceedings
        Title K. Prosecution of Informations in Local Criminal Courts--Plea to Sentence
          Article 340. Pre-Trial Proceedings

McKinney's CPL § 340.30

§ 340.30 Pre-trial discovery and notices of defenses

Currentness

The provisions of article two hundred forty, concerning pre-trial discovery by a defendant under indictment in a superior court, and article two hundred fifty, concerning pre-trial notice to the people by a defendant under indictment in a superior court who intends to advance a trial defense of mental disease or defect or of alibi, apply to a prosecution of an information in a local criminal court.

**Credits**

(L.1970, c. 996, § 1.)

**Editors' Notes**

**PRACTICE COMMENTARIES**

by Peter Preiser

This section expresses legislative intent that the procedures for pre-trial discovery and certain pre-trial notices apply to prosecution of informations in the same manner as they do to prosecution of indictments.

The section omits mention of the subsequently enacted CPL § 250.30 notice relating to offenses involving computers. But this is obviously a legislative oversight.

Practice Commentaries for the various provisions of CPL Articles 240 and 250 should be consulted for explanation of the various discovery and notice requirements made applicable by the present section.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

McKinney's Consolidated Laws of New York Annotated

Criminal Procedure Law (Refs & Annos)

Chapter 11-A. Of the Consolidated Laws (Refs & Annos)

Part Three. Special Proceedings and Miscellaneous Procedures

Title P. Procedures for Securing Attendance at Criminal Actions and Proceedings of Defendants and Witnesses Under Control of Court--Recognizance, Bail and Commitment (Refs & Annos)

Article 530. Orders of Recognizance or Bail with Respect to Defendants in Criminal Actions and Proceedings--When and by What Courts Authorized (Refs & Annos)

McKinney's CPL § 530.11

§ 530.11 Procedures for family offense matters

Effective: December 18, 2013

Currentness

1. Jurisdiction. The family court and the criminal courts shall have concurrent jurisdiction over any proceeding concerning acts which would constitute disorderly conduct, harassment in the first degree, harassment in the second degree, aggravated harassment in the second degree, sexual misconduct, forcible touching, sexual abuse in the third degree, sexual abuse in the second degree as set forth in subdivision one of section 130.60 of the penal law, stalking in the first degree, stalking in the second degree, stalking in the third degree, stalking in the fourth degree, criminal mischief, menacing in the second degree, menacing in the third degree, reckless endangerment, strangulation in the first degree, strangulation in the second degree, criminal obstruction of breathing or blood circulation, assault in the second degree, assault in the third degree, an attempted assault, identity theft in the first degree, identity theft in the second degree, identity theft in the third degree, grand larceny in the fourth degree, grand larceny in the third degree or coercion in the second degree as set forth in subdivisions one, two and three of section 135.60 of the penal law between spouses or former spouses, or between parent and child or between members of the same family or household except that if the respondent would not be criminally responsible by reason of age pursuant to section 30.00 of the penal law, then the family court shall have exclusive jurisdiction over such proceeding. Notwithstanding a complainant's election to proceed in family court, the criminal court shall not be divested of jurisdiction to hear a family offense proceeding pursuant to this section. For purposes of this section, "disorderly conduct" includes disorderly conduct not in a public place. For purposes of this section, "members of the same family or household" with respect to a proceeding in the criminal courts shall mean the following:

(a) persons related by consanguinity or affinity;

(b) persons legally married to one another;

(c) persons formerly married to one another regardless of whether they still reside in the same household;

(d) persons who have a child in common, regardless of whether such persons have been married or have lived together at any time; and

(e) persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time. Factors the court may consider in determining whether a relationship is an "intimate relationship" include but are not limited to: the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship. Neither a casual acquaintance nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute an "intimate relationship".

2. Information to petitioner or complainant. The chief administrator of the courts shall designate the appropriate probation officers, warrant officers, sheriffs, police officers, district attorneys or any other law enforcement officials, to inform any petitioner or complainant bringing a proceeding under this section before such proceeding is commenced, of the procedures available for the institution of family offense proceedings, including but not limited to the following:

(a) That there is concurrent jurisdiction with respect to family offenses in both family court and the criminal courts;

(b) That a family court proceeding is a civil proceeding and is for the purpose of attempting to stop the violence, end family disruption and obtain protection. That referrals for counseling, or counseling services, are available through probation for this purpose;

(c) That a proceeding in the criminal courts is for the purpose of prosecution of the offender and can result in a criminal conviction of the offender;

(d) That a proceeding or action subject to the provisions of this section is initiated at the time of the filing of an accusatory instrument or family court petition, not at the time of arrest, or request for arrest, if any;

(e) Repealed.

(f) That an arrest may precede the commencement of a family court or a criminal court proceeding, but an arrest is not a requirement for commencing either proceeding.

(g) Repealed by L.1997, c, 186, § 7, eff. July 8, 1997.

(h) At such time as the complainant first appears before the court on a complaint or information, the court shall advise the complainant that the complainant may: continue with the proceeding in criminal court; or have the allegations contained therein heard in a family court proceeding; or proceed concurrently in both criminal and family court. Notwithstanding a complainant's election to proceed in family court, the criminal court shall not be divested of jurisdiction to hear a family offense proceeding pursuant to this section;

(i) Nothing herein shall be deemed to limit or restrict complainant's rights to proceed directly and without court referral in either a criminal or family court, or both, as provided for in section one hundred fifteen of the family court act and section 100.07 of this chapter;

(j) Repealed by L.1997, c. 186, § 9, eff. July 8, 1997.

2-a. Upon the filing of an accusatory instrument charging a crime or violation described in subdivision one of this section between members of the same family or household, as such terms are defined in this section, or as soon as the complainant first appears before the court, whichever is sooner, the court shall advise the complainant of the right to proceed in both the criminal and family courts, pursuant to section 100.07 of this chapter.

3. Official responsibility. No official or other person designated pursuant to subdivision two of this section shall discourage or prevent any person who wishes to file a petition or sign a complaint from having access to any court for that purpose.

4. When a person is arrested for an alleged family offense or an alleged violation of an order of protection or temporary order of protection or arrested pursuant to a warrant issued by the supreme or family court, and the supreme or family court, as applicable, is not in session, such person shall be brought before a local criminal court in the county of arrest or in the county in which such warrant is returnable pursuant to article one hundred twenty of this chapter. Such local criminal court may issue any order authorized under subdivision eleven of section 530.12 of this article, section one hundred fifty-four-d or one hundred fifty-five of the family court act or subdivision three-b of section two hundred forty or subdivision two-a of section two hundred fifty-two of the domestic relations law, in addition to discharging other arraignment responsibilities as set forth in this chapter. In making such order, the local criminal court shall consider the bail recommendation, if any, made by the supreme or family court as indicated on the warrant or certificate of warrant. Unless the petitioner or complainant requests otherwise, the court, in addition to scheduling further criminal proceedings, if any, regarding such alleged family offense or violation allegation, shall make such matter returnable in the supreme or family court, as applicable, on the next day such court is in session.

5. Filing and enforcement of out-of-state orders of protection. A valid order of protection or temporary order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction shall be accorded full faith and credit and enforced as if it were issued by a court within the state for as long as the order remains in effect in the issuing jurisdiction in accordance with sections two thousand two hundred sixty-five

and two thousand two hundred sixty-six of title eighteen of the United States Code.

(a) An order issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction shall be deemed valid if:

(i) the issuing court had personal jurisdiction over the parties and over the subject matter under the law of the issuing jurisdiction;

(ii) the person against whom the order was issued had reasonable notice and an opportunity to be heard prior to issuance of the order; provided, however, that if the order was a temporary order of protection issued in the absence of such person, that notice had been given and that an opportunity to be heard had been provided within a reasonable period of time after the issuance of the order; and

(iii) in the case of orders of protection or temporary orders of protection issued against both a petitioner, plaintiff or complainant and respondent or defendant, the order or portion thereof sought to be enforced was supported by: (A) a pleading requesting such order, including, but not limited to, a petition, cross-petition or counterclaim; and (B) a judicial finding that the requesting party is entitled to the issuance of the order which may result from a judicial finding of fact, judicial acceptance of an admission by the party against whom the order was issued or judicial finding that the party against whom the order was issued had given knowing, intelligent and voluntary consent to its issuance.

(b) Notwithstanding the provisions of article fifty-four of the civil practice law and rules, an order of protection or temporary order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, accompanied by a sworn affidavit that upon information and belief such order is in effect as written and has not been vacated or modified, may be filed without fee with the clerk of the court, who shall transmit information regarding such order to the statewide registry of orders of protection and warrants established pursuant to section two hundred twenty-one-a of the executive law; provided, however, that such filing and registry entry shall not be required for enforcement of the order.

6. Notice. Every police officer, peace officer or district attorney investigating a family offense under this article shall advise the victim of the availability of a shelter or other services in the community, and shall immediately give the victim written notice of the legal rights and remedies available to a victim of a family offense under the relevant provisions of the criminal procedure law, the family court act and the domestic relations law. Such notice shall be prepared in Spanish and English and if necessary, shall be delivered orally, and shall include but not be limited to the following statement:

"If you are the victim of domestic violence, you may request that the officer assist in providing for your safety and that of your children, including providing information on how to obtain a temporary order of protection. You may also request that the officer assist you in obtaining your essential personal effects and locating and taking you, or assist in making arrangements to take you, and your children to a safe place within such officer's jurisdiction, including but not limited to a domestic violence program, a family member's or a friend's residence, or a similar place of safety. When the officer's jurisdiction is more than a single county, you may ask

the officer to take you or make arrangements to take you and your children to a place of safety in the county where the incident occurred. If you or your children are in need of medical treatment, you have the right to request that the officer assist you in obtaining such medical treatment. You may request a copy of any incident reports at no cost from the law enforcement agency. You have the right to seek legal counsel of your own choosing and if you proceed in family court and if it is determined that you cannot afford an attorney, one must be appointed to represent you without cost to you.

You may ask the district attorney or a law enforcement officer to file a criminal complaint. You also have the right to file a petition in the family court when a family offense has been committed against you. You have the right to have your petition and request for an order of protection filed on the same day you appear in court, and such request must be heard that same day or the next day court is in session. Either court may issue an order of protection from conduct constituting a family offense which could include, among other provisions, an order for the respondent or defendant to stay away from you and your children. The family court may also order the payment of temporary child support and award temporary custody of your children. If the family court is not in session, you may seek immediate assistance from the criminal court in obtaining an order of protection.

The forms you need to obtain an order of protection are available from the family court and the local criminal court (the addresses and telephone numbers shall be listed). The resources available in this community for information relating to domestic violence, treatment of injuries, and places of safety and shelters can be accessed by calling the following 800 numbers (the statewide English and Spanish language 800 numbers shall be listed and space shall be provided for local domestic violence hotline telephone numbers).

Filing a criminal complaint or a family court petition containing allegations that are knowingly false is a crime."

The division of criminal justice services in consultation with the state office for the prevention of domestic violence shall prepare the form of such written notice consistent with provisions of this section and distribute copies thereof to the appropriate law enforcement officials pursuant to subdivision nine of section eight hundred forty-one of the executive law.

Additionally, copies of such notice shall be provided to the chief administrator of the courts to be distributed to victims of family offenses through the criminal court at such time as such persons first come before the court and to the state department of health for distribution to all hospitals defined under article twenty-eight of the public health law. No cause of action for damages shall arise in favor of any person by reason of any failure to comply with the provisions of this subdivision except upon a showing of gross negligence or willful misconduct.

7. Rules of court regarding concurrent jurisdiction. The chief administrator of the courts, pursuant to paragraph (e) of subdivision two of section two hundred twelve of the judiciary law, shall promulgate rules to facilitate record sharing and other communication between the criminal and family courts, subject to applicable provisions of this chapter and the family court act pertaining to the confidentiality, expungement and sealing of records, when such courts exercise concurrent jurisdiction over family offense proceedings.

**Credits**

(Added L.1980, c. 530, § 15. Amended L.1981, c. 416, § 20; L.1983, c. 925, § 2; L.1984, c. 948, § 13; L.1986, c. 847, § 2; L.1990, c. 667, § 1; L.1992, c. 345, § 6; L.1994, c. 222, §§ 34 to 39; L.1994, c. 224, § 7;

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated

Criminal Procedure Law (Refs & Annos)

Chapter 11-A. Of the Consolidated Laws (Refs & Annos)

Part Three. Special Proceedings and Miscellaneous Procedures

Title P. Procedures for Securing Attendance at Criminal Actions and Proceedings of Defendants and Witnesses Under Control of Court--Recognizance, Bail and Commitment (Refs & Annos)

Article 530. Orders of Recognizance or Bail with Respect to Defendants in Criminal Actions and Proceedings--When and by What Courts Authorized (Refs & Annos)

McKinney's CPL § 530.12

§ 530.12 Protection for victims of family offenses

Effective: January 12, 2014

Currentness

1. When a criminal action is pending involving a complaint charging any crime or violation between spouses, former spouses, parent and child, or between members of the same family or household, as members of the same family or household are defined in subdivision one of section 530.11 of this article, the court, in addition to any other powers conferred upon it by this chapter may issue a temporary order of protection in conjunction with any securing order committing the defendant to the custody of the sheriff or as a condition of any order of recognizance or bail or an adjournment in contemplation of dismissal.

(a) In addition to any other conditions, such an order may require the defendant: (1) to stay away from the home, school, business or place of employment of the family or household member or of any designated witness, provided that the court shall make a determination, and shall state such determination in a written decision or on the record, whether to impose a condition pursuant to this paragraph, provided further, however, that failure to make such a determination shall not affect the validity of such temporary order of protection. In making such determination, the court shall consider, but shall not be limited to consideration of, whether the temporary order of protection is likely to achieve its purpose in the absence of such a condition, conduct subject to prior orders of protection, prior incidents of abuse, past or present injury, threats, drug or alcohol abuse, and access to weapons;

(2) to permit a parent, or a person entitled to visitation by a court order or a separation agreement, to visit the child at stated periods;

(3) to refrain from committing a family offense, as defined in subdivision one of section 530.11 of this article, or any criminal offense against the child or against the family or household member or against any person to whom custody of the child is awarded, or from harassing, intimidating or threatening such persons;

(4) to refrain from acts of commission or omission that create an unreasonable risk to the health, safety and welfare of a child, family or household member's life or health;

(5) to permit a designated party to enter the residence during a specified period of time in order to remove personal belongings not in issue in this proceeding or in any other proceeding or action under this chapter, the family court act or the domestic relations law;

(6)(A) to refrain from intentionally injuring or killing, without justification, any companion animal the defendant knows to be owned, possessed, leased, kept or held by the victim or a minor child residing in the household.

(B) "Companion animal", as used in this section, shall have the same meaning as in subdivision five of section three hundred fifty of the agriculture and markets law;

(7)(A) to promptly return specified identification documents to the protected party, in whose favor the order of protection or temporary order of protection is issued; provided, however, that such order may: (i) include any appropriate provision designed to ensure that any such document is available for use as evidence in this proceeding, and available if necessary for legitimate use by the party against whom such order is issued; and (ii) specify the manner in which such return shall be accomplished.

(B) For purposes of this subparagraph, "identification document" shall mean any of the following: (i) exclusively in the name of the protected party: birth certificate, passport, social security card, health insurance or other benefits card, a card or document used to access bank, credit or other financial accounts or records, tax returns, any driver's license, and immigration documents including but not limited to a United States permanent resident card and employment authorization document; and (ii) upon motion and after notice and an opportunity to be heard, any of the following, including those that may reflect joint use or ownership, that the court determines are necessary and are appropriately transferred to the protected party: any card or document used to access bank, credit or other financial accounts or records, tax returns, and any other identifying cards and documents.

(b) The court may issue an order, pursuant to section two hundred twenty-seven-c of the real property law, authorizing the party for whose benefit any order of protection has been issued to terminate a lease or rental agreement pursuant to section two hundred twenty-seven-c of the real property law.

2. Notwithstanding any other provision of law, a temporary order of protection issued or continued by a family court pursuant to section eight hundred thirteen of the family court act shall continue in effect, absent action by the appropriate criminal court pursuant to subdivision three of this section, until the defendant is arraigned upon an accusatory instrument filed pursuant to section eight hundred thirteen of the family court act in such criminal

court.

3. The court may issue a temporary order of protection ex parte upon the filing of an accusatory instrument and for good cause shown. When a family court order of protection is modified, the criminal court shall forward a copy of such modified order to the family court issuing the original order of protection; provided, however, that where a copy of the modified order is transmitted to the family court by facsimile or other electronic means, the original copy of such modified order and accompanying affidavit shall be forwarded immediately thereafter.

3-a. Emergency powers when family court not in session; issuance of temporary orders of protection. Upon the request of the petitioner, a local criminal court may on an ex parte basis issue a temporary order of protection pending a hearing in family court, provided that a sworn affidavit, verified in accordance with subdivision one of section 100.30 of this chapter, is submitted: (i) alleging that the family court is not in session; (ii) alleging that a family offense, as defined in subdivision one of section eight hundred twelve of the family court act and subdivision one of section 530.11 of this article, has been committed; (iii) alleging that a family offense petition has been filed or will be filed in family court on the next day the court is in session; and (iv) showing good cause. Upon appearance in a local criminal court, the petitioner shall be advised that he or she may continue with the proceeding either in family court or upon the filing of a local criminal court accusatory instrument in criminal court or both. Upon issuance of a temporary order of protection where petitioner requests that it be returnable in family court, the local criminal court shall transfer the matter forthwith to the family court and shall make the matter returnable in family court on the next day the family court is in session, or as soon thereafter as practicable, but in no event more than four calendar days after issuance of the order. The local criminal court, upon issuing a temporary order of protection returnable in family court pursuant to this subdivision, shall immediately forward, in a manner designed to insure arrival before the return date set in the order, a copy of the temporary order of protection and sworn affidavit to the family court and shall provide a copy of such temporary order of protection to the petitioner; provided, however, that where a copy of the temporary order of protection and affidavit are transmitted to the family court by facsimile or other electronic means, the original order and affidavit shall be forwarded to the family court immediately thereafter. Any temporary order of protection issued pursuant to this subdivision shall be issued to the respondent, and copies shall be filed as required in subdivisions six and eight of this section for orders of protection issued pursuant to this section. Any temporary order of protection issued pursuant to this subdivision shall plainly state the date that such order expires which, in the case of an order returnable in family court, shall be not more than four calendar days after its issuance, unless sooner vacated or modified by the family court. A petitioner requesting a temporary order of protection returnable in family court pursuant to this subdivision in a case in which a family court petition has not been filed shall be informed that such temporary order of protection shall expire as provided for herein, unless the petitioner files a petition pursuant to subdivision one of section eight hundred twenty-one of the family court act on or before the return date in family court and the family court issues a temporary order of protection or order of protection as authorized under article eight of the family court act. Nothing in this subdivision shall limit or restrict the petitioner's right to proceed directly and without court referral in either a criminal or family court, or both, as provided for in section one hundred fifteen of the family court act and section 100.07 of this chapter.

3-b. Emergency powers when family court not in session; modifications of orders of protection or temporary orders of protection. Upon the request of the petitioner, a local criminal court may on an ex parte basis modify a temporary order of protection or order of protection which has been issued under article four, five, six or eight of the family court act pending a hearing in family court, provided that a sworn affidavit verified in accordance with subdivision one of section 100.30 of this chapter is submitted: (i) alleging that the family court is not in session and (ii) showing good cause, including a showing that the existing order is insufficient for the purposes of protection of the petitioner, the petitioner's child or children or other members of the petitioner's family or household. The local criminal court shall make the matter regarding the modification of the order returnable in

family court on the next day the family court is in session, or as soon thereafter as practicable, but in no event more than four calendar days after issuance of the modified order. The court shall immediately forward a copy of the modified order, if any, and sworn affidavit to the family court and shall provide a copy of such modified order, if any, and affidavit to the petitioner; provided, however, that where copies of such modified order and affidavit are transmitted to the family court by facsimile or other electronic means, the original copies of such modified order and affidavit shall be forwarded to the family court immediately thereafter. Any modified temporary order of protection or order of protection issued pursuant to this subdivision shall be issued to the respondent and copies shall be filed as required in subdivisions six and eight of this section for orders of protection issued pursuant to this section.

4. The court may issue or extend a temporary order of protection ex parte or on notice simultaneously with the issuance of a warrant for the arrest of defendant. Such temporary order of protection may continue in effect until the day the defendant subsequently appears in court pursuant to such warrant or voluntarily or otherwise.

5. [Eff. until Sept. 1, 2015, pursuant to L.1995, c. 3, § 74, par. d. See, also, opening paragraph below.] Upon sentencing on a conviction for any crime or violation between spouses, between a parent and child, or between members of the same family or household as defined in subdivision one of section 530.11 of this article, the court may in addition to any other disposition, including a conditional discharge or youthful offender adjudication, enter an order of protection. Where a temporary order of protection was issued, the court shall state on the record the reasons for issuing or not issuing an order of protection. The duration of such an order shall be fixed by the court and: (A) in the case of a felony conviction, shall not exceed the greater of: (i) eight years from the date of such sentencing, or (ii) eight years from the date of the expiration of the maximum term of an indeterminate or the term of a determinate sentence of imprisonment actually imposed; or (B) in the case of a conviction for a class A misdemeanor, shall not exceed the greater of: (i) five years from the date of such sentencing, or (ii) five years from the date of the expiration of the maximum term of a definite or intermittent term actually imposed; or (C) in the case of a conviction for any other offense, shall not exceed the greater of: (i) two years from the date of sentencing, or (ii) two years from the date of the expiration of the maximum term of a definite or intermittent term actually imposed. For purposes of determining the duration of an order of protection entered pursuant to this subdivision, a conviction shall be deemed to include a conviction that has been replaced by a youthful offender adjudication. In addition to any other conditions, such an order may require the defendant:

5. [Eff. Sept. 1, 2015, pursuant to L.1995, c. 3, § 74, par. d. See, also, opening paragraph above.] Upon sentencing on a conviction for any crime or violation between spouses, between a parent and child, or between members of the same family or household as defined in subdivision one of section 530.11 of this article, the court may in addition to any other disposition, including a conditional discharge or youthful offender adjudication, enter an order of protection. Where a temporary order of protection was issued, the court shall state on the record the reasons for issuing or not issuing an order of protection. The duration of such an order shall be fixed by the court and, in the case of a felony conviction, shall not exceed the greater of: (i) five years from the date of such sentencing, or (ii) three years from the date of the expiration of the maximum term of an indeterminate sentence of imprisonment actually imposed; or in the case of a conviction for a class A misdemeanor, shall not exceed three years from the date of such sentencing; or in the case of a conviction for any other offense, shall not exceed one year from the date of sentencing. For purposes of determining the duration of an order of protection entered pursuant to this subdivision, a conviction shall be deemed to include a conviction that has been replaced by a youthful offender adjudication. In addition to any other conditions, such an order may require the defendant: :

(a) to stay away from the home, school, business or place of employment of the family or household member, the other spouse or the child, or of any witness designated by the court, provided that the court shall make a determination, and shall state such determination in a written decision or on the record, whether to impose a condition pursuant to this paragraph, provided further, however, that failure to make such a determination shall not affect the validity of such order of protection. In making such determination, the court shall consider, but shall not be limited to consideration of, whether the order of protection is likely to achieve its purpose in the absence of such a condition, conduct subject to prior orders of protection, prior incidents of abuse, extent of past or present injury, threats, drug or alcohol abuse, and access to weapons;

(b) to permit a parent, or a person entitled to visitation by a court order or a separation agreement, to visit the child at stated periods;

(c) to refrain from committing a family offense, as defined in subdivision one of section 530.11 of this article, or any criminal offense against the child or against the family or household member or against any person to whom custody of the child is awarded, or from harassing, intimidating or threatening such persons; or

(d) to refrain from acts of commission or omission that create an unreasonable risk to the health, safety and welfare of a child, family or household member's life or health;

(e) to permit a designated party to enter the residence during a specified period of time in order to remove personal belongings not in issue in this proceeding or in any other proceeding or action under this chapter, the family court act or the domestic relations law.

6. An order of protection or a temporary order of protection issued pursuant to subdivision one, two, three, four or five of this section shall bear in a conspicuous manner the term "order of protection" or "temporary order of protection" as the case may be and a copy shall be filed by the clerk of the court with the sheriff's office in the county in which the complainant resides, or, if the complainant resides within a city, with the police department of such city. The order of protection or temporary order of protection shall also contain the following notice: "This order of protection will remain in effect even if the protected party has, or consents to have, contact or communication with the party against whom the order is issued. This order of protection can only be modified or terminated by the court. The protected party cannot be held to violate this order nor be arrested for violating this order.". The absence of such language shall not affect the validity of such order. A copy of such order of protection or temporary order of protection may from time to time be filed by the clerk of the court with any other police department or sheriff's office having jurisdiction of the residence, work place, and school of anyone intended to be protected by such order. A copy of the order may also be filed by the complainant at the appropriate police department or sheriff's office having jurisdiction. Any subsequent amendment or revocation of such order shall be filed in the same manner as herein provided.

Such order of protection shall plainly state the date that such order expires.

6-a. The court shall inquire as to the existence of any other orders of protection between the defendant and the person or persons for whom the order of protection is sought.

7. A family offense subject to the provisions of this section which occurs subsequent to the issuance of an order of protection under this chapter shall be deemed a new offense for which the complainant may seek to file a new accusatory instrument and may file a family court petition under article eight of the family court act as provided for in section 100.07 of this chapter.

8. In any proceeding in which an order of protection or temporary order of protection or a warrant has been issued under this section, the clerk of the court shall issue to the complainant and defendant and defense counsel and to any other person affected by the order a copy of the order of protection or temporary order of protection and ensure that a copy of the order of protection or temporary order of protection be transmitted to the local correctional facility where the individual is or will be detained, the state or local correctional facility where the individual is or will be imprisoned, and the supervising probation department or department of corrections and community supervision where the individual is under probation or parole supervision. The presentation of a copy of such order or a warrant to any peace officer acting pursuant to his or her special duties or police officer shall constitute authority for him or her to arrest a person who has violated the terms of such order and bring such person before the court and, otherwise, so far as lies within his or her power, to aid in securing the protection such order was intended to afford. The protected party in whose favor the order of protection or temporary order of protection is issued may not be held to violate an order issued in his or her favor nor may such protected party be arrested for violating such order.

9. If no warrant, order or temporary order of protection has been issued by the court, and an act alleged to be a family offense as defined in section 530.11 of this chapter is the basis of the arrest, the magistrate shall permit the complainant to file a petition, information or accusatory instrument and for reasonable cause shown, shall thereupon hold such respondent or defendant, admit to, fix or accept bail, or parole him or her for hearing before the family court or appropriate criminal court as the complainant shall choose in accordance with the provisions of section 530.11 of this chapter.

10. Punishment for contempt based on a violation of an order of protection or temporary order of protection shall not affect the original criminal action, nor reduce or diminish a sentence upon conviction for the original crime or violation alleged therein or for a lesser included offense thereof.

11. If a defendant is brought before the court for failure to obey any lawful order issued under this section, or an order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, and if, after hearing, the court is satisfied by competent proof that the defendant has willfully failed to obey any such order, the court may:

(a) revoke an order of recognizance or revoke an order of bail or order forfeiture of such bail and commit the defendant to custody; or

(b) restore the case to the calendar when there has been an adjournment in contemplation of dismissal and commit the defendant to custody; or

(c) revoke a conditional discharge in accordance with section 410.70 of this chapter and impose probation supervision or impose a sentence of imprisonment in accordance with the penal law based on the original conviction; or

(d) revoke probation in accordance with section 410.70 of this chapter and impose a sentence of imprisonment in accordance with the penal law based on the original conviction. In addition, if the act which constitutes the violation of the order of protection or temporary order of protection is a crime or a violation the defendant may be charged with and tried for that crime or violation.

*(e) Repealed.*

12. The chief administrator of the courts shall promulgate appropriate uniform temporary orders of protection and orders of protection forms to be used throughout the state. Such forms shall be promulgated and developed in a manner to ensure the compatability[1] of such forms with the statewide computerized registry established pursuant to section two hundred twenty-one-a of the executive law.

13. Notwithstanding the foregoing provisions, an order of protection, or temporary order of protection when applicable, may be entered against a former spouse and persons who have a child in common, regardless of whether such persons have been married or have lived together at any time, or against a member of the same family or household as defined in subdivision one of section 530.11 of this article.

14. The people shall make reasonable efforts to notify the complainant alleging a crime constituting a family offense when the people have decided to decline prosecution of such crime, to dismiss the criminal charges against the defendant or to enter into a plea agreement. The people shall advise the complainant of the right to file a petition in the family court pursuant to section 100.07 of this chapter and section one hundred fifteen of the family court act.

In any case where allegations of criminal conduct are transferred from the family court to the criminal court pursuant to paragraph (ii) of subdivision (b) of section eight hundred forty-six of the family court act, the people shall advise the family court making the transfer of any decision to file an accusatory instrument against the family court respondent and shall notify such court of the disposition of such instrument and the sentence, if any, imposed upon such respondent.

Release of a defendant from custody shall not be delayed because of the requirements of this subdivision.

15. Any motion to vacate or modify an order of protection or temporary order of protection shall be on notice to the non-moving party, except as provided in subdivision three-b of this section.

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated
  Civil Practice Law and Rules (Refs & Annos)
    Chapter Eight. Of the Consolidated Laws
      Article 2. Limitations of Time (Refs & Annos)

McKinney's CPLR § 215

§ 215. Actions to be commenced within one year: against sheriff, coroner or constable; for escape of prisoner; for assault, battery, false imprisonment, malicious prosecution, libel or slander; for violation of right of privacy; for penalty given to informer; on arbitration award

Effective: June 23, 2006

Currentness

The following actions shall be commenced within one year:

1. an action against a sheriff, coroner or constable, upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty, except the non-payment of money collected upon an execution;

2. an action against an officer for the escape of a prisoner arrested or imprisoned by virtue of a civil mandate;

3. an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law;

4. an action to enforce a penalty or forfeiture created by statute and given wholly or partly to any person who will prosecute; if the action is not commenced within the year by a private person, it may be commenced on behalf of the state, within three years after the commission of the offense, by the attorney-general or the district attorney of the county where the offense was committed; and

5. an action upon an arbitration award.

6. An action to recover any overcharge of interest or to enforce a penalty for such overcharge.

7. an action by a tenant pursuant to subdivision three of section two hundred twenty-three-b of the real property law.

8. (a) Whenever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, the plaintiff shall have at least one year from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action, notwithstanding that the time in which to commence such action has already expired or has less than a year remaining.

(b) Whenever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, and such criminal action is for rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law, the plaintiff shall have at least five years from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action, notwithstanding that the time in which to commence such action has already expired or has less than a year remaining.

**Credits**

(L.1962, c. 308. Amended L.1968, c. 1072, § 37; L.1969, c. 1141, § 17; L.1979, c. 693, § 2; L.1983, c. 95, § 1; L.2006, c. 3, § 4, eff. June 23, 2006.)

**Editors' Notes**

## SUPPLEMENTARY PRACTICE COMMENTARIES

### by Vincent C. Alexander

### 2009

### C215:8 Criminal Actions.

*Dynamic Chemicals, Inc. v. Ackerman Mechanical Services, Inc.*, 2008, 58 A.D.3d 153, 867 N.Y.S.2d 820 (4th Dept.), reaches the common sense conclusion that CPLR 215(8)(a)'s one-year extension of the statute of limitations for a civil action arising from a criminal act, which runs from "termination of a criminal action" for such act, applies regardless of whether the prosecution took place in a New York state court or some other state or federal court. The Appellate Division read the statute's cross-reference to "section 1.20 of the criminal procedure law" as incorporating only New York's definition of "termination" of a prosecution, not New York's definition of "criminal


McKinney's Consolidated Laws of New York Annotated Currentness
  Public Officers Law (Refs & Annos)
    Chapter 47. Of the Consolidated Laws
      ➡ Article 6. Freedom of Information Law (Refs & Annos)
➡ **§ 84. Legislative declaration**

The legislature hereby finds that a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government.

As state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible.

The people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.

The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article.

➡ **§ 85. Short title**

This article shall be known and may be cited as the "Freedom of Information Law."

➡ **§ 86. Definitions**

As used in this article, unless the context requires otherwise:

1. "Judiciary" means the courts of the state, including any municipal or district court, whether or not of record.

2. "State legislature" means the legislature of the state of New York, including any committee, subcommittee, joint committee, select committee, or commission thereof.

3. "Agency" means any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprie-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

tary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature.

4. "Record" means any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes.

5. "Critical infrastructure" means systems, assets, places or things, whether physical or virtual, so vital to the state that the disruption, incapacitation or destruction of such systems, assets, places or things could jeopardize the health, safety, welfare or security of the state, its residents or its economy.

➡ **§ 87. Access to agency records**

1. (a) Within sixty days after the effective date of this article, the governing body of each public corporation shall promulgate uniform rules and regulations for all agencies in such public corporation pursuant to such general rules and regulations as may be promulgated by the committee on open government in conformity with the provisions of this article, pertaining to the administration of this article.

(b) Each agency shall promulgate rules and regulations, in conformity with this article and applicable rules and regulations promulgated pursuant to the provisions of paragraph (a) of this subdivision, and pursuant to such general rules and regulations as may be promulgated by the committee on open government in conformity with the provisions of this article, pertaining to the availability of records and procedures to be followed, including, but not limited to:

i. the times and places such records are available;

ii. the persons from whom such records may be obtained, and

iii. the fees for copies of records which shall not exceed twenty-five cents per photocopy not in excess of nine inches by fourteen inches, or the actual cost of reproducing any other record in accordance with the provisions of paragraph (c) of this subdivision, except when a different fee is otherwise prescribed by statute.

(c) In determining the actual cost of reproducing a record, an agency may include only:

i. an amount equal to the hourly salary attributed to the lowest paid agency employee who has the necessary skill required to prepare a copy of the requested record;

ii. the actual cost of the storage devices or media provided to the person making the request in complying with such request;

iii. the actual cost to the agency of engaging an outside professional service to prepare a copy of a record, but only

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

when an agency's information technology equipment is inadequate to prepare a copy, if such service is used to prepare the copy; and

iv. preparing a copy shall not include search time or administrative costs, and no fee shall be charged unless at least two hours of agency employee time is needed to prepare a copy of the record requested. A person requesting a record shall be informed of the estimated cost of preparing a copy of the record if more than two hours of an agency employee's time is needed, or if an outside professional service would be retained to prepare a copy of the record.

2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that:

(a) are specifically exempted from disclosure by state or federal statute;

(b) if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article;

(c) if disclosed would impair present or imminent contract awards or collective bargaining negotiations;

(d) are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise;

(e) are compiled for law enforcement purposes and which, if disclosed, would:

i. interfere with law enforcement investigations or judicial proceedings;

ii. deprive a person of a right to a fair trial or impartial adjudication;

iii. identify a confidential source or disclose confidential information relating to a criminal investigation; or

iv. reveal criminal investigative techniques or procedures, except routine techniques and procedures;

(f) if disclosed could endanger the life or safety of any person;

(g) are inter-agency or intra-agency materials which are not:

i. statistical or factual tabulations or data;

ii. instructions to staff that affect the public;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

iii. final agency policy or determinations;

iv. external audits, including but not limited to audits performed by the comptroller and the federal government; or

(h) are examination questions or answers which are requested prior to the final administration of such questions.

(i) if disclosed, would jeopardize the capacity of an agency or an entity that has shared information with an agency to guarantee the security of its information technology assets, such assets encompassing both electronic information systems and infrastructures; or

(j) [Deemed repealed Dec. 1, 2019, pursuant to L.1988, c. 746, § 17.] are photographs, microphotographs, videotape or other recorded images prepared under authority of section eleven hundred eleven-a of the vehicle and traffic law.

(k) [Expires and deemed repealed Dec. 1, 2019, pursuant to L.2009, c. 19, § 10; L.2009, c. 20, § 24; L.2009, c. 21, § 22; L.2009, c. 22, § 22; L.2009, c. 23, § 9; L.2009, c. 383, § 24.] are photographs, microphotographs, videotape or other recorded images prepared under authority of section eleven hundred eleven-b of the vehicle and traffic law.

(l) [Expires and deemed repealed Sept. 20, 2015, pursuant to L.2010, c. 59, pt. II,§ 14.] are photographs, microphotographs, videotape or other recorded images produced by a bus lane photo device prepared under authority of section eleven hundred eleven-c of the vehicle and traffic law.

(m) [Expires and deemed repealed Aug. 30, 2018, pursuant to L.2013, c. 189, § 15.] are photographs, microphotographs, videotape or other recorded images prepared under the authority of section eleven hundred eighty-b of the vehicle and traffic law.

(n) [Expires and deemed repealed July 25, 2018, pursuant to L.2014, c. 43, § 12.] are photographs, microphotographs, videotape or other recorded images prepared under the authority of section eleven hundred eighty-c of the vehicle and traffic law.

3. Each agency shall maintain:

(a) a record of the final vote of each member in every agency proceeding in which the member votes;

(b) a record setting forth the name, public office address, title and salary of every officer or employee of the agency; and

(c) a reasonably detailed current list by subject matter of all records in the possession of the agency, whether or not available under this article. Each agency shall update its subject matter list annually, and the date of the most

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

recent update shall be conspicuously indicated on the list. Each state agency as defined in subdivision four of this section that maintains a website shall post its current list on its website and such posting shall be linked to the website of the committee on open government. Any such agency that does not maintain a website shall arrange to have its list posted on the website of the committee on open government.

4. (a) Each state agency which maintains records containing trade secrets, to which access may be denied pursuant to paragraph (d) of subdivision two of this section, shall promulgate regulations in conformity with the provisions of subdivision five of section eighty-nine of this article pertaining to such records, including, but not limited to the following:

(1) the manner of identifying the records or parts;

(2) the manner of identifying persons within the agency to whose custody the records or parts will be charged and for whose inspection and study the records will be made available;

(3) the manner of safeguarding against any unauthorized access to the records.

(b) As used in this subdivision the term "agency" or "state agency" means only a state department, board, bureau, division, council or office and any public corporation the majority of whose members are appointed by the governor.

(c) Each state agency that maintains a website shall post information related to this article and article six-A of this chapter on its website. Such information shall include, at a minimum, contact information for the persons from whom records of the agency may be obtained, the times and places such records are available for inspection and copying, and information on how to request records in person, by mail, and, if the agency accepts requests for records electronically, by e-mail. This posting shall be linked to the website of the committee on open government.

5. (a) An agency shall provide records on the medium requested by a person, if the agency can reasonably make such copy or have such copy made by engaging an outside professional service. Records provided in a computer format shall not be encrypted.

(b) No agency shall enter into or renew a contract for the creation or maintenance of records if such contract impairs the right of the public to inspect or copy the agency's records.

➡ **§ 88. Access to state legislative records**

1. The temporary president of the senate and the speaker of the assembly shall promulgate rules and regulations for their respective houses in conformity with the provisions of this article, pertaining to the availability, location and nature of records, including, but not limited to:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(a) the times and places such records are available;

(b) the persons from whom such records may be obtained;

(c) the fees for copies of such records, which shall not exceed twenty-five cents per photocopy not in excess of nine inches by fourteen inches, or the actual cost of reproducing any other record, except when a different fee is otherwise prescribed by law.

2. The state legislature shall, in accordance with its published rules, make available for public inspection and copying:

(a) bills and amendments thereto, fiscal notes, introducers' bill memoranda, resolutions and amendments thereto, and index records;

(b) messages received from the governor or the other house of the legislature, and home rule messages;

(c) legislative notification of the proposed adoption of rules by an agency;

(d) transcripts or minutes, if prepared, and journal records of public sessions including meetings of committees and subcommittees and public hearings, with the records of attendance of members threat and records of any votes taken;

(e) internal or external audits and statistical or factual tabulations of, or with respect to, material otherwise available for public inspection and copying pursuant to this section or any other applicable provision of law;

(f) administrative staff manuals and instructions to staff that affect members of the public;

(g) final reports and formal opinions submitted to the legislature;

(h) final reports or recommendations and minority or dissenting reports and opinions of members of committees, subcommittees, or commissions of the legislature;

(i) any other files, records, papers or documents required by law to be made available for public inspection and copying.

(j) external audits conducted pursuant to section ninety-two of the legislative law and schedules issued pursuant to subdivision two of section ninety of the legislative law.

3. Each house shall maintain and make available for public inspection and copying: (a) a record of votes of each member in every session and every committee and subcommittee meeting in which the member votes;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(b) a record setting forth the name, public office address, title, and salary of every officer or employee; and

(c) a current list, reasonably detailed, by subject matter of any records required to be made available for public inspection and copying pursuant to this section.

### ➡ § 89. General provisions relating to access to records; certain cases

The provisions of this section apply to access to all records, except as hereinafter specified:

1. (a) The committee on open government is continued and shall consist of the lieutenant governor or the delegate of such officer, the secretary of state or the delegate of such officer, whose office shall act as secretariat for the committee, the commissioner of the office of general services or the delegate of such officer, the director of the budget or the delegate of such officer, and seven other persons, none of whom shall hold any other state or local public office except the representative of local governments as set forth herein, to be appointed as follows: five by the governor, at least two of whom are or have been representatives of the news media, one of whom shall be a representative of local government who, at the time of appointment, is serving as a duly elected officer of a local government, one by the temporary president of the senate, and one by the speaker of the assembly. The persons appointed by the temporary president of the senate and the speaker of the assembly shall be appointed to serve, respectively, until the expiration of the terms of office of the temporary president and the speaker to which the temporary president and speaker were elected. The four persons presently serving by appointment of the governor for fixed terms shall continue to serve until the expiration of their respective terms. Thereafter, their respective successors shall be appointed for terms of four years. The member representing local government shall be appointed for a term of four years, so long as such member shall remain a duly elected officer of a local government. The committee shall hold no less than two meetings annually, but may meet at any time. The members of the committee shall be entitled to reimbursement for actual expenses incurred in the discharge of their duties.

(b) The committee shall:

i. furnish to any agency advisory guidelines, opinions or other appropriate information regarding this article;

ii. furnish to any person advisory opinions or other appropriate information regarding this article;

iii. promulgate rules and regulations with respect to the implementation of subdivision one and paragraph (c) of subdivision three of section eighty-seven of this article;

iv. request from any agency such assistance, services and information as will enable the committee to effectively carry out its powers and duties;

v. develop a form, which shall be made available on the internet, that may be used by the public to request a record; and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**S.A. 108**

vi. report on its activities and findings regarding this article and article seven of this chapter, including recommendations for changes in the law, to the governor and the legislature annually, on or before December fifteenth.

2. (a) The committee on public access to records may promulgate guidelines regarding deletion of identifying details or withholding of records otherwise available under this article to prevent unwarranted invasions of personal privacy. In the absence of such guidelines, an agency may delete identifying details when it makes records available.

(b) An unwarranted invasion of personal privacy includes, but shall not be limited to:

i. disclosure of employment, medical or credit histories or personal references of applicants for employment;

ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility;

iii. sale or release of lists of names and addresses if such lists would be used for solicitation or fund-raising purposes;

iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it;

v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency;

vi. information of a personal nature contained in a workers' compensation record, except as provided by section one hundred ten-a of the workers' compensation law; or

vii. disclosure of electronic contact information, such as an e-mail address or a social network username, that has been collected from a taxpayer under section one hundred four of the real property tax law.

(c) Unless otherwise provided by this article, disclosure shall not be construed to constitute an unwarranted invasion of personal privacy pursuant to paragraphs (a) and (b) of this subdivision:

i. when identifying details are deleted;

ii. when the person to whom a record pertains consents in writing to disclosure;

iii. when upon presenting reasonable proof of identity, a person seeks access to records pertaining to him or her; or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

iv. when a record or group of records relates to the right, title or interest in real property, or relates to the inventory, status or characteristics of real property, in which case disclosure and providing copies of such record or group of records shall not be deemed an unwarranted invasion of personal privacy, provided that nothing herein shall be construed to authorize the disclosure of electronic contact information, such as an e-mail address or a social network username, that has been collected from a taxpayer under section one hundred four of the real property tax law.

2-a. Nothing in this article shall permit disclosure which constitutes an unwarranted invasion of personal privacy as defined in subdivision two of this section if such disclosure is prohibited under section ninety-six of this chapter.

3. (a) Each entity subject to the provisions of this article, within five business days of the receipt of a written request for a record reasonably described, shall make such record available to the person requesting it, deny such request in writing or furnish a written acknowledgement of the receipt of such request and a statement of the approximate date, which shall be reasonable under the circumstances of the request, when such request will be granted or denied, including, where appropriate, a statement that access to the record will be determined in accordance with subdivision five of this section. An agency shall not deny a request on the basis that the request is voluminous or that locating or reviewing the requested records or providing the requested copies is burdensome because the agency lacks sufficient staffing or on any other basis if the agency may engage an outside professional service to provide copying, programming or other services required to provide the copy, the costs of which the agency may recover pursuant to paragraph (c) of subdivision one of section eighty-seven of this article. An agency may require a person requesting lists of names and addresses to provide a written certification that such person will not use such lists of names and addresses for solicitation or fund-raising purposes and will not sell, give or otherwise make available such lists of names and addresses to any other person for the purpose of allowing that person to use such lists of names and addresses for solicitation or fund-raising purposes. If an agency determines to grant a request in whole or in part, and if circumstances prevent disclosure to the person requesting the record or records within twenty business days from the date of the acknowledgement of the receipt of the request, the agency shall state, in writing, both the reason for the inability to grant the request within twenty business days and a date certain within a reasonable period, depending on the circumstances, when the request will be granted in whole or in part. Upon payment of, or offer to pay, the fee prescribed therefor, the entity shall provide a copy of such record and certify to the correctness of such copy if so requested, or as the case may be, shall certify that it does not have possession of such record or that such record cannot be found after diligent search. Nothing in this article shall be construed to require any entity to prepare any record not possessed or maintained by such entity except the records specified in subdivision three of section eighty-seven and subdivision three of section eighty-eight of this article. When an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort, it shall be required to do so. When doing so requires less employee time than engaging in manual retrieval or redactions from non-electronic records, the agency shall be required to retrieve or extract such record or data electronically. Any programming necessary to retrieve a record maintained in a computer storage system and to transfer that record to the medium requested by a person or to allow the transferred record to be read or printed shall not be deemed to be the preparation or creation of a new record.

(b) All entities shall, provided such entity has reasonable means available, accept requests for records submitted in the form of electronic mail and shall respond to such requests by electronic mail, using forms, to the extent practi-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


cable, consistent with the form or forms developed by the committee on open government pursuant to subdivision one of this section and provided that the written requests do not seek a response in some other form.

4. (a) Except as provided in subdivision five of this section, any person denied access to a record may within thirty days appeal in writing such denial to the head, chief executive or governing body of the entity, or the person therefor designated by such head, chief executive, or governing body, who shall within ten business days of the receipt of such appeal fully explain in writing to the person requesting the record the reasons for further denial, or provide access to the record sought. In addition, each agency shall immediately forward to the committee on open government a copy of such appeal when received by the agency and the ensuing determination thereon. Failure by an agency to conform to the provisions of subdivision three of this section shall constitute a denial.

(b) Except as provided in subdivision five of this section, a person denied access to a record in an appeal determination under the provisions of paragraph (a) of this subdivision may bring a proceeding for review of such denial pursuant to article seventy-eight of the civil practice law and rules. In the event that access to any record is denied pursuant to the provisions of subdivision two of section eighty-seven of this article, the agency involved shall have the burden of proving that such record falls within the provisions of such subdivision two. Failure by an agency to conform to the provisions of paragraph (a) of this subdivision shall constitute a denial.

(c) The court in such a proceeding may assess, against such agency involved, reasonable attorney's fees and other litigation costs reasonably incurred by such person in any case under the provisions of this section in which such person has substantially prevailed, when:

i. the agency had no reasonable basis for denying access; or

ii. the agency failed to respond to a request or appeal within the statutory time.

5. (a) (1) A person acting pursuant to law or regulation who, subsequent to the effective date of this subdivision, submits any information to any state agency may, at the time of submission, request that the agency except such information from disclosure under paragraph (d) of subdivision two of section eighty-seven of this article. Where the request itself contains information which if disclosed would defeat the purpose for which the exception is sought, such information shall also be excepted from disclosure.

(1-a) A person or entity who submits or otherwise makes available any records to any agency, may, at any time, identify those records or portions thereof that may contain critical infrastructure information, and request that the agency that maintains such records except such information from disclosure under subdivision two of section eighty-seven of this article. Where the request itself contains information which if disclosed would defeat the purpose for which the exception is sought, such information shall also be excepted from disclosure.

(2) The request for an exception shall be in writing and state the reasons why the information should be excepted from disclosure.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**S.A. 111**

(3) Information submitted as provided in subparagraphs one and one-a of this paragraph shall be excepted from disclosure and be maintained apart by the agency from all other records until fifteen days after the entitlement to such exception has been finally determined or such further time as ordered by a court of competent jurisdiction.

(b) On the initiative of the agency at any time, or upon the request of any person for a record excepted from disclosure pursuant to this subdivision, the agency shall:

(1) inform the person who requested the exception of the agency's intention to determine whether such exception should be granted or continued;

(2) permit the person who requested the exception, within ten business days of receipt of notification from the agency, to submit a written statement of the necessity for the granting or continuation of such exception;

(3) within seven business days of receipt of such written statement, or within seven business days of the expiration of the period prescribed for submission of such statement, issue a written determination granting, continuing or terminating such exception and stating the reasons therefor; copies of such determination shall be served upon the person, if any, requesting the record, the person who requested the exception, and the committee on public access to records.

(c) A denial of an exception from disclosure under paragraph (b) of this subdivision may be appealed by the person submitting the information and a denial of access to the record may be appealed by the person requesting the record in accordance with this subdivision:

(1) Within seven business days of receipt of written notice denying the request, the person may file a written appeal from the determination of the agency with the head of the agency, the chief executive officer or governing body or their designated representatives.

(2) The appeal shall be determined within ten business days of the receipt of the appeal. Written notice of the determination shall be served upon the person, if any, requesting the record, the person who requested the exception and the committee on public access to records. The notice shall contain a statement of the reasons for the determination.

(d) A proceeding to review an adverse determination pursuant to paragraph (c) of this subdivision may be commenced pursuant to article seventy-eight of the civil practice law and rules. Such proceeding, when brought by a person seeking an exception from disclosure pursuant to this subdivision, must be commenced within fifteen days of the service of the written notice containing the adverse determination provided for in subparagraph two of paragraph (c) of this subdivision.

(e) The person requesting an exception from disclosure pursuant to this subdivision shall in all proceedings have the burden of proving entitlement to the exception.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(f) Where the agency denies access to a record pursuant to paragraph (d) of subdivision two of section eighty-seven of this article, the agency shall have the burden of proving that the record falls within the provisions of such exception.

(g) Nothing in this subdivision shall be construed to deny any person access, pursuant to the remaining provisions of this article, to any record or part excepted from disclosure upon the express written consent of the person who had requested the exception.

(h) As used in this subdivision the term "agency" or "state agency" means only a state department, board, bureau, division, council or office and any public corporation the majority of whose members are appointed by the governor.

6. Nothing in this article shall be construed to limit or abridge any otherwise available right of access at law or in equity of any party to records.

7. Nothing in this article shall require the disclosure of the home address of an officer or employee, former officer or employee, or of a retiree of a public employees' retirement system; nor shall anything in this article require the disclosure of the name or home address of a beneficiary of a public employees' retirement system or of an applicant for appointment to public employment; provided however, that nothing in this subdivision shall limit or abridge the right of an employee organization, certified or recognized for any collective negotiating unit of an employer pursuant to article fourteen of the civil service law, to obtain the name or home address of any officer, employee or retiree of such employer, if such name or home address is otherwise available under this article.

8. Any person who, with intent to prevent the public inspection of a record pursuant to this article, willfully conceals or destroys any such record shall be guilty of a violation.

9. When records maintained electronically include items of information that would be available under this article, as well as items of information that may be withheld, an agency in designing its information retrieval methods, whenever practicable and reasonable, shall do so in a manner that permits the segregation and retrieval of available items in order to provide maximum public access.

➡ **§ 90. Severability**

If any provision of this article or the application thereof to any person or circumstances is adjudged invalid by a court of competent jurisdiction, such judgment shall not affect or impair the validity of the other provisions of the article or the application thereof to other persons and circumstances.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Treaty, with exchange of notes, signed at The Hague..., T.I.A.S. No. 10734...

T.I.A.S. No. 10734 (U.S. Treaty), 35 U.S.T. 1361 (U.S. Treaty), 1979 WL 182355 (U.S. Treaty)

UNITED STATES OF AMERICA

Netherlands

**Judicial Assistance: Criminal Investigations**

Treaty, with exchange of notes, signed at The Hague June 12, 1981;

Transmitted by the President of the United States of America to the Senate August 6, 1981 (Treaty Doc. No. 97-16, 97th Cong., 1st Sess.);
Reported favorably by the Senate Committee on Foreign Relations November 20, 1981 (S. Ex. Rept. No. 97-36, 97th Cong., 1st Sess.);
Advice and consent to ratification by the Senate December 2, 1981;
Ratified by the President January 4, 1982;
Ratified by the Netherlands, with reservation, July 12, 1983;
Ratifications exchanged at Washington August 16, 1983;
Proclaimed by the President October 11, 1983;
Entered into force September 15, 1983.

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

Treaty between the United States of America and the Kingdom of the Netherlands on mutual assistance in criminal matters

Article 1

*Obligation to Render Assistance*

Article 2

*Locating Persons*

Article 3

*Serving Documents*

Article 4

*Providing Records of Government Offices or Agencies*

Article 5

*Taking Testimony and Producing Documents in the Requested State*

Article 6

*Executing Requests for Search and Seizure*

Article 7

*Transferring Persons in Custody to the Requesting State*

Treaty, with exchange of notes, signed at The Hague..., T.I.A.S. No. 10734...

Article 8

*Transferring Persons in Custody to the Requested State*

Article 9

*Safe Conduct*

Article 10

*Limitations on Compliance*

Article 11

*Protecting Confidentiality and Restricting Use*

Article 12

*Executing Requests*

Article 13

*Contents of Requests*

Article 14

*Competent Authorities*

*Return of Completed Requests*

Article 16

*Return of Documents, Records or Articles of Evidence*

Article 17

*Costs and Translations*

Article 18

*Other Treaties and Domestic Laws*

Article 19

*Entry into Force*

Article 20

*Scope of Application*

Article 21

*Denunciation*

Annex

I

II

*Netherlands Criminal Code*

Article 194

Article 272

Article 328 bis

Article 328 ter

Article 336

*Criminal Code of the Netherlands Antilles*

Article 200

Article 285

Article 341(a)

Article 349

*The Internal Revenue Code (Title 26, United States Code)*

§ 7203

Article 4

Article 6

Article 11

Article 14

MINISTERIE VAN BUITENLANDSE ZAKEN

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

**\*1** CONSIDERING THAT:

The Treaty between the United States of America and the Kingdom of the Netherlands on Mutual Assistance in Criminal Matters, together with a related exchange of notes, was signed at The Hague on June 12, 1981, the texts of which, in the English and Dutch languages, are hereto annexed;

Treaty, with exchange of notes, signed at The Hague..., T.I.A.S. No. 10734...

The Senate of the United States of America by its resolution of December 2, 1981, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty and related exchange of notes;

The Treaty and related exchange of notes were ratified by the President of the United States of America on January 4, 1982, in pursuance of the advice and consent of the Senate, and duly ratified on the part of the Kingdom of the Netherlands;

It is provided in Article 19 of the Treaty that the Treaty shall enter into force 30 days after the exchange of the instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Washington on August 16, 1983; and accordingly the Treaty entered into force on September 15, 1983;

NOW, THEREFORE, I, Ronald Reagan, President of the United States of America, proclaim and make public the Treaty and related exchange of notes, to the end that they be observed and fulfilled with good faith on and after September 15, 1983, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this eleventh day of October in the year of our Lord one thousand nine hundred eighty-three and of the Independence of the United States of America the two hundred eighth.


RONALD REAGAN
[SEAL]

By the President:

GEORGE P. SHULTZ
*Secretary of State*


**Treaty between the United States of America and the Kingdom of the Netherlands on mutual assistance in criminal matters**

The Government of the United States of America and the Government of the Kingdom of the Netherlands, desiring to conclude a Treaty on mutual assistance in criminal matters, have agreed as follows:


**Article 1**

*Obligation to Render Assistance*

1. The Contracting Parties undertake to afford each other, upon request and in accordance with the provisions of this Treaty, mutual assistance in criminal investigations and proceedings.

2. Assistance shall include, but not be limited to:

a. locating persons;

b. serving documents;

c. providing records;

Case: 14-1866    Document: 24    Page: 130    08/13/2014    1294405    138

S.A. 117

Treaty, with exchange of notes, signed at The Hague..., T.I.A.S. No. 10734...

d. taking the testimony or statements of persons;

e. producing documents;

f. executing requests for search and seizure; and

g. transferring persons in custody for testimonial purposes.

<div align="center">

**Article 2**

***Locating Persons***

</div>

The Requested State shall make thorough efforts to ascertain the location of persons specified in the request and believed to be within the Requested State.

<div align="center">

**Article 3**

***Serving Documents***

</div>

1. The Requested State shall cause service of any legal document transmitted for this purpose by the Requesting State.

2. Any request for the service of a document requiring the appearance of a person before an authority in the Requesting State shall be transmitted a reasonable time before the scheduled appearance.

3. The Requested State shall return as proof of service a dated receipt signed by the person served or a declaration signed by the officer making service, specifying the form and date of service.

<div align="center">

**Article 4**

***Providing Records of Government Offices or Agencies***

</div>

1. The Requested State shall provide a copy of a publicly available record of a government office or agency, duly authenticated by an appropriate official.

2. The Requested State may provide any record or information in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as it would be available to its own law enforcement or judicial authorities. The Requested State in its discretion may deny the request entirely or in part.

<div align="center">

**Article 5**

***Taking Testimony and Producing Documents in the Requested State***

</div>

1. A person from whom evidence is sought shall, if necessary, be compelled by subpoena to appear and testify or produce documents, record and articles to the same extent as in investigations or proceedings in the Requested State. Testimonial privileges under the laws of the Requesting State shall not apply in the execution of requests under this Article.

2. On request, the Requested State shall state the date and place of the taking of testimony.

3. At the execution of a request, the Requested State shall permit the presence of an accused, counsel for the accused, and any other interested person specified in the request.

4. The executing authority shall provide any person permitted to be present the opportunity to pose questions for the person whose testimony is sought.

**S.A. 118**

## Article 6

### Executing Requests for Search and Seizure

1. The Requested State shall execute requests for search and seizure in accordance with its laws and practices if the subject offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a period exceeding one year, or, if less, is specified in the Annex of this Treaty.

The competent Authorities referred to in Article 14 may agree in writing upon any modifications of the Annex. Such modifications shall take effect on a date to be determined in an exchange of diplomatic notes.

2. An offense shall be deemed punishable under the laws of the Requested State if the acts or omissions alleged, occuring in similar circumstances in the Requested State, would constitute a criminal offense under the laws of that State. For purposes of this paragraph, purely jurisdictional elements of United States Federal offenses, such as the use of the mails or interstate commerce, shall not be considered as essential elements of these offenses.

3. A request to the Kingdom of the Netherlands for the production of documents from private persons shall comply with this Article.

4. A request to the United States for a search and seizure shall be accompanied by a statement made under oath before, or by a judge in the Kingdom of the Netherlands, which shall establish good cause to believe that an offense has taken place or is about to take place and that evidence of the offense is to be found on the persons or the premises to be searched, and shall provide a precise description of the person or premises to be searched. Such a statement shall be considered in the United States in lieu of an affidavit sworn before a United States judicial officer.

5. Documents produced under this Article shall be duly authenticated as specified in the request, and a record shall be made of every transfer of other articles or evidence seized. Such records of transfer shall be admitted as evidence of the truth of the facts they assert.

## Article 7

### Transferring Persons in Custody to the Requesting State

1. A person in custody needed as a witness or for purposes of confrontation before an authority in the Requesting State shall be transported to the Requesting State if:

a. the person in custody consents;

b. no substantial extention of that person's custody is anticipated; and

c. the Requested State has no reason to deny the transfer.

2. The Requested State may postpone execution of the request for as long as the presence of the person is necessary for an investigation or proceeding in the Requested State.

3. The Requesting State shall have authority and be obligated to keep the person in custody unless the Requested State has ordered release.

4. The Requesting State shall return a person not released under paragraph 3 to the custody of the Requested State as soon as circumstances permit or as other wise agreed. The Requesting State shall not decline to return a person transferred because such person is a national of that State.

## Article 8

### *Transferring Persons in Custody to the Requested State*

1. When the Requesting State requires the transfer to the other State of a person in custody for purposes of confrontation, the request shall so state.

2. The Requested State shall hold the person in custody, unless the Requesting State has ordered release.

3. The Requested State shall return a person not released under paragraph 2 to the custody of the Requesting State as soon as circumstances permit or as otherwise agreed. The Requested State shall not decline to return the person transferred because such person is a national of that State.

## Article 9

### *Safe Conduct*

1. A person appearing before an authority in either State pursuant to this Treaty shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, with respect to any act or conviction which preceded departure, except as provided in Articles 7 and 8 and in the following paragraph.

2. A person, of whatever nationality, summoned before the judicial authorities of the Requesting State as an accused, shall not be prosecuted or subjected to any restriction of personal liberty for acts or convictions prior to departure from the Requested State and not specified in the summons.

3. Safe conduct provided in this Article shall cease if, ten days after the person appearing has been notified that his or her presence is no longer required, that person has not left the Requesting State or, having left, has returned.

4. A person appearing as a witness in the Requesting State may refuse to testify when that person, because of occupation, has an obligation or right to do so under the laws of the Requested State and the testimony required relates to protected information. The Requesting State shall respect the obligation or right when the Competent Authority of the Requested State verifies that such obligation or right exists.

## Article 10

### *Limitations on Compliance*

1. The Requested State may deny a request to the extent that:

a. execution of the request would prejudice the security or other essential public interests of the Requested State;

b. the request relates to a matter considered a political offense by the Requested State;

c. the request relates to the prosecution of a person who is immune from prosecution for the offense for which assistance is requested, by reason of the laws of the Requested State relating to prior jeopardy; or

d. the request does not comply with the provisions of this Treaty.

2. The Requested State may postpone execution of a request or grant it subject to conditions, if execution would interfere with an ongoing investigation or legal proceeding in the Requested State.

3. The Requested State shall immediately inform the Requesting State of the reason for denying or postponing the execution of a request.

**S.A. 120**

## Article 11

### *Protecting Confidentiality and Restricting Use*

1. When necessary, the Requested State may require that evidence and information provided under this Treaty and information derived therefrom be kept confidential in accordance with stated conditions, except to the extent that disclosure is necessary as evidence in a public proceeding.

2. The Requesting State shall not use any evidence obtained under this Treaty, nor any information derived therefrom, for purposes other than those stated in the request, without the prior consent of the Requested State.

## Article 12

### *Executing Requests*

1. The Competent Authority of the Requested State shall promptly comply with the request or, when appropriate, transmit it for execution to the authority having jurisdiction.

2. Requests shall be executed according to the domestic law and procedures of the Requested State except to the extent that this Treaty provides otherwise. Procedures specified in the request, even if unfamiliar to the Requested State, shall be followed except to the extent specifically prohibited by the laws of the Requested State.

## Article 13

### *Contents of Requests*

1. A request for assistance shall indicate:

a. the name of the authority conducting the investigation or proceeding to which the request relates;

b. the subject matter and nature of the investigation or proceeding;

c. a description of the evidence or information sought or the acts to be performed; and

d. the purpose for which the evidence, information or action is sought.

2. To the extent necessary and possible, a request shall include:

a. available information on the identity and whereabouts of a person to be located;

b. the identity and location of a person to be served, that person's relationship to the proceeding and the manner in which service is to be made;

c. the identity and location of persons from whom evidence is sought;

d. a description of the manner in which any testimony is to be taken and recorded;

e. a list of questions to be answered;

f. a precise description of the place to be searched and the objects to be seized;

g. a description of any particular procedure to be followed in executing the request; and

h. information as to the allowances and expenses to which a person appearing in the Requesting State will be entitled.

### Article 14

#### *Competent Authorities*

All requests for assistance shall be made and executed through a Competent Authority for each Contracting Party. The Competent Authorities of the two States shall communicate directly with each other for the purpose of carrying out the provisions of this Treaty. For the United States of America, the Competent Authority shall be the Attorney General or that person's designee. For the Kingdom of the Netherlands, the Competent Authority shall be the Minister of Justice in the Netherlands or the Minister of Justice in the Netherlands Antilles or their designees.

#### *Return of Completed Requests*

1. Upon completion of a request the Requested State shall, unless otherwise agreed, return the original request together with all information and evidence obtained, indicating place and time of execution, to the Requesting State.

2. To the extent possible, all documents and records to be furnished pursuant to a request under this Treaty shall be complete and in unedited form. Upon application of the Requesting State, the Requested State shall make every effort to furnish original documents and records.

### Article 16

#### *Return of Documents, Records or Articles of Evidence*

The Requesting State shall return any documents, records or articles of evidence furnished in execution of requests as soon as possible unless the Requested State waives their return.

### Article 17

#### *Costs and Translations*

1. The Requested State shall render assistance without cost to the Requesting State except for fees of private experts specified in the request.

2. The Requesting State shall bear all expenses related to the transfer under Articles 7 and 8 of a person in custody.

3. Requests shall be provided in both Dutch and English. Translation of documents provided pursuant to requests is incumbent on the Requesting State.

### Article 18

#### *Other Treaties and Domestic Laws*

1. Assistance and procedures provided by this Treaty shall be without prejudice to, and shall not prevent or restrict, any assistance or procedure available under other international conventions or arrangements or under the domestic laws of the Contracting Parties.

2. Except where this Treaty specifically sets forth rules for the admissibility of evidence, the provisions of this Treaty shall not give rise to a right on the part of any person to take any action in a criminal proceeding to suppress or exclude any evidence. This Treaty does not expand or limit rights to judicial review otherwise available under domestic law.

3. No provision governing extradition of persons, whether of domestic law or treaty, shall apply to the transfer

# S.A. 122

of persons under Articles 7 and 8 or to appearance under paragraph 2 of Article 9.

## Article 19

### *Entry into Force*

1. This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged at Washington, D.C. as soon as possible.

2. This Treaty shall enter into force 30 days after the exchange of the instruments of ratification.[1] This Treaty shall apply both with respect to acts committed before or after its entry into force.

## Article 20

### *Scope of Application*

1. As regards the Kingdom of the Netherlands, the present Treaty shall apply to the territory of the Kingdom in Europe and to the Netherlands Antilles,[2] unless the instrument of ratification of the Government of the Kingdom of the Netherlands, referred to in Article 19, shall otherwise provide.

2. The Kingdom of the Netherlands reserves the right to declare at the time of ratification that this Treaty shall not apply to requests for assistance relating to fiscal offenses addressed to the Netherlands Antilles.[3] This reservation may at any time be wholly or partially withdrawn through an exchange of diplomatic notes between the Contracting Parties.

## Article 21

### *Denunciation*

1. Either Contracting Party may terminate this Treaty at any time by giving notice to the other Party and the termination shall be effective six months after the date of receipt of such notice.

2. Termination of this Treaty by the Government of the Kingdom of the Netherlands may be limited to one of the constituent parts of the Kingdom.

DONE at The Hague on 12 June 1981 in two copies in the English and Dutch languages, each version being equally authentic.

## Annex

Requests for search and seizure may be executed under paragraph 1 of Article 6 of the Treaty, if they relate to offenses covered by:

### I

A. - For the Kingdom of the Netherlands (Europe):-

The Criminal Code (Wetbock van Strafrecht), Articles 194, 272, 328 bis, 328 ter and 336.

B. - For the Kingdom of the Netherlands (Netherlands Antilles):-

The Criminal Code of the Netherlands Antilles (Wetbock van Strafrecht van de Nederlandse Antillen), Articles 200, 285, 341a and 349.

### II

**S.A. 123**

- For the United States of America:-

Title 26, United States Code (The Internal Revenue Code), § 7203.

Texts of the relevant legal provisions:

### *Netherlands Criminal Code*

#### Article 194

Any person who has been declared bankrupt or is married "in community of property" to a bankrupt or who is a manager or director of a public or private company, association or foundation, and who has been legally summoned to give information in such capacity and either fails to appear without good reason or appears but refuses to give the required information or deliberately furnishes false information shall be liable to a term of imprisonment not exceeding one year.

#### Article 272

(1) Any person who deliberately discloses information which he knows or should reasonably be assumed to know he is bound not to disclose on account of his present or former profession or office or of a statutory regulation, shall be liable to a term of imprisonment not exceeding one year or a fine not exceeding 6,000 guilders.

(2) If such an offence is committed against a particular person proceedings may be brought only if the person concerned registers a complaint.

#### Article 328 bis

Any person who commits a fraudulent act in order to mislead the public or a particular person, with the intention of building up, protecting or increasing his own sales or those of another person, shall, if this could result in any disadvantage to his competitors or those of such other person, be guilty of engaging in unfair competition and be liable to a term of imprisonment not exceeding one year or a fine not exceeding 1,800 guilders.

#### Article 328 ter

(1) Any person other than a public servant, who is in paid employment or acts as an agent and who accepts a gift or promise in consideration of his performing or failing to perform some act in the course of his duties as employee or agent and dishonestly conceals the fact from his employer or principal shall be liable to a term of imprisonment not exceeding one year or a fine not exceeding 100,000 guilders.

(2) The same penalty shall be applicable to any person who offers a gift or makes a promise to another person, who is not a public servant but is in paid employment or acts as an agent, in consideration of the latter performing or failing to perform some act in the course of his duties as employee or agent, if the gift or promise is of such a nature or is offered or made under such circumstances that it is reasonable to assume that he will dishonestly conceal the gift or promise from his employer or principal.

#### Article 336

The "merchant", manager, managing partner or member of the board of a company, association or foundation who deliberately discloses untrue accounts, or a balance sheet, profit and loss account, statement of assets and liabilities or information explaining any of the above or who deliberately permits disclosure shall be liable to a term of imprisonment not exceeding one year.

Treaty, with exchange of notes, signed at The Hague..., T.I.A.S. No. 10734...

___

### Criminal Code of the Netherlands Antilles

#### Article 200

Any person who has been declared bankrupt or is married "in community of property" to a bankrupt or who is a manager or director of a public or private company, association or foundation which has been declared bankrupt and who has been legally summoned to give information in such capacity and either fails to appear without good reason or appears but refuses to give the required information or deliberately furnishes false information shall be liable to a term of imprisonment not exceeding one year.

#### Article 285

(1) Any person who deliberately discloses information which he is bound not to disclose on account of his present or former profession or office shall be liable to a term of imprisonment not exceeding six months or a fine not exceeding six hundred guilders.

(2) If such an offence is committed against a particular person, proceedings may be brought only if the person concerned registers as compliant.

#### Article 341(a)

Any person who commits a fraudulent act in order to mislead the public or a particular person, with the intention of building up, protecting or increasing his own sales or those of another person, shall, if this could result in any disadvantage to his competitors or those of such other person, be liable to a term of imprisonment not exceeding one year or a fine not exceeding nine hundred guilders.

#### Article 349

The "merchant", manager, managing partner or member of the board of a company, association or foundation who deliberately discloses untrue accounts, or a balance sheet, profit and loss account, statement of assets and liabilities or information explaining any of the above or who deliberately permits disclosure shall be liable to a term of imprisonment not exceeding one year.

### The Internal Revenue Code (Title 26, United States Code)

#### § 7203

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $ 10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

[EXCHANGE OF NOTES]

EMBASSY OF THE UNITED STATES OF AMERICA

The Hague

June 12, 1981

No. 55

___

S.A. 125

Excellency,

I have the honor to refer to the Treaty between the United States of America and the Kingdom of the Netherlands on Mutual Assistance in Criminal Matters signed today, and in particular to Articles 4, 6, 11 and 14 thereof, and express the understanding of the United States with respect to those Articles.

### Article 4

Paragraph 2 of Article 4 permits each Party to provide to the other records in the possession of the government, other than those publicly available, and information derived therefrom. It also allows each Party the option of refusing to provide, or placing conditions on the disclosure of, such records and information. The Parties intend to furnish such records and information, to the extent permitted by domestic law, except where disclosure would cause harm to individuals cooperating in criminal investigations, compromise voluntary sources of information crucial to government operations, or otherwise adversely affect the operations of government or the administration of justice.

The Parties recognize that disclosure of tax records and information is strictly limited under their respective domestic tax laws because the proper operation of those laws depends upon taxpayer cooperation. Accordingly, tax records and information will be provided under the Treaty with respect to criminal investigations and proceedings only to the extent, and under the same conditions, that they would be available in criminal investigations and proceedings in the Requested State.

### Article 6

The Parties understand that Article 6 establishes a far-reaching mutual obligation to comply with requests for search and seizure. Since this kind of assistance entails compulsory measures which may seriously intrude into the private life and affairs of the individual, the Parties agree that requests for search and seizure will be granted only where the criminal acts or omissions are punishable under the laws of both States and the request is executed according to the domestic laws and administrative practices of the Requested State.

In the Kingdom of the Netherlands, the established administrative practice is that with respect to offenses called "fiscal offenses," which relate to duties, taxes, customs and exchange, compulsory measures of this kind are judiciously invoked. Accordingly, the Government of the Kingdom of the Netherlands takes the view that in executing requests for search and seizure under international agreements, it will not depart from its policy of restraint. The Government of the Kingdom understands Article 6 to allow it to retain its customary discretion in the execution of requests relating to fiscal offenses.

Certain Federal laws of the United States, such as those governing drugs, poisonous chemicals, substances injurious to health, firearms and other weapons, explosive and incendiary devices, are based on constitutional powers as the power to tax and promote public health and, consequently, are couched in terms of tax, health, and other laws. In executing requests by the United States with respect to such laws, the Kingdom of the Netherlands does not intend to retain the discretion ordinarily exercised with respect to fiscal offenses under the laws of the Kingdom of the Netherlands. This discretion will be retained only when the subject offenses relate to duties, taxes, customs or exchange according to the laws of both Parties.

Under the laws and practices of the United States, the requirements for search and seizure in fiscal cases are no stricter than in other kinds of cases. An application for a warrant for search and seizure in the United States must establish good cause to believe that an offense has taken place and that evidence of the offense is to be found on the person or premises to be searched. The description of the person or premises to be searched and the objects to be seized must be precise. Accordingly, a request by the Kingdom of the Netherlands to the United States for search and seizure should ordinarily be accompanied by a statement, made by or before a judge of the Kingdom of the Netherlands, of the facts establishing the basis for the issuance of the warrant.

### Article 11

S.A. 126

Although paragraph 1 of Article 11 allows either Party to impose restrictions on evidence and information provided, both Parties recognize that where judicial procedures require evidence to be presented in a public proceeding, such evidence and information may be so used to the extent the Requesting State deems necessary.

With respect to paragraph 2 of Article 11, both Parties agree that consent to use tax records and information for a purpose other than that stated in the initial request can be given. However, such consent will be limited to those instances where the subsequent use is consistent with the domestic laws and practices of the Requested State.

## Article 14

Requests made by the Competent Authorities specified in Article 14 are to be honored in the Requested State in a way which harmonizes with domestic law. It is understood that whereas requests under this Treaty and all subsequent communications are exchanged between the Competent Authorities designated, such requests will originate from prosecutors, investigating authorities or courts. The Competent Authorities of the Kingdom of the Netherlands will convey requests from public prosecutors, examining magistrates and courts. The Competent Authority of the United States will make requests on behalf of prosecutors and law enforcement agencies and will convey requests from courts.

Certain domestic laws of the Parties provide for assistance to foreign authorities only when the originator of the request is a judicial authority. Although prosecutors and law enforcement agencies are not considered judicial authorities under the laws of the United States, requests made on their behalf by the Attorney General of the United States, for purposes of applying the laws of the Kingdom of the Netherlands, shall be considered requests of a judicial authority. Requests made on behalf of public prosecutors in the Kingdom of the Netherlands, for purposes of applying the laws of the United States, shall be considered requests of a judicial authority.

I would appreciate from your Excellency confirming that the understanding described above is also the understanding of the Kingdom of the Netherlands.

Accept, Excellency, assurances of my highest consideration.


(Signature)


## MINISTERIE VAN BUITENLANDSE ZAKEN

The Hague, 12 June 1981

Sir,

I have the honor to acknowledge receipt of your letter of today's date, which reads as follows:

[For text of the U.S. note, see pp. 1386-1391.]

I have the honor to confirm that the understanding described above is also the understanding of the Kingdom of the Netherlands.

Please accept, Sir, the assurance of my highest consideration.


(Signature)


Footnotes

S.A. 127

[1]     Sept. 15, 1983.

[2]     By note dated Dec. 31, 1985 the Government of the Netherlands informed the Government of the United States that Aruba would obtain internal autonomy within the Kingdom of the Netherlands on January 1, 1986 and that as of that date the Treaty would apply to the Netherlands Antilles *and* Aruba.

[3]     Declaration was made in note by the Government of the Netherlands dated Aug. 16, 1983.

T.I.A.S. No. 10734

**End of Document**                                      © 2014 Thomson Reuters. No claim to original U.S. Government Works.

S.A. 128



**20. CONVENTION ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS[1]**

*(Concluded 18 March 1970)*

The States signatory to the present Convention,
Desiring to facilitate the transmission and execution of Letters of Request and to further the accommodation of the different methods which they use for this purpose,
Desiring to improve mutual judicial co-operation in civil or commercial matters,
Have resolved to conclude a Convention to this effect and have agreed upon the following provisions –

CHAPTER I — LETTERS OF REQUEST

Article 1

In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.
A Letter shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated.
The expression "other judicial act" does not cover the service of judicial documents or the issuance of any process by which judgments or orders are executed or enforced, or orders for provisional or protective measures.

Article 2

A Contracting State shall designate a Central Authority which will undertake to receive Letters of Request coming from a judicial authority of another Contracting State and to transmit them to the authority competent to execute them. Each State shall organise the Central Authority in accordance with its own law.
Letters shall be sent to the Central Authority of the State of execution without being transmitted through any other authority of that State.

Article 3

A Letter of Request shall specify –
a)    the authority requesting its execution and the authority requested to execute it, if known to the requesting authority;
b)    the names and addresses of the parties to the proceedings and their representatives, if any;
c)    the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto;
d)    the evidence to be obtained or other judicial act to be performed.

---

[1]  This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Evidence Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Onzième session (1968)*, Tome IV, *Obtention des preuves*  (219 pp.).

**S.A. 129**

Where appropriate, the Letter shall specify, *inter alia* –

*e)*   the names and addresses of the persons to be examined;
*f)*   the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined;
*g)*   the documents or other property, real or personal, to be inspected;
*h)*   any requirement that the evidence is to be given on oath or affirmation, and any special form to be used;
*i)*   any special method or procedure to be followed under Article 9.

A Letter may also mention any information necessary for the application of Article 11.
No legalisation or other like formality may be required.

Article 4

A Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language.
Nevertheless, a Contracting State shall accept a Letter in either English or French, or a translation into one of these languages, unless it has made the reservation authorised by Article 33.
A Contracting State which has more than one official language and cannot, for reasons of internal law, accept Letters in one of these languages for the whole of its territory, shall, by declaration, specify the language in which the Letter or translation thereof shall be expressed for execution in the specified parts of its territory. In case of failure to comply with this declaration, without justifiable excuse, the costs of translation into the required language shall be borne by the State of origin.
A Contracting State may, by declaration, specify the language or languages other than those referred to in the preceding paragraphs, in which a Letter may be sent to its Central Authority.
Any translation accompanying a Letter shall be certified as correct, either by a diplomatic officer or consular agent or by a sworn translator or by any other person so authorised in either State.

Article 5

If the Central Authority considers that the request does not comply with the provisions of the present Convention, it shall promptly inform the authority of the State of origin which transmitted the Letter of Request, specifying the objections to the Letter.

Article 6

If the authority to whom a Letter of Request has been transmitted is not competent to execute it, the Letter shall be sent forthwith to the authority in the same State which is competent to execute it in accordance with the provisions of its own law.

Article 7

The requesting authority shall, if it so desires, be informed of the time when, and the place where, the proceedings will take place, in order that the parties concerned, and their representatives, if any, may be present. This information shall be sent directly to the parties or their representatives when the authority of the State of origin so requests.

Article 8

A Contracting State may declare that members of the judicial personnel of the requesting authority of another Contracting State may be present at the execution of a Letter of Request. Prior authorisation by the competent authority designated by the declaring State may be required.

Article 9

The judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed.

**S.A. 130**

However, it will follow a request of the requesting authority that a special method or procedure be followed, unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties.

A Letter of Request shall be executed expeditiously.


## Article 10

In executing a Letter of Request the requested authority shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings.


## Article 11

In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence –

*a)*     under the law of the State of execution; or

*b)*     under the law of the State of origin, and the privilege or duty has been specified in the Letter, or, at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.

A Contracting State may declare that, in addition, it will respect privileges and duties existing under the law of States other than the State of origin and the State of execution, to the extent specified in that declaration.


## Article 12

The execution of a Letter of Request may be refused only to the extent that –

*a)*     in the State of execution the execution of the Letter does not fall within the functions of the judiciary; or

*b)*     the State addressed considers that its sovereignty or security would be prejudiced thereby.

Execution may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it.


## Article 13

The documents establishing the execution of the Letter of Request shall be sent by the requested authority to the requesting authority by the same channel which was used by the latter.

In every instance where the Letter is not executed in whole or in part, the requesting authority shall be informed immediately through the same channel and advised of the reasons.


## Article 14

The execution of the Letter of Request shall not give rise to any reimbursement of taxes or costs of any nature.

Nevertheless, the State of execution has the right to require the State of origin to reimburse the fees paid to experts and interpreters and the costs occasioned by the use of a special procedure requested by the State of origin under Article 9, paragraph 2.

The requested authority whose law obliges the parties themselves to secure evidence, and which is not able itself to execute the Letter, may, after having obtained the consent of the requesting authority, appoint a suitable person to do so. When seeking this consent the requested authority shall indicate the approximate costs which would result from this procedure. If the requesting authority gives its consent it shall reimburse any costs incurred; without such consent the requesting authority shall not be liable for the costs.

S.A. 131

CHAPTER II – TAKING OF EVIDENCE BY DIPLOMATIC OFFICERS, CONSULAR AGENTS AND COMMISSIONERS

### Article 15

In a civil or commercial matter, a diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, take the evidence without compulsion of a State which he represents in aid of proceedings commenced in the courts of a State which he represents.

A Contracting State may declare that evidence may be taken by a diplomatic officer or consular agent only if permission to that effect is given upon application made by him or on his behalf to the appropriate authority designated by the declaring State.

### Article 16

A diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, also take the evidence, without compulsion, of nationals of the State in which he exercises his functions or of a third State, in aid of proceedings commenced in the courts of a State which he represents, if –

*a)*   a competent authority designated by the State in which he exercises his functions has given its permission either generally or in the particular case, and

*b)*   he complies with the conditions which the competent authority has specified in the permission.

A Contracting State may declare that evidence may be taken under this Article without its prior permission.

### Article 17

In a civil or commercial matter, a person duly appointed as a commissioner for the purpose may, without compulsion, take evidence in the territory of a Contracting State in aid of proceedings commenced in the courts of another Contracting State if –

*a)*   a competent authority designated by the State where the evidence is to be taken has given its permission either generally or in the particular case; and

*b)*   he complies with the conditions which the competent authority has specified in the permission.

A Contracting State may declare that evidence may be taken under this Article without its prior permission.

### Article 18

A Contracting State may declare that a diplomatic officer, consular agent or commissioner authorised to take evidence under Articles 15, 16 or 17, may apply to the competent authority designated by the declaring State for appropriate assistance to obtain the evidence by compulsion. The declaration may contain such conditions as the declaring State may see fit to impose.

If the authority grants the application it shall apply any measures of compulsion which are appropriate and are prescribed by its law for use in internal proceedings.

### Article 19

The competent authority, in giving the permission referred to in Articles 15, 16 or 17, or in granting the application referred to in Article 18, may lay down such conditions as it deems fit, *inter alia*, as to the time and place of the taking of the evidence. Similarly it may require that it be given reasonable advance notice of the time, date and place of the taking of the evidence; in such a case a representative of the authority shall be entitled to be present at the taking of the evidence.

**S.A. 132**

## Article 20

In the taking of evidence under any Article of this Chapter persons concerned may be legally represented.

## Article 21

Where a diplomatic officer, consular agent or commissioner is authorised under Articles 15, 16 or 17 to take evidence –

a)   he may take all kinds of evidence which are not incompatible with the law of the State where the evidence is taken or contrary to any permission granted pursuant to the above Articles, and shall have power within such limits to administer an oath or take an affirmation;

b)   a request to a person to appear or to give evidence shall, unless the recipient is a national of the State where the action is pending, be drawn up in the language of the place where the evidence is taken or be accompanied by a translation into such language;

c)   the request shall inform the person that he may be legally represented and, in any State that has not filed a declaration under Article 18, shall also inform him that he is not compelled to appear or to give evidence;

d)   the evidence may be taken in the manner provided by the law applicable to the court in which the action is pending provided that such manner is not forbidden by the law of the State where the evidence is taken;

e)   a person requested to give evidence may invoke the privileges and duties to refuse to give the evidence contained in Article 11.

## Article 22

The fact that an attempt to take evidence under the procedure laid down in this Chapter has failed, owing to the refusal of a person to give evidence, shall not prevent an application being subsequently made to take the evidence in accordance with Chapter I.

### CHAPTER III – GENERAL CLAUSES

## Article 23

A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

## Article 24

A Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence. However, Letters of Request may in all cases be sent to the Central Authority.
Federal States shall be free to designate more than one Central Authority.

## Article 25

A Contracting State which has more than one legal system may designate the authorities of one of such systems, which shall have exclusive competence to execute Letters of Request pursuant to this Convention.

## Article 26

A Contracting State, if required to do so because of constitutional limitations, may request the reimbursement by the State of origin of fees and costs, in connection with the execution of Letters of

S.A. 133

Request, for the service of process necessary to compel the appearance of a person to give evidence, the costs of attendance of such persons, and the cost of any transcript of the evidence.

Where a State has made a request pursuant to the above paragraph, any other Contracting State may request from that State the reimbursement of similar fees and costs.

## Article 27

The provisions of the present Convention shall not prevent a Contracting State from –

a)   declaring that Letters of Request may be transmitted to its judicial authorities through channels other than those provided for in Article 2;

b)   permitting, by internal law or practice, any act provided for in this Convention to be performed upon less restrictive conditions;

c)   permitting, by internal law or practice, methods of taking evidence other than those provided for in this Convention.

## Article 28

The present Convention shall not prevent an agreement between any two or more Contracting States to derogate from –

a)   the provisions of Article 2 with respect to methods of transmitting Letters of Request;

b)   the provisions of Article 4 with respect to the languages which may be used;

c)   the provisions of Article 8 with respect to the presence of judicial personnel at the execution of Letters;

d)   the provisions of Article 11 with respect to the privileges and duties of witnesses to refuse to give evidence;

e)   the provisions of Article 13 with respect to the methods of returning executed Letters to the requesting authority;

f)   the provisions of Article 14 with respect to fees and costs;

g)   the provisions of Chapter II.

## Article 29

Between Parties to the present Convention who are also Parties to one or both of the Conventions on Civil Procedure signed at The Hague on the 17th of July 1905 and the 1st of March 1954, this Convention shall replace Articles 8-16 of the earlier Conventions.

## Article 30

The present Convention shall not affect the application of Article 23 of the Convention of 1905, or of Article 24 of the Convention of 1954.

## Article 31

Supplementary Agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention unless the Parties have otherwise agreed.

## Article 32

Without prejudice to the provisions of Articles 29 and 31, the present Convention shall not derogate from conventions containing provisions on the matters covered by this Convention to which the Contracting States are, or shall become Parties.

**S.A. 134**

### Article 33

A State may, at the time of signature, ratification or accession exclude, in whole or in part, the application of the provisions of paragraph 2 of Article 4 and of Chapter II. No other reservation shall be permitted.

Each Contracting State may at any time withdraw a reservation it has made; the reservation shall cease to have effect on the sixtieth day after notification of the withdrawal.

When a State has made a reservation, any other State affected thereby may apply the same rule against the reserving State.

### Article 34

A State may at any time withdraw or modify a declaration.

### Article 35

A Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the designation of authorities, pursuant to Articles 2, 8, 24 and 25.

A Contracting State shall likewise inform the Ministry, where appropriate, of the following –

*a)*   the designation of the authorities to whom notice must be given, whose permission may be required, and whose assistance may be invoked in the taking of evidence by diplomatic officers and consular agents, pursuant to Articles 15, 16 and 18 respectively;

*b)*   the designation of the authorities whose permission may be required in the taking of evidence by commissioners pursuant to Article 17 and of those who may grant the assistance provided for in Article 18;

*c)*   declarations pursuant to Articles 4, 8, 11, 15, 16, 17, 18, 23 and 27;

*d)*   any withdrawal or modification of the above designations and declarations;

*e)*   the withdrawal of any reservation.

### Article 36

Any difficulties which may arise between Contracting States in connection with the operation of this Convention shall be settled through diplomatic channels.

### Article 37

The present Convention shall be open for signature by the States represented at the Eleventh Session of the Hague Conference on Private International Law.

It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

### Article 38

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 37.

The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

### Article 39

Any State not represented at the Eleventh Session of the Hague Conference on Private International Law which is a Member of this Conference or of the United Nations or of a specialised agency of that Organisation, or a Party to the Statute of the International Court of Justice may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 38.

The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for a State acceding to it on the sixtieth day after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the sixtieth day after the deposit of the declaration of acceptance.


Article 40

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification indicated in the preceding paragraph.


Article 41

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 38, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


Article 42

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 37, and to the States which have acceded in accordance with Article 39, of the following –

a)    the signatures and ratifications referred to in Article 37;
b)    the date on which the present Convention enters into force in accordance with the first paragraph of Article 38;
c)    the accessions referred to in Article 39 and the dates on which they take effect;
d)    the extensions referred to in Article 40 and the dates on which they take effect;
e)    the designations, reservations and declarations referred to in Articles 33 and 35;
f)    the denunciations referred to in the third paragraph of Article 41.


In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 18th day of March, 1970, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Eleventh Session of the Hague Conference on Private International Law.